# EXHIBIT 20

*U.S. v. Lemley, Mathews, and Bilbrough*
Case Nos. 20-cr-033 TDC; 21-cr-205 TDC
**Brian Mark Lemley Reply to U.S. Sentencing Memorandum Exhibits**

1              IN THE UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF MARYLAND

3                       SOUTHERN DIVISION

4

5    UNITED STATES OF AMERICA,      ) CRIMINAL
                                    ) NO. TDC-20-0033
6              Plaintiff,           )
                                    )
7    v.                             )
                                    )
8    WILLIAM GARFIELD BILBROUGH, IV,)
                                    )
9              Defendant.           )

10                     TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE THEODORE D. CHUANG
11               UNITED STATES DISTRICT JUDGE
            TUESDAY, DECEMBER 8, 2020; 10:01 A.M.
12                     GREENBELT, MARYLAND

13   FOR THE PLAINTIFF:

14           OFFICE OF THE UNITED STATES ATTORNEY
             BY:  THOMAS P. WINDOM, ESQUIRE
15           BY:  THOMAS M. SULLIVAN, ESQUIRE
             6406 Ivy Lane
16           Suite 800
             Greenbelt, Maryland  20770
17           (301) 344-4433

18   FOR THE DEFENDANT:

19           MARCUS AND BONSIB
             BY:  ROBERT C. BONSIB, ESQUIRE
20           BY:  MEGAN E. COLEMAN, ESQUIRE
             6411 Ivy Lane
21           Suite 116
             Greenbelt, Maryland  20770
22           (301) 441-3000

23

     OFFICIAL COURT REPORTER:
24   Renee A. Ewing, RPR, RMR, CRR - (301) 344-3227

25     ***COMPUTER-AIDED TRANSCRIPTION OF STENOTYPE NOTES***

1          THE DEPUTY CLERK:  May I have your attention, please.

2     The United States District Court for the District of Maryland

3     is now in session.   The Honorable Theodore D. Chuang presiding.

4          The matter now pending before this Court is Criminal

5     Docket TDC-20-033, the *United States of America vs. William*

6     *Garfield Bilbrough, IV.*  We are here for the purpose of a

7     rearraignment and sentencing.

8          Counsel, please identify yourselves for the record.

9          MR. WINDOM:  Good morning, Your Honor.   Thomas

10    Windom, Tom Sullivan for the United States.   On the public

11    line, Your Honor, is Special Assistant United States Attorney

12    Adrienne Dedjinou.   She has a competing hearing, so she will be

13    dropping off early.

14         THE COURT:  Good morning.   I think defense counsel is

15    still on mute.

16         MR. BONSIB:  There we go.   Robert Bonsib and Megan

17    Coleman on behalf of William Bilbrough.   And, Your Honor, just

18    to start --

19         THE COURT:  We are having trouble, Mr. Bonsib.   If

20    there is a way that Mr. Bilbrough can mute his line or his line

21    can be muted until he is not speaking, it might be a good idea

22    because I think there is a lot of noise at the jail he can't

23    control.

24         Try again, Mr. Bonsib.

25         MR. BONSIB:  Yes.   Good morning.   Robert Bonsib and

1    Megan Coleman on behalf of Mr. Bilbrough.  And, Your Honor, at

2    around 10:30, Ms. Coleman may have to take over the remainder

3    of the proceeding if it's still going on because I have another

4    Zoom court appearance, but I will be here until then if that's

5    okay with the Court.

6              THE COURT:  Okay.  Just so long as it's okay with

7    Mr. Bilbrough, I am okay with that.

8              So, I believe we are ready to proceed, then.  We are here

9    for a guilty plea, and I believe the defense has also requested

10   a sentencing hearing in *United States vs. Bilbrough*.

11             First, for the record, we need to establish that we can

12   proceed in this fashion, which is by video conference.  The

13   defendant is appearing by video from pretrial detention and his

14   counsel are on a separate video line, but they have had, and,

15   if necessary, can have the opportunity privately to confer

16   during the course of today's proceedings.

17             The hearing is conducted under Section 15002(b)(2) of the

18   CARES Act, which allows for a video guilty plea or sentencing

19   proceeding with the consent of the defendant and the parties if

20   any court proceeding would continue to impose an unreasonable

21   risk to public health and safety and if the -- any further

22   delay would cause harms to the interests of justice.

23             I find, first, based on the findings of the chief judge

24   of this district, that there remains an unreasonable risk to

25   public health and safety to conduct the hearing in person.

1  Because of COVID-19, the Court is currently closed to in-court

2  proceedings due to the potential health risks.

3       I also find that further delay would cause serious harm

4  to the interests of justice.  Even though the defendant has

5  been in pretrial custody throughout most of this year, and

6  because of the issues with the pretrial detention during the

7  course of the year, including a COVID-19 outbreak at the

8  facility, the Court finds that further delay would cause

9  serious harm to the interests of justice to not allow the

10 defendant to now proceed to finalize this particular case.

11      And last, I need to confirm whether the defendant is

12 consenting to today's proceedings.

13      Mr. Bonsib, have you had the opportunity to advise your

14 client on this issue and to proceed by video?

15           MR. BONSIB:  Yes, Your Honor.  We have discussed the

16 proceeding by video, and it's my understanding that

17 Mr. Bilbrough consents to proceeding in that fashion.

18      Is that correct, Mr. Bilbrough?

19           THE DEFENDANT:  I consent with everything, Your

20 Honor.

21           THE COURT:  Okay.  And you have had the chance to

22 discuss this with your attorneys before you agreed to consent?

23           THE DEFENDANT:  Yes.

24           THE COURT:  Thank you.  So I will make the finding

25 that the defendant has consented, so we will proceed with the

1  hearing by video.  At least provisionally, having read the

2  submissions, I am prepared to go to sentencing at the end of

3  this.

4       I think we just have an issue with the connection to

5  Mr. Bilbrough.  I don't know what's going on there.

6            THE DEPUTY CLERK:  Judge, just one moment.  I don't

7  believe that was Mr. Bilbrough.

8            MR. BONSIB:  It wasn't.

9            THE DEPUTY CLERK:  Your Honor, one moment.  I am

10  going to have to call I.T.

11       (Pause.)

12            THE DEPUTY CLERK:  We are trying to reconnect with

13  Mr. Bilbrough, Your Honor.

14       (Pause.)

15            THE DEPUTY CLERK:  I.T. is still trying to reconnect,

16  Your Honor.

17       (Pause.)

18            THE COURT:  Is it just a technical issue or is he --

19  is there any issue from the jail side as to whether he is

20  available?

21            THE DEPUTY CLERK:  It's a technical issue at this

22  point, Your Honor.  We are just reestablishing connection with

23  the jail.

24       (Pause.)

25            THE DEPUTY CLERK:  Your Honor, Mr. Bilbrough is back.

1          THE COURT:  Okay.  So, Mr. Bilbrough, can you hear us

2    now?

3          THE DEFENDANT:  I can hear you.

4          THE COURT:  Okay.  So, as I understand it,

5    Mr. Bilbrough is prepared to change his plea and plead guilty

6    in this case.

7          Mr. Bilbrough, we are here today because, as I understand

8    it, you are prepared to change your plea and plead guilty in

9    this case.  Now, pleading guilty to a federal crime is a

10   serious step.  It will mean that you have been convicted of a

11   crime without taking advantage of your constitutional right to

12   a trial by a jury.

13         So in order to accept your guilty plea, I must be

14   satisfied that you are acting knowingly and voluntarily.  To do

15   that, I am going to ask you a series of questions with you

16   under oath and will listen carefully to your responses, and if

17   I am satisfied that you are acting knowingly and voluntarily,

18   we will then have you enter the new plea.

19         So let's begin, then, by having the clerk administer an

20   oath to you to tell the truth during today's proceedings.

21         THE DEPUTY CLERK:  Mr. Bilbrough, would you please

22   raise your right hand?

23         WILLIAM GARFIELD BILBROUGH, IV, DEFENDANT, SWORN

24         THE DEPUTY CLERK:  Please lower your hand, sir.

25   And please state your full name for the record.

1          THE DEFENDANT:  William Garfiled Bilbrough, IV.

2          THE DEPUTY CLERK:  Thank you.

3          THE COURT:  Okay.  So, Mr. Bilbrough, you -- do you

4  understand that you are now under oath and you must answer all

5  questions truthfully?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  And do you understand that if you answer

8  any questions falsely, your answers could later be used against

9  you in another prosecution for perjury or for making a false

10  statement?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  Could you tell us how old you are?

13         THE DEFENDANT:  I am 20.

14         THE COURT:  And where were you born?

15         THE DEFENDANT:  Maryland, Your Honor.

16         THE COURT:  So you are a United States citizen; is

17  that correct?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  And how far did you go in school?

20         THE DEFENDANT:  I'm sorry?

21         THE COURT:  How far did you go in school?  What's

22  your highest level of education?

23         THE DEFENDANT:  I was going to -- sorry.  I was going

24  to DelTech Community College in Georgetown, Delaware.

25         THE COURT:  So you finished -- you graduated from

1  high school and you have started some college at the community

2  college in Delaware?

3          THE DEFENDANT:  That's right, Your Honor.

4          THE COURT:  And have you been treated recently for

5  any mental illness or addiction to narcotic drugs of any kind?

6          THE DEFENDANT:  No.

7          THE COURT:  Are you, today, under the influence of

8  any drugs, medication, or alcoholic beverages?

9          THE DEFENDANT:  No.

10         THE COURT:  Is there any reason that you would not be

11  able to understand today's proceedings or to make decisions

12  about your future today?

13         THE DEFENDANT:  No.  No, Your Honor.

14         THE COURT:  If you do not understand a question I ask

15  or don't hear a question I ask, will you let me know?

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  Now, you are here with your attorneys,

18  Mr. Bonsib and Ms. Coleman.

19    Are you fully satisfied with their advice,

20  representation, and counsel in this case?

21         THE DEFENDANT:  Yes.  Yes, Your Honor.

22         THE COURT:  And if, at any time today, you wish to

23  consult with your attorneys, please let me know, and I will

24  give you that opportunity.

25    Do you understand that?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Have you received a copy of the

3    indictment against you, that is, the written charges made

4    against you in this case?

5          THE DEFENDANT:  Yes.  Yes, Your Honor.

6          THE COURT:  And you were charged in Count One with

7    conspiracy to transport certain aliens in violation of Title 8,

8    United States Code, Section 1324(a)(1)(A)(v)(I), in Counts Two

9    through Four with transporting certain aliens in violation of

10   8, U.S.C., 1324(a)(1)(A)(ii) and (a)(1)(A)(v)(II), in Count

11   Three with conspiracy to transport and harbor certain aliens in

12   violation of 8, U.S.C., Section 1324(a)(1)(A)(v)(I), and in

13   Count Five with harboring certain aliens in violation of 8,

14   U.S.C., Section 1324(a)(1)(A)(iii) and (a)(1)(A)(v)(II).

15       I understand you intend to plead guilty to Counts One and

16   Two only; is that correct?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  Now, have you fully discussed these

19   charges and the case in general with your attorneys?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  And do you understand the charges against

22   you?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  To make sure you understand the charges

25   to which you intend to plead guilty, let me go over a few of

1   the elements of these offenses.  These are the things the

2   government would have to prove in order to have you found

3   guilty on these charges.

4        So, on Count One, conspiracy to transport certain aliens,

5   the government would have to prove, first, that you and one or

6   more persons entered into an unlawful agreement as charged in

7   the indictment to transport certain aliens; and, second, that

8   you knowingly and willfully became a member of that unlawful

9   agreement or conspiracy.

10        Do you understand that those are the things the

11   government would have to prove to have you found guilty on

12   Count One?

13                    THE DEFENDANT:  Yes, Your Honor.

14                    THE COURT:  As for Count Two, transporting certain

15   aliens, the government would have to prove, first, that an

16   alien was in the United States in violation of the law; second,

17   that you knew or recklessly disregarded the fact that the

18   person was an alien who had come to enter or remain in the

19   United States in violation of the law; third, that you

20   transported or aided and abetted the transportation of the

21   alien within the United States; and, fourth, that you acted

22   willfully in furtherance of the alien's violation of the law.

23        Do you understand that those are the things the

24   government would have to prove to have you found guilty on

25   Count Two?

1        THE DEFENDANT:  Yes, Your Honor.

2        THE COURT:  I also want to make sure you understand

3    the potential penalties for pleading guilty to these offenses.

4    I am going to ask the government to tell us what the maximum

5    penalties are in Counts One and Two.

6        MR. WINDOM:  Yes, Your Honor.  For Count One, the

7    conspiracy count, the maximum term of imprisonment is ten

8    years.  The maximum term of supervised release is three years.

9    The maximum fine is $250,000.  And there is a mandatory special

10   assessment of $100.

11       For Count Two, the maximum term of imprisonment is five

12   years.  The maximum term of supervised release is three years.

13   The maximum fine is $250,000.  And there is a mandatory $100

14   special assessment.

15       THE COURT:  Mr. Bilbrough, do you understand that

16   those are the maximum penalties that could be imposed in this

17   case?

18       THE DEFENDANT:  I do, Your Honor.

19       THE COURT:  And you heard some terms, and I just want

20   to make sure you understand.  First, you heard about supervised

21   release.  What that is is a period of time following any term

22   of imprisonment during which you would be subject to conditions

23   imposed by the Court, you would be required to follow them, and

24   violation of any of those conditions could result in additional

25   prison time.

1          Do you understand what supervised release is?

2               THE DEFENDANT:  Yes, Your Honor.

3               THE COURT:  You also heard about a special

4    assessment.  That is a legal requirement that anyone convicted

5    of a federal crime must pay the Court $100 for each count of

6    conviction.  Here, if you plead guilty, you owe the Court $200.

7          Do you understand?

8               THE DEFENDANT:  Yes, Your Honor.

9               THE COURT:  So, as part of a sentence, under certain

10   circumstances, the Court could order you to pay restitution,

11   that is, to pay back any victims of the crimes for the amount

12   of their losses.

13         Do you understand that?

14              THE DEFENDANT:  Yes, Your Honor.

15              THE COURT:  Also as part of a sentence, under certain

16   circumstances, the Court could order you to forfeit property,

17   that is, to give up ownership, possession, and control over

18   certain property related in some ways to the offense.

19         Do you understand that?

20              THE DEFENDANT:  Yes, Your Honor.

21              THE COURT:  Now I'd like to go over with you some of

22   the important rights you will be giving up by pleading guilty.

23         First, under our system of justice, even though you have

24   been charged with a crime or crimes, you are innocent unless or

25   until the government proves you are guilty.  You are not

1  required to plead guilty and you have the right to plead not

2  guilty and to continue to plead not guilty throughout this

3  case.  By pleading guilty today, you would be giving up that

4  right.

5       Do you understand that?

6            THE DEFENDANT:  Yes, Your Honor.

7            THE COURT:  Also, under our Constitution, when you

8  are charged with a crime, you have the right to a trial by a

9  jury.  So if you did not plead guilty, you would have a panel

10  of citizens from this part of Maryland come to the courthouse,

11  and we would select 12 jurors to hear your case.  You and your

12  attorneys would have the right to participate in the jury

13  selection process to ensure that the jurors selected are fair

14  and impartial.  And in order to find you guilty, this jury

15  would have to return a unanimous verdict of guilt, meaning that

16  all 12 of them would have to agree that you are guilty before

17  you could be convicted.

18       Do you understand that you have the right to a jury trial

19  on these terms?

20            THE DEFENDANT:  Yes, Your Honor.

21            THE COURT:  Now, if you do not want to have a trial

22  before a jury, you could instead have one before a judge only

23  if you, the Court, and the government all agreed.

24       Do you understand that?

25            THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  Also, at the trial, you are not required

2     to prove anything.  You are presumed innocent and you cannot be

3     found guilty unless the government proves that you are guilty

4     beyond a reasonable doubt.  And I would instruct the jury that

5     you are presumed innocent and that the government has this

6     heavy burden of proving guilt beyond a reasonable doubt.

7          Do you understand that?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  And at trial, you would also have the

10    right to be represented by counsel, by an attorney, as you are

11    here today, and, as necessary, the Court would appoint counsel

12    to represent you at trial and every other stage of the case, so

13    you would be guaranteed to have an attorney during the trial.

14         Do you understand?

15         THE DEFENDANT:  Yes, Your Honor.

16         THE COURT:  Also at trial, you would have other

17    important rights.  You would have the right to confront the

18    witnesses against you, meaning they would all have to come into

19    the courtroom, take the witness stand, and testify in your

20    presence.  You would have the right to have your attorneys

21    cross-examine these witnesses, that is, to ask questions of

22    them.

23         You would have the right to testify on your own behalf if

24    you wanted to, and you also would have the right to present

25    other evidence and witnesses.  If there are any witnesses who

1  you think would help your case but who are unwilling to

2  testify, the Court would issue subpoenas to require them to

3  testify.

4      Do you understand that you have all of these additional

5  rights related to a trial?

6          THE DEFENDANT:  Yes, Your Honor.

7          MR. BONSIB:  Your Honor, I'm sorry to interrupt.  I

8  am going to step out if it's okay?  I will be in the next room

9  if Mr. Bilbrough has any questions for me, but Ms. Coleman is

10 going to take over.

11         THE COURT:  Okay.  I will leave it to Ms. Coleman to

12 handle everything from here on out.  Thank you very much,

13 Mr. Bonsib.

14     Just to clarify, Mr. Bilbrough, do you have any concerns

15 with proceeding with Ms. Coleman only?

16         THE DEFENDANT:  No.  I do want to speak to her for a

17 minute, though.

18         THE COURT:  Okay.  Would that be now or at a later

19 point?

20         THE DEFENDANT:  Now.

21         THE COURT:  So, Mr. Bonsib will depart.

22     Miss Solomon, is there a way to have Mr. Bilbrough and

23 Ms. Coleman confer in a separate electronic room?

24         THE DEPUTY CLERK:  Under normal circumstances, Your

25 Honor, I would move them into a breakout room, but,

1  unfortunately, this account that I am using doesn't have that

2  feature set up.  I can move the rest of us into the waiting

3  room and step away so that they can speak.

4          MR. BONSIB:  What about the public line?

5          THE DEPUTY CLERK:  I can put the public line into the

6  waiting room also.

7          THE COURT:  Okay.  Will that work for everyone?

8  Ms. Coleman, will that work for you?

9          MS. COLEMAN:  Yes, Your Honor.

10          THE COURT:  And just to clarify, Miss Solomon, you

11  will let us know when they are done?

12          THE DEPUTY CLERK:  I am going to be just stepping

13  away from here, and just wave at me, please, Ms. Coleman.

14          MR. BONSIB:  Either that or if there is a direct line

15  to where Ms. Solomon is at?

16          THE DEPUTY CLERK:  It is (301) 344-3109.

17          THE COURT:  Okay.  We will wait for the call to

18  Miss Solomon.  The rest of us will be in the waiting room.

19  Correct, Ms. Solomon?

20          THE DEPUTY CLERK:  Yes, sir.

21          THE COURT:  Thank you.

22      (Pause.)

23          THE COURT:  Okay.  Are we all set, Ms. Coleman?

24          MS. COLEMAN:  Yes, we are.

25          THE COURT:  Is the government back?  I see they are

1   back.   Okay.   So we are continuing.

2        Mr. Bilbrough, I think the last thing I told you or asked

3   you about was whether you understood that there are various

4   rights regarding how a trial operates.

5        I also wanted to note for you, I said that you have the

6   right to testify at your own trial.  You also have the right,

7   the absolute right not to testify or not to be forced to

8   testify if you don't want to.  You are not required to present

9   evidence.  I would instruct the jury that they cannot draw any

10  negative inference, that is, they cannot hold it against you if

11  you choose not to testify or if you choose not to present any

12  evidence.

13       Do you understand that?

14            THE DEFENDANT:  Yes, Your Honor.

15            THE COURT:  Also, if you are found guilty after a

16  trial, you would still have the right to appeal to a higher

17  court.  You would have the right to appeal the verdict as well

18  as the Court's decisions before and during the trial to see if

19  any errors were committed that would require a new trial or

20  dismissal of the charges.

21       Do you understand that?

22            THE DEFENDANT:  Yes, Your Honor.

23            THE COURT:  But by pleading guilty, there will be no

24  trial, you will be found guilty today, and you will have waived

25  or have given up your right to a trial as well as all the other

1  rights associated with a trial that I just described to you.

2      Do you understand that?

3          THE DEFENDANT:  Yes.  Yes, Your Honor.

4          THE COURT:  So if you plead guilty and are found

5  guilty of these felonies, it could deprive you of valuable

6  civil rights, such as the right to vote, the right to serve on

7  a jury, and the right to possess a firearm.

8      Do you understand?

9          THE DEFENDANT:  Yes.  Yes, Your Honor.

10          THE COURT:  So, although I know you said you are a

11  U.S. citizen, I need to tell you that if you are not or someone

12  is not a U.S. citizen and pleads guilty to a federal offense,

13  that conviction could affect that person's residency or status

14  with the immigration authorities, including deportation or

15  exclusion from the United States or prevent someone from

16  becoming a U.S. citizen.

17      Do you understand?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  Now, I understand you have entered into a

20  plea agreement in this case, and I have it here.  It's dated, I

21  think, September 29th, 2020.

22      You have signed it on pages 9 and 13; is that correct?

23          THE DEFENDANT:  I don't have the plea, Your Honor.

24          THE COURT:  Does Mr. Bilbrough have a copy of the

25  plea agreement at this time, or not?

1          THE DEFENDANT:  No.

2          THE COURT:  You know which agreement I am discussing.

3    Correct?

4          THE DEFENDANT:  Right.  I understand.

5          THE COURT:  Ms. Coleman, have you and Mr. Bonsib

6    conveyed all plea offers from the government to your client

7    during the course of this case?

8          MS. COLEMAN:  Yes.

9          THE COURT:  I'm sorry.  You are a little hard to

10   hear.

11         MS. COLEMAN:  Yes, Your Honor.  I am confident that

12   Mr. Bonsib conveyed the offer to Mr. Bilbrough, has gone over

13   it with him.

14         THE COURT:  Again, unfortunately, just for the

15   record, we just need you to be closer to the microphone or

16   something.

17         MS. COLEMAN:  Yes, Your Honor.  I apologize.  I just

18   asked her to assist me.

19         THE COURT:  Yeah, of course.

20         MS. COLEMAN:  Judge, can you hear me?

21         THE COURT:  I can now.  Go ahead.

22         MS. COLEMAN:  Okay.  Thank you.  Yes.  Is it better,

23   the volume?

24         THE COURT:  Yes.

25         MS. COLEMAN:  So I am confident that Mr. Bonsib

1  reviewed the plea offer with Mr. Bilbrough.  We have been able

2  to --

3          THE COURT:  I'm sorry.  Again, so the problem is the

4  background noise from the jail.  The other issue is, again,

5  just get it loud and as close to the microphone as you can,

6  Ms. Coleman.

7          MS. COLEMAN:  Thank you.

8      Your Honor, I am confident that Mr. Bilbrough and

9  Mr. Bonsib have had multiple discussions of the plea offer.

10 They were able to have communications set up and have reviewed

11 the offer at length.

12         THE COURT:  I also wanted to confirm, though, that

13 you conveyed all plea offers to your client or Mr. Bonsib?

14         MS. COLEMAN:  Yes.  We have conveyed all plea offers

15 made by the government, discussed them in detail with

16 Mr. Bilbrough.

17         THE COURT:  Thank you.

18     So, going back to Mr. Bilbrough, did you have an

19 opportunity to read and review the plea agreement before you

20 signed it?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  Do you understand the terms of the plea

23 agreement?

24         THE DEFENDANT:  (Witness nods.)

25         THE COURT:  I wanted to go over some of those

1   provisions with you.  First, as you may recall, the plea

2   agreement has certain terms relating to the United States

3   Sentencing Guidelines.  The sentencing guidelines are

4   established by the U.S. Sentencing Commission, under authority

5   from Congress, and they provide for a recommended range for a

6   sentencing based on the specific crimes of conviction, the

7   specific factors relating to what -- the seriousness of those

8   offenses as they were committed, and your criminal history.

9        Have you discussed the sentencing guidelines with your

10  attorneys and how they may apply in this case?

11               THE DEFENDANT:  Yes, Your Honor.

12               THE COURT:  Now, I just want to have the prosecutor

13  summarize the plea agreement terms as they relate to the

14  guidelines calculations and any commitments by either side as

15  they relate to a possible sentence, and then I am going to ask

16  some questions about those.

17               MR. WINDOM:  Thank you, Your Honor.  Mr. Bilbrough, I

18  may ask you to mute your device again, please?  Thank you, sir.

19        Your Honor, the parties have agreed to a set of

20  guidelines in this case.  For Count One, the applicable base

21  offense level is 12.  Pursuant to Sentencing Guideline

22  2L1.1(a)(3), a three-level reduction applies pursuant to --

23  because the offense was committed other than for profit;

24  however, the offense level is increased to 18 pursuant to

25  Guideline 2L1.1(b)(5)(C) because a dangerous weapon, including

1   a firearm, was possessed.

2       The same guideline numbers apply for Count Five.  The

3   government does not oppose a two-level reduction based on

4   acceptance of responsibility.  The government is now moving for

5   the third point of reduction for acceptance of responsibility

6   as well pursuant to the plea agreement.

7       However, the parties also agree that an upward departure

8   applies in this case pursuant to Application Note 7 of

9   Guideline 2L1.1 because the defendant smuggled, transported, or

10  harbored an alien knowing that the alien intended to enter the

11  United States to engage in subversive activity or other serious

12  criminal behavior.

13      Now, these are the guidelines, Your Honor, that the

14  parties have agreed apply here.  And, as Your Honor knows, the

15  parties also have entered, by this agreement, into a "c" plea

16  mandating a five-year term of imprisonment should the Court

17  accept the plea.

18          THE COURT:  Okay.  First off, generally,

19  Mr. Bilbrough, are you familiar with those terms?

20          THE DEFENDANT:  I understand, Your Honor.

21          THE COURT:  Let me just go over some parts of that

22  with you.

23      First off, as you have heard, the prosecutor said the

24  parties have agreed to certain numbers relating to the

25  guidelines.  When you add and subtract those numbers up, what

1  it leads to, the agreement of the parties, that, based on what
2  we know now, the total offense level under the guidelines would
3  be 15.

4      Now, if -- what these numbers mean is --

5          THE DEFENDANT:  I'm sorry.

6          THE COURT:  Can you just go on mute for a second
7  because it's loud over there?

8      What Mr. Windom, the prosecutor, described, you add and
9  subtract up to a 15, and that's the offense level the parties
10  agreed to.  Under the guidelines, there is a table that has all
11  of these different events listed in it, and it also provides
12  for a recommended sentence for various offense levels.

13     For Offense Level 15, the recommended sentence for anyone
14  who is at Offense Level 15, there are different numbers
15  depending on the person's criminal record.  For someone with no
16  or little criminal record, the recommended sentence for Offense
17  Level 15 is 18 to 24 months imprisonment.  All these numbers
18  are in months.

19     If someone has a more significant criminal record, the
20  numbers get higher, and for someone with the most significant
21  level of criminal history, they would be in Category VI, which
22  has a recommended sentence of 41 to 51 months for someone who
23  is in Offense Level 15.

24     Do you understand that those are the types of sentences
25  the guidelines would recommend based on the terms of the plea

1   agreement?

2             THE DEFENDANT:  Yes, Your Honor.

3             THE COURT:  Okay.  And then, as you heard, in the

4   plea agreement, you and the government have agreed that there

5   would be an upward departure.  Now, in general -- well, let me

6   take a step back.  In reaching the appropriate sentence, I am

7   required to calculate the guideline range myself and consider

8   it in reaching a sentence, but my obligation may not be the

9   same as yours, so if I reach a different conclusion involving

10  the offense level or conclude that the offense level is not a

11  15 but some other number, I may choose to find a different

12  offense level.

13      Do you understand that?

14            THE DEFENDANT:  Yes, Your Honor.

15            THE COURT:  Also, I am not required to give you a

16  sentence in the guideline range.  Under the guidelines, there

17  are reasons I can depart from the guideline range and give you

18  a sentence higher or lower than the guideline range.

19      Do you understand that?

20            THE DEFENDANT:  Yes, Your Honor.

21            THE COURT:  And as I was mentioning and as

22  Mr. Windom, the prosecutor, mentioned, in the plea agreement,

23  you have agreed that the sentence should be actually different

24  than the guideline range, and you agreed that it can be higher,

25  that is called an upward departure, than the guideline range,

1    that the parties are recommending a joint recommended five-year

2    sentence.

3        Do you understand that?

4        THE DEFENDANT:  Yes, Your Honor.

5        THE COURT:  Now, besides the guidelines, I am also

6    required, in reaching a sentence, to consider certain other

7    factors contained in federal law.  These include the nature and

8    circumstances of the offense, the history and characteristics

9    of the defendant, the need for the sentence to reflect the

10   seriousness of the offense, to promote respect for the law,

11   provide just punishment, to provide adequate deterrence to

12   criminal conduct, to protect the public from further crimes,

13   and to avoid unwarranted disparities among similar defendants.

14       Based on all of these and other factors, I could decide

15   to impose a sentence above, below, or within the guideline

16   range so long as it's at or below the maximum penalties we

17   discussed earlier.

18       Do you understand that?

19       THE DEFENDANT:  Yes, Your Honor.

20       THE COURT:  Now, in this case, as we heard, you and

21   the government have agreed on an upward departure, that is a

22   sentence above the guideline range, and you have also agreed to

23   jointly recommend the sentence of 60 months or five years.

24       Under this type of plea agreement you have entered into,

25   if I decide not to follow this recommendation, the 60-month or

1   five-year sentence, you would have the opportunity to withdraw

2   the guilty plea and go to trial instead.

3          Do you understand?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  But if you do not choose to withdraw your

6   guilty plea at that point, you would then -- I would then

7   sentence you, and if the sentence is different than you

8   expected, you would not be allowed to withdraw your plea of

9   guilty.

10         Do you understand that?

11             THE DEFENDANT:  Yes, Your Honor.

12             THE COURT:  And, also, if I decide to impose this

13  60-month or five-year sentence, you would not, at a later

14  point, be allowed to withdraw your guilty plea.

15         Do you understand?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  There is no parole in the federal

18  criminal justice system, so if you were sentenced to prison,

19  you would not be released on parole.

20         Do you understand?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  Also, I mentioned earlier that,

23  generally, you can have, as part of a sentence, a term or a

24  requirement to forfeit property.  The plea agreement does

25  contain certain provisions stating that the Court may enter a

1  order of forfeiture as part of this sentence and that you are

2  giving up the right to challenge that.

3      Do you understand that?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  Also, as I mentioned earlier, you

6  generally have the right to appeal to a higher court, but under

7  the terms of the plea agreement, you have waived or given up

8  your right to appeal.  First, you have given up your right to

9  appeal the conviction, that is, my decision to accept your

10 guilty plea.

11     Do you understand?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  Also, as part of the plea agreement, you

14 have waived or given up your right to appeal the sentence

15 imposed so long as I impose the recommended sentence by the

16 parties of 60 months.

17     Do you understand that?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  Now, the plea agreement contains a

20 particular provision in paragraph 21 that says this is the full

21 and complete agreement that you have with the government.

22     Is that true, that is the full and complete agreement

23 with the government in this case?

24         THE DEFENDANT:  Can you repeat that one more time?

25         THE COURT:  The plea agreement has a paragraph that

1   states that this plea agreement is the full and complete

2   agreement you have with the government and there are no other

3   side agreements or other agreements.

4        Is that correct, this is the full agreement you have with

5   the government?

6              THE DEFENDANT:  Correct.  Correct.

7              THE COURT:  Has anyone made any promises or

8   assurances to you other than what's contained in the plea

9   agreement to get you to plead guilty in this case?

10             THE DEFENDANT:  No, Your Honor.

11             THE COURT:  Has anyone threatened you or pressured

12  you to get you to plead guilty in this case?

13             THE DEFENDANT:  No.

14             THE COURT:  Do you understand all of the possible

15  consequences of a guilty plea that I have described to you

16  today?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  And do you -- are you pleading guilty out

19  of your own free will?

20             THE DEFENDANT:  Yes, Your Honor.

21             THE COURT:  Now, in order to accept your guilty plea,

22  I will need to be satisfied that there is an independent basis

23  in fact for the plea, that is, that you are actually guilty of

24  these offenses, so I am going to ask the prosecutor to

25  summarize the factual statement of the plea, that is the facts

1   the government would prove if the case were to go to trial.  At

2   the end of that, I will ask you, Mr. Bilbrough, whether you

3   agree with this statement.  It may make sense to push mute

4   during that summary.

5          Mr. Windom, go ahead.

6          MR. WINDOM:  Thank you, Your Honor.

7          Since Mr. Bilbrough does not have a copy of the Statement

8   of Facts in front of him, I am going to be a little bit more

9   complete than just summarizing it.

10         The parties have entered into a plea agreement that

11  contains a Stipulation of Facts, Attachment A.  The parties

12  stipulate and agree that if the case had proceeded to trial,

13  the office would have proven the following facts beyond a

14  reasonable doubt:

15         The defendant, William Garfiled Bilbrough, IV, was a

16  member of a white supremacist organization called "The Base."

17  Codefendants Brian Mark Lemley and Patrik Jordan Mathews also

18  were members of The Base.

19         There is a section describing The Base that's two

20  paragraphs long.

21         Within The Base's encrypted chat rooms, members typically

22  discussed, among other things, recruitment, creating a white

23  ethno-state, committing acts of violence against minority

24  communities, including African-Americans and Jewish-Americans,

25  the organization's military-style training camps, and ways to

1  make improvised explosive devices.

2      Since 2018, The Base has been building a coalition of

3  white supremacist members within the United States and abroad

4  through, among other things, online chat rooms, in-person

5  meetings, propaganda, and military training.  The Base's

6  membership includes members of other white supremacist

7  organizations, including the Atomwaffen Division, a violent

8  neo-Nazi terror group linked to several hate crimes.  The Base

9  recruits white supremacists and is particularly interested in

10 applicants with military and explosives background.  The Base

11 recruits through its online presence, among other means.

12 Applicants submit an application form, which includes questions

13 regarding the applicant's current associations with white

14 supremacist organizations; the applicant's military, science,

15 and engineering experiences and training; and the applicant's

16 race and gender.  Applicants are then vetted.  Once admitted

17 into the organization, Base members are afforded access to a

18 secure messaging group.

19     There is a section next on the August 2019 Base Training

20 Camps.

21     Members of The Base conducted a regional training camp in

22 Georgia from August 2nd through August 4th, 2019.

23 Mr. Bilbrough travelled with Mr. Lemley in Mr. Lemley's vehicle

24 to attend the training camp, and, while there, participated in

25 tactical training and firearm drills.

1          Later in August 2019, Mr. Lemley and Mr. Bilbrough

2    attended another Base training camp in a different state.

3          Following this paragraph are certain photographs taken of

4    a separate training camp.  Mr. Lemley, in one of the

5    photographs, is standing while holding a long gun in the air.

6    Mr. Bilbrough is kneeling in the center under a Base flag while

7    holding a blade.  In another photograph, Mr. Bilbrough is

8    standing while firing a long gun.

9          On page 12, there is a discussion of Codefendant Mathews'

10   arrival in the United States.  On August 19th of 2019, the

11   Winnipeg Free Press published an article regarding one of its

12   reporter's infiltration of The Base.  While acting in an

13   undercover capacity on behalf of the newspaper, the reporter

14   was telephonically interviewed by leadership of The Base to

15   become a member.  Upon completion of the interview, leadership

16   of The Base arranged an in-person meeting with Mr. Mathews, a

17   local member of The Base residing in the area of Winnipeg,

18   Canada.  The reporting led to the identification of Mr. Mathews

19   as a member of The Base the reporter had met in person.

20   Thereafter, Mr. Mathews fled Canada and illegally entered the

21   United States.  At some point thereafter, Mr. Lemley and Mr.

22   Bilbrough learned that Mr. Mathews had unlawfully crossed the

23   border.

24         Later that month, on or about August 30th of 2019,

25   Mr. Lemley and Mr. Bilbrough travelled in Mr. Lemley's truck

1  from Maryland to southern Michigan, roughly 600 miles each

2  direction, in order to pick up Mr. Mathews.  At least as of a

3  certain time when Mr. Lemley and Mr. Bilbrough were in route to

4  pick up Mr. Mathews, Mr. Bilbrough understood that Mr. Mathews

5  was a fellow member of The Base and Mr. Mathews had entered the

6  United States unlawfully, and that Mr. Lemley and Mr. Bilbrough

7  were driving to pick up Mr. Mathews in order to transport

8  Mr. Mathews to the East Coast, where Mr. Mathews could safely

9  reside in the United States and continue his participation in

10  The Base.  Mr. Lemley and Mr. Bilbrough remained in the

11  Michigan area for approximately two hours, after which all

12  three headed back East.  Mr. Bilbrough drove Mr. Mathews and

13  Mr. Lemley during at least part of the return trip to Maryland.

14       Mr. Bilbrough was dropped off at his house in Maryland

15  the evening of August 31st, 2019, bringing with him a few

16  souvenirs, including a flag for The Base and a book widely

17  circulated in white nationalist circles.

18       There is a description of another training camp beginning

19  in late October of 2019 where Mr. Lemley picked up

20  Mr. Bilbrough at Mr. Bilbrough's residence in Maryland and

21  drove south to Georgia to attend another training camp at

22  another Base member's property.  Mr. Mathews already was

23  residing at the Georgia property and attended the training

24  camp.  While in Georgia, on or about November 2nd, 2019,

25  Mr. Lemley and Mr. Bilbrough purchased roughly 1550 rounds of

1  ammunition for roughly $550.  Later in the evening that day,

2  Mr. Mathews, Mr. Lemley, and Mr. Bilbrough travelled from

3  Georgia to Maryland.  Mr. Bilbrough drove Mr. Lemley's truck

4  for at least part of that trip, including from Virginia, on the

5  Maryland side of the Capital Beltway, and over the Chesapeake

6  Bay Bridge.

7          As of November of 2019, Mr. Lemley and Mr. Mathews lived

8  at a residence in Delaware.  Mr. Bilbrough visited those two at

9  the Delaware residence on at least one occasion.  On December

10  21st of 2019, Mr. Bilbrough arrived at the Delaware residence.

11  Mr. Mathews passed Mr. Bilbrough an assault rifle that

12  Mr. Mathews had constructed with Mr. Lemley's assistance and

13  encouragement.  Mr. Lemley and Mr. Mathews and Mr. Bilbrough

14  discussed an upcoming rally in Virginia that at least

15  Mr. Lemley and Mr. Mathews expected to attend.  Mr. Lemley

16  stated, "Don't wear any Base patches down in Virginia, we're

17  supposed to be clandestine."  Furthermore, Mr. Lemley, Mr.

18  Mathews, and Mr. Bilbrough discussed the activities of The Base

19  and spoke about other members within the organization.

20          Then, throughout the evening into the early morning hours

21  of December 2019, Mr. Lemley, Mr. Mathews, and Mr. Bilbrough

22  discussed the manufacture of DMT, which is dimethyltryptamine,

23  a Schedule I controlled substance, and attempted to actually

24  manufacture DMT.  Mr. Bilbrough stated that he may try to sell

25  DMT to people to whom he delivers pizza.  Mr. Mathews stated he

1    has coworkers to whom he may be able to sell DMT.

2    Mr. Bilbrough also stated that he knows DMT is illegal and it

3    is a felony to have DMT.

4         The parties also, at the conclusion of the Statement of

5    Facts, agree that an upward departure applies.  At all times

6    relevant, Mr. Bilbrough knew that Mr. Mathews had entered the

7    United States to engage in subversive activity or other serious

8    behavior, and had never disavowed that purpose while

9    Mr. Bilbrough transported and otherwise interacted with

10   Mr. Mathews.

11        I signed this Statement of Facts on behalf of the

12   government on page 13, Mr. Bilbrough signed, and Mr. Bonsib

13   signed as his counsel.

14             THE COURT:  Okay.  Thank you, Mr. Windom.

15        Mr. Bilbrough, having heard the government's factual

16   statement, do you agree with that factual statement?

17             THE DEFENDANT:  I agree with everything stated, Your

18   Honor.

19             THE COURT:  Did you do the things the government said

20   you did?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Are you pleading guilty because you are,

23   in fact, guilty of these offenses?

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  Is there anything we discussed that you

1  didn't understand?

2          THE DEFENDANT:  No.  I understood everything, Your

3  Honor.

4          THE COURT:  Mr. Windom, is there anything else in the

5  plea agreement or anything else that we should discuss with the

6  defendant at this time?

7          MR. WINDOM:  No, Your Honor.

8          THE COURT:  Ms. Coleman, is there any reason we

9  should not take the plea at this time?

10         MS. COLEMAN:  No, Your Honor.

11         THE COURT:  I am going to ask the clerk to take the

12  plea to Counts One and Two of the indictment.

13         THE DEPUTY CLERK:  Mr. Bilbrough, Judge Chuang has

14  just reviewed with you the charges contained within the

15  indictment.

16      Do you understand the charges placed against you?

17         THE DEFENDANT:  I do.

18         THE DEPUTY CLERK:  Ms. Coleman, as counsel for

19  Mr. Bilbrough, are you satisfied that the defendant understands

20  what he is charged with?

21         MS. COLEMAN:  I am.

22         THE DEPUTY CLERK:  Mr. Bilbrough, you have been

23  charged in Counts One and Two of the indictment.

24      What is your plea as to Count One, conspiracy to

25  transport aliens, guilty or not guilty?

1          THE DEFENDANT:  Guilty.

2          THE DEPUTY CLERK:  What is your plea as to Count Two,

3   transporting certain aliens, guilty or not guilty?

4          THE DEFENDANT:  Guilty.

5          THE DEPUTY CLERK:  The plea is guilty as to Counts

6   One and Two and not guilty to Counts Three, Four, and Five of

7   the indictment.  Is that correct, sir?

8          THE DEFENDANT:  That's correct.

9          THE DEPUTY CLERK:  Thank you.

10          THE COURT:  It is the finding of the Court in the

11   case of *United States vs. Bilbrough* that the defendant is fully

12   competent to enter an informed plea, that the defendant is

13   aware of the nature of the charges and the consequences of a

14   guilty plea, and that that plea of guilty is a knowing and

15   voluntary plea supported by an independent basis in fact

16   containing each of the essential elements of the offenses.  The

17   plea is therefore accepted and the defendant is now adjudged

18   guilty of Counts One and Two of the indictment.

19          Before we move to the sentencing phase, I did want to

20   just confirm with Mr. Windom:  This is our first appearance

21   since the Due Process Act.  Do you understand that the

22   government has an obligation to disclose all exculpatory

23   material under *Brady vs. Maryland* to the defense and that there

24   are sanctions for failing to do so, and that -- can you confirm

25   that the government has, in fact, made those disclosures

1   pending in this case?

2           MR. WINDOM:  Yes, Your Honor.  Thank you for bringing

3   that up.  The government understands and the government is

4   aware of the law and the new rule.  To the extent that there

5   has been any exculpatory evidence, we have provided that to the

6   defense.

7           THE COURT:  Thank you.

8        Now, the defense had requested that we move to sentencing

9   today, which, of course, as we all know, is not the ordinary

10  course.  Ordinarily, under the Rules of Criminal Procedure, we

11  have a presentence report.

12       My understanding, the government is not opposed to this

13  request to proceed directly to sentencing.  Is that correct,

14  Mr. Windom?

15          MR. WINDOM:  That's correct.

16          THE COURT:  So, in the absence of a PSR, what I have

17  before me includes the defendant's motions for immediate

18  sentencing, which includes attachments.  That's ECF 131.  I

19  have the government's response, which is ECF 134.  There are

20  also other documents in the record that appear to be relevant

21  for the sentencing, including the briefs and exhibits included

22  at ECF Nos. 47, 69, 70, 71, 72, 77, 81, 83, and 86 and 93.  I

23  also have the Pretrial Services report.

24       Are there any other materials that have been submitted

25  that could be considered at sentencing?

1          MR. WINDOM:  No, Your Honor.  We relied most heavily

2    on the Statement of Facts.

3          THE COURT:  Is there anything that was submitted or I

4    should be considering other than what we have just described?

5          MS. COLEMAN:  No.  We believe that the report as well

6    as the letters from his friends and family that were exhibits

7    to the motion for review of detention would adequately -- would

8    have been similar to exhibits that would have otherwise been

9    put into the sentencing memo.

10         THE COURT:  Am I correct that both sides agree there

11   is no criminal history, no criminal record for Mr. Bilbrough?

12         MR. WINDOM:  That's correct, Your Honor.

13         MS. COLEMAN:  Yes, Your Honor.

14         THE COURT:  Does that include whether we know whether

15   there have been any arrests or non-convictions other than the

16   convictions we are dealing with now?

17         MR. WINDOM:  My understanding from the consultation,

18   Your Honor, is that there is zero criminal history.

19         THE COURT:  Okay.  I will make some findings before

20   we proceed.  Ordinarily in a case in which the type of sentence

21   is requested, such as a five-year sentence, I would have

22   required a presentence report; however, the defense is correct

23   that we have more information than usual at this stage.  Plus,

24   we have not just the Statement of Facts but additional evidence

25   that was submitting during detention proceedings.  Second, we

1  have no dispute on the guidelines calculations and no dispute

2  that the defendant has no criminal record of any kind.  That is

3  corroborated by the Pretrial Services report.  Third, we have

4  specific information about defendant's history, characteristics

5  from the letters and materials that were submitted during the

6  detention process, including reference and character letters

7  which the Court had to review for purposes of the detention and

8  has now re-reviewed for sentencing.

9        The Court -- under Rule 32(c)(1)(A)(ii), the Court finds

10  the information in the record is sufficient to meet with the

11  sentencing authority.  The Court also notes that in light of

12  the conditions throughout detention, which have included the

13  COVID-19 outbreak where Mr. Bilbrough has served incarceration,

14  moving to sentencing and allowing for designation to the Bureau

15  of Prisons now is in the interests of justice, so I will,

16  again, with the consent of the parties, proceed to sentencing

17  today having made that finding under Rule 32(c).

18        So the parties have taken a position on the guidelines in

19  the plea agreement.  I have reviewed those positions, conducted

20  my own examination, and I find that the offense level is 15 and

21  the criminal history category is I, and I agree with the

22  specific numbers outlined in the agreement as the calculations

23  of those findings.

24        As a result, the advisory guideline range is 18 to 24

25  months.  The guideline range for supervised release is one to

1   three years.  The guideline range for a fine is $10,500 to

2   $75,000.  And the special assessment is $200.

3        Are there any objections to those calculations?

4             MR. WINDOM:  Not from the government, Your Honor.

5             MS. COLEMAN:  No, Your Honor.

6             THE COURT:  And could I just ask, although I don't

7   think it's -- Mr. Encarnacion, do you see any problems with

8   those calculations?

9             PROBATION OFFICER ENCARNACION:  No, Your Honor.

10            THE COURT:  The parties agreed in the plea agreement

11  for an upward departure under Guideline 2L1.1, Application Note

12  7.

13       I assume, Mr. Windom, you are formally making a motion at

14  this time.  Is that correct?

15            MR. WINDOM:  I'm sorry, Your Honor.  I think that you

16  asked if I was formally making the motion for a departure?

17            THE COURT:  Yes.

18            MR. WINDOM:  Yes, Your Honor.

19            THE COURT:  Ms. Coleman, do you want to be heard on

20  that?

21            MS. COLEMAN:  We do have objections to the

22  government's motion at this time pursuant to the plea

23  agreement.

24            THE COURT:  Okay.  The Court finds that the upward

25  departure is warranted under Guideline 2L1.1, Application Note

1   7(a), because the alien in this case, Mr. Mathews, was

2   transported knowing that the alien had intended to enter the

3   United States for perverse activity or for other serious

4   criminal activity, through the activities involving a rally in

5   Virginia that Mr. Mathews planned to attend, as outlined in the

6   Statement of Facts, so I will find that an upward departure is

7   warranted to go above the guideline range.

8          Now, as for the formal sentence, there is a

9   recommendation in the plea agreement, but I will give both

10  sides an opportunity to state their positions, oral argument

11  for that recommended sentence.  Why don't we begin with the

12  government.

13         Mr. Windom.

14         MR. WINDOM:  Thank you, Your Honor.  And, for some

15  reason, my Internet, because it's shaky, if you have trouble

16  hearing me, please interrupt.

17         THE COURT:  There is a bit of an echo.  Okay.

18         MR. WINDOM:  Mr. Bilbrough, if you are not muted,

19  could you mute yourself, please?  Okay.  I am now getting a

20  complete echo on myself.

21         THE COURT:  I hear it as well.  Ms. Solomon, do you

22  have any idea why that's happening?

23         THE DEPUTY CLERK:  The only thing I can recommend at

24  this time is for Mr. Windom to disconnect and reconnect.

25         THE COURT:  You don't have a speakerphone on, do you,

1    Mr. Windom?

2          MR. WINDOM:  No, Your Honor.  And now I am getting a

3    repeat from you and from Ms. Solomon as well, at least on my

4    audio.

5          THE COURT:  Well, Ms. Solomon recommended that you

6    disconnect.

7          MR. WINDOM:  I will do so.  I shall return.

8          (Pause.)

9          THE DEPUTY CLERK:  Admitting Mr. Windom.  You are on

10   mute, Your Honor.

11         THE COURT:  Another option would be to have

12   Mr. Windom call in either with or without the video.  Looks

13   like he's coming back now.

14         MR. WINDOM:  Your Honor, is my audio better?

15         THE COURT:  I think we can hear you now.  I don't

16   hear the echo.

17         MR. WINDOM:  Very good.

18         THE COURT:  Do you want to make your argument on the

19   sentencing?

20         MR. WINDOM:  Thank you, Your Honor.

21      I will go through the 3553 factors.  I know Your Honor

22   has read all of the materials that have been submitted over the

23   course of this case.

24      The -- this was an exceptionally serious offense.  These

25   crimes were of the defendant.  The defendant was a member of a

1   white supremacist group, which, in FBI parlance, is a racially

2   motivated violent extremist group called The Base.  The goal of

3   the group was to create a white ethno-state and to commit acts

4   of violence against minorities.

5        This was a group of individuals, many with military

6   training and with the intent of overthrowing the government and

7   society as we know it.  Their conduct was secret and

8   conspiratorial, not just behind closed doors but in closed

9   training camps and encrypted chat rooms.

10        Mr. Bilbrough attended several training camps in Georgia,

11  in another state.  Your Honor has seen pictures of those.  The

12  individuals in The Base basically dressed up in order to look

13  terrifying and shot guns and otherwise practiced semi military

14  tactics.

15        In late August, an enterprise of a reporter from the

16  Winnipeg Free Press, who likely is listening on the line right

17  now, infiltrated The Base and identified Mr. Mathews as having

18  crossed the United States border, entering illegally in order

19  to be protected by other Base members.  And Mr. Bilbrough

20  assisted in transporting and conspiring with Mr. Lemley to

21  transport Mr. Mathews to safety.  Mr. Bilbrough and Mr. Lemley

22  drove 600 miles each way, stopping only for two hours, once in

23  Michigan, to pick up Mr. Mathews.

24        By the time they got out there, Mr. Bilbrough knows the

25  plan.  He had previously known that Mr. Mathews was intending

1  to come across the border, and, at this point in time,

2  Mr. Bilbrough was an unabashed member of The Base.

3       October 30th of 2019, Mr. Lemley and Mr. Bilbrough

4  continued their criminal conduct.  They drive down to Georgia.

5  Mr. Mathews is already there.  Mr. Lemley previously had taken

6  Mr. Mathews down there.

7       Mr. Lemley and Mr. Bilbrough purchased a substantial

8  amount of ammunition for the training camp.  And then when

9  returning, Mr. Bilbrough, at least part of the way, drives

10 Mr. Mathews, who he knows to be illegally present in the United

11 States and also knows to be a member of The Base subscribing to

12 the conduct we previously discussed, Mr. Bilbrough drove him

13 back up to Maryland and then Mr. Mathews went on to Delaware.

14      Mr. Bilbrough visited Mr. Mathews and Mr. Lemley in a

15 Delaware residence where Mr. Mathews had an assault rifle, and,

16 by this time, unbeknownst to the defendant, 24-hour audio and

17 video recording within that residence had been solved by the

18 FBI.  Agents watched in realtime as Mr. Bilbrough and his

19 coconspirators discussed Base activity, plans for Virginia, and

20 an attempt to manufacture DMT.

21      I am getting the duplication, but I will try to go quick.

22      The upward departure is warranted based on the subversive

23 activity and the serious criminal behavior that is outlined in

24 the Statement of Facts and in the other papers Your Honor has

25 seen.

1        If this is too distracting, Your Honor, I can either call

2    back in or I can have a solution hereafter if you would like.

3            THE COURT:  I guess it just depends on how much more

4    you have.  If it's a little bit more --

5            MR. WINDOM:  I have got about one minute left, Your

6    Honor.

7            THE COURT:  Go ahead.

8            MR. WINDOM:  For the history and characteristics of

9    Mr. Bilbrough, he was 19 years old at the time of the crime.

10   He had no criminal history.  But it is clear that this was not

11   an isolated event, and he hit the ground running directly into

12   a federal criminal conduct.

13       The conduct I described already addresses the seriousness

14   of the offense, the need to promote respect for the law, and to

15   punish Mr. Bilbrough.

16       I think that Mr. Bilbrough will require certain specific

17   deterrence, though we recognize that he had disassociated

18   himself from The Base as of the time of the arrest.  There is a

19   debate as to whether that was because The Base was not as

20   proactive as Mr. Bilbrough would like.  A five-year sentence is

21   important for general deterrence for any member of The Base or

22   for anybody who would seek to join an organization such as The

23   Base in order to propagate criminal conduct.

24       I believe that the other factors have been covered,

25   though I will say this about unwarranted disparities:

1    Mr. Bilbrough, of the three, is the least culpable in this

2    conduct because he was not specifically involved in the

3    Virginia conduct.  We anticipate, upon the conviction of

4    Mr. Mathews and Mr. Lemley, substantially higher sentences will

5    be sought for those coconspirators.  The disparate sentences

6    that we believe one day will come in play will not be

7    unwarranted.

8         The five-year sentence that Mr. Bilbrough faces is

9    substantial, substantial in general, it's substantial for a

10   19-year-old at the time, 20-year-old now, and it's substantial

11   for the crimes of conviction.  We ask Your Honor to impose

12   that.  We ask Your Honor to impose a three-year term of

13   supervised release, no fine, no restitution, and a $100 special

14   assessment.

15        THE COURT:  Okay.  Mr. Windom, a couple questions.

16        Maybe you can clarify for me what you were defining as

17   criminal or subversive activity.  I think there is this issue

18   of, it came up at the detention hearings as well, that

19   regardless of whether -- what one thinks of the views of the

20   members of The Base, crimes are usually -- I think the focus

21   here would be on violence and things like that.  I think having

22   a particular ideologically or a particular political viewpoint

23   is not a crime in the United States.

24        And, I mean, you talked about ammunition that was

25   transported, purchased.  We have heard Mr. Bilbrough is not a

1   convicted felon, so it's unclear whether purchasing ammunition

2   at the time was a crime.  We know about the transporting of the

3   aliens, that's obviously the conduct we are talking about, but

4   in terms of the upward departure, the subversive activity, the

5   serious criminal activity, what are you characterizing this as?

6        For example, again, it's unclear to me whether three

7   firearms at a private location as a part of a group was,

8   itself, a crime either.  It seems to me it might not be, or at

9   least it hasn't been proven to me in this case.  So can you

10   just define for me whether it's the planning around the

11   Virginia activity and what that specifically showed, or what is

12   it that you are calling the subversive or criminal activity

13   that needs to be accounted for here that it is separate from a

14   First Amendment action?

15        MR. WINDOM:  Yes, sir.  Thank you for the opportunity

16   to clarify.  This is not a First Amendment case, as Your Honor

17   noted.  It seeks to punish First Amendment activity in the

18   United States, which we are not used to here.

19        With respect to the Application Note 7, it first

20   describes subversive activities.  Subversive activities is not

21   defined.  The Supreme Court case from about 50 years ago in

22   reference to communism, it discusses what that is, so I think

23   that it should be taken at its plain meaning, which applies

24   here, the overthrow and the violent overthrow of the United

25   States, not with respect to any -- any speech, itself, but

1    actual conduct.

2         That goes into play with the second part of the

3    Application Note 7, which is -- the serious criminal behavior

4    is the phrase.  And that also is not defined in the guidelines,

5    but I think that a fair way to read that is a felony, whether

6    that's a dangerous felony, a violent felony, a felony that

7    could result in physical injury, there are many ways on the

8    spectrum to define what serious criminal behavior is.

9         Here -- well, I guess I will start with the beginning

10   part of the Application Note 7.  It talks about intention.  It

11   doesn't talk about actually carrying out.  So it talks about

12   knowing that the alien intended to enter the United States to

13   engage in the activity.

14        So, here, Mr. Bilbrough knew, at the time, that

15   Mr. Mathews was a member of The Base, which had, as its stated

16   goal, the overthrow of the United States as we know it, as the

17   creation of a white ethno-state actually committing acts of

18   violence against minority communities.  And this is all from

19   the Statement of Facts, Your Honor.  I am not trying to speak

20   off book here.

21             THE COURT:  I understand.

22             MR. WINDOM:  And then what Mr. Bilbrough also

23   recognized is that when he picked up Mr. Mathews, the intention

24   was for Mr. Mathews to safely reside in the United States in

25   order to continue his participation in The Base.  And so that's

1  not, you know, continuing a discussion about what society

2  should be, but, rather, actual action and conduct in order to

3  bring about the violent undertakings in order to promote what

4  Mr. Mathews wanted.

5       Now, as part of that, Mr. Bilbrough and others did engage

6  in the paramilitary training camps, and that, standing alone,

7  as Your Honor noted, might not be illegal.  However,

8  Mr. Mathews was unlawfully in the United States, which

9  Mr. Bilbrough knew.  Mr. Bilbrough provided and assisted in the

10 purchase and transportation to the training camp of substantial

11 ammunition which was then to be used by the parties at that

12 training camp, which included Mr. Mathews.

13      Any possession of ammunition by Mr. Mathews would be a

14 separate 922(g) offense, not in Maryland venue, but whether

15 that's in Georgia or some other location, so that, alone, would

16 be a serious -- would be a serious criminal behavior.

17      The remainder of the conduct, to Your Honor's point,

18 would be, I think, or could be in Delaware, and this would be a

19 way to fit within Application Note 7, where Mr. Bilbrough

20 visited Mr. Mathews in the Delaware residence.  They combined,

21 attempted to manufacture a Schedule I controlled substance,

22 which is a felony offense, again, not venued in Maryland, but

23 it is serious criminal behavior.

24      And, as well, the parties discussed Base activities.

25 Mr. Lemley and Mr. Mathews discussed what they intended to do

1   in Virginia, in which, I have to say, was perfectly in line

2   with every type of conversation about what The Base wanted to

3   do, which was create havoc and overthrow the United States

4   Government.

5          So I think that in -- I am trying to -- to cabin the

6   argument to the Statement of Facts.  Your Honor has, of course,

7   seen the detention hearing memos.  We put in our recent

8   filing -- Your Honor has access to the search warrants and

9   Title III affidavit.  I am trying to only focus on the

10  Statement of Facts with respect to the conduct that we believe

11  warrants an upward departure.

12         THE COURT:  Okay.  My other question is what

13  conditions of supervised release would you recommend in this

14  case?

15         MR. WINDOM:  I think that the standard conditions,

16  though I would also recommend that, to the extent that Your

17  Honor is amenable, no foreign travel absent permission from the

18  probation officer.  I don't know that there needs to be a

19  probation on domestic travel, but no foreign travel absent

20  permission from the probation officer.

21         I think, Your Honor, on the Statement of Facts that we

22  have, and Your Honor can make conditions of release that

23  prevent -- prevent meeting in person with -- certainly with

24  coconspirators, communicating with coconspirators.  The

25  question is how to spread that out more broadly and whether

1    there is a sufficient factual basis to prevent travel to -- to

2    other Base training camps if The Base still exists roughly four

3    years from now when Mr. Bilbrough -- when Mr. Bilbrough exits

4    the BOP facility.

5        I think that there certainly is a sufficient factual

6    basis to most broadly say that he cannot, during that period of

7    time, associate with other felons which would encapsulate many

8    of the -- or some of the folks who actually housed The Base

9    training camps.

10        THE COURT:  Well, I mean, is there a specific

11   recommendation or condition you are asking me to impose?

12   Again, we don't have the benefit of a presentence report here

13   that everyone has looked at, so I understand the no foreign

14   travel.  Reading the Pretrial Services report, there are --

15   there is at least some substance abuse history, so that might

16   warrant a testing requirement and treatment if deemed necessary

17   by the probation officer.

18        I don't see anything here about mental health issues,

19   although that doesn't preclude a condition of that type if

20   there was some -- well, there was some mental health history at

21   some point in the past.

22        And, again, on this issue of contact with witnesses,

23   victims, coconspirators, is there a particular thing you are

24   asking for on that regard?

25        MR. WINDOM:  If Your Honor is willing, I would

1   recommend that during the three-year period of supervised

2   release, that he not have contact with any members of The Base,

3   whether that's the charged coconspirators or others.

4          THE COURT:  And as part of your discussion,

5   Ms. Coleman, you can also address the same question, what

6   conditions of release are appropriate as well as what

7   conditions of supervised release are appropriate as well as any

8   recommendations for the Bureau of Prisons.

9          MS. COLEMAN:  Thank you, Your Honor.

10         Your Honor, in this case, Mr. Bilbrough accepted this

11  plea agreement because he recognizes the seriousness of the

12  offense that he got himself into.  It really is a tragic case

13  from our perspective.  Representing him the last year, year and

14  a half, we have gotten to know Mr. Bilbrough personally.  We

15  have gotten to know his grandmother, who is actually his

16  adoptive mother, and we have gotten to know many of his family

17  members who have been present in court and had been present

18  with us in our office.

19         Mr. Bilbrough, as Mr. Windom stated, was 19 years old at

20  the time of this offense.  This indictment and the plea

21  agreement captures approximately a four-month window of time,

22  from August of 2019 to December of 2019.  As Your Honor knows

23  from other cases and just from literature in general,

24  oftentimes trying to demonstrate that the brain is still fully

25  maturing until approximately age 21.  Now, Mr. Bilbrough is, by

1   no means, a youth.  He had been an adult for a year at the time

2   of this offense, so he was, by no means, a mature adult fully

3   cognizant of all of the decisions that he was making and all of

4   these people with whom he was associating.

5        It is true that when you listen to the Statement of Facts

6   and when you are aware of what's been recorded in the news

7   accounts of this case, that this was a very troubling scenario,

8   one which could have spiralled out of control and wreaked havoc

9   upon an innocent community.  Thankfully, through the efforts of

10  law enforcement, but also through efforts of Mr. Bilbrough, it

11  did not get that far.

12       As Mr. Windom indicated, there has been some dispute

13  between the parties as to when Mr. Bilbrough's association with

14  The Base concluded, but there is no dispute that it did

15  formally conclude.

16       There also is no dispute that Mr. Bilbrough ever intended

17  to go to Virginia.

18       With respect to the upward departure, we have agreed that

19  it should apply in this case because we have agreed that

20  Mr. Bilbrough had knowledge of Mr. Mathews' intent when he

21  entered into the United States, and we don't dispute the fact

22  that Mr. Bilbrough was present with Mr. Mathews and Mr. Lemley

23  when there were discussions being made amongst them, or that

24  Mr. Bilbrough purchased ammunition or handled a firearm.

25       So we ask Your Honor to consider greatly the fact that

1    Mr. Mathews and Mr. Lemley were older than Mr. Bilbrough, that

2    Mr. Mathews entered into this country with the purpose of

3    committing the subversive, violent criminal activity, and

4    committed with Mr. Mathews and Mr. Lemley who were going to

5    carry out the plan that they had orchestrated.

6         A 60-month sentence is justified in this case, but

7    nothing greater is necessary to achieve the purposes of

8    sentencing set forth in the 3553(a) factors.

9         This sentence of Mr. Bilbrough, he has been incarcerated

10   for almost one year.  He was arrested in January and I think we

11   are at 11 months.  This is a young man.  He has never seen

12   handcuffs, the inside of a cell.  And as Mr. Windom indicated,

13   he kind of fast tracked himself right to federal court.  He

14   couldn't be in a worse situation.

15        He's somebody who was delivering pizza before he was

16   arrested in this case.  He's somebody that was living in the

17   farmlands of Denton, Maryland helping his grandmother with

18   chickens before he now finds himself sitting in an orange

19   jumpsuit in a detention facility.

20        He has learned a lot this last year.  He has come to

21   recognize the poor decisions that he made.  He has been

22   absolutely responsible with discussing his actions with counsel

23   and with, frankly, assisting his grandmother in coming to terms

24   with what the just outcome is in this case, which is five

25   years.

1          He has undergone classes through the detention facility

2     to better educate himself.  And he, as I mentioned, really

3     recognizes the gravity and severity of his actions.

4          I can speak for myself, you know, thinking back to when I

5     was 19, and there is no way that I appreciated the risks and

6     the consequences of actions that were taken by, you know,

7     myself or friends that I knew, especially not in comparison to

8     where he is now as an adult who has become more educated, has a

9     family, and obviously crafting the field of criminal defense.

10          So I think the 60 months is a correct balance between the

11     serious nature of what could have come from his actions.  And

12     he does have so much promise in the future if he can apply

13     himself while he's incarcerated these next four years, if he

14     can continue to educate himself, and if he can stay on the

15     right path when he gets released and is supervised by the

16     Court.

17          So with respect to the appropriate supervision once he is

18     released, I don't have any objection to prohibiting foreign

19     travel.  I think that that situation had already been taken

20     care of at the time that we were making requests for an order

21     of detention.  In fact, his grandmother told Mr. Bilbrough that

22     she had destroyed his passport because she was working to

23     discourage him from traveling, and then we were able to get

24     possession of the passport from her.  And I'm sorry, I can't

25     state with certainty whether we were required to turn it into

1   the court or whether we still possess it, but I can state with

2   certainty that it's not in Mr. Bilbrough's possession, and I

3   can share with the Court, though I can't recall if Mr. Bonsib

4   was required at one of these hearings to surrender it at that

5   time.

6          Your Honor, we don't object to substance abuse testing

7   and treatment or mental health counseling.  I think that that

8   was something that he -- with respect to the abuse of alcohol

9   and/or drugs, there was something perhaps that he had

10  entertained briefly, he was under the age of 21 at the time,

11  and I don't think there is any harm that comes from an

12  evaluation.  It may be that it's not an issue when he's

13  released, but an evaluation couldn't hurt.

14         Same with the mental health.  He's young.  Once he's

15  released, he is going to have to start to perhaps get a job and

16  trying to figure out who his friends are and who his friends

17  aren't.  And so to the extent that he can have a specialist at

18  least evaluate him, I don't see that being problematic in that

19  way.

20         I also don't have any issue with Mr. Bilbrough not

21  associating with other felons, coconspirators, victims, or

22  witnesses in this case.  I think that that is a standard

23  condition that a convicted felon in federal court will be

24  prohibited from associating with co-felons.

25         I do have concern, though, about a general condition

1  prohibiting Mr. Bilbrough from associating with any members of

2  The Base or going to Base training camps.  The concern that I

3  have is that it leaves it a little bit too broad and vague.  It

4  could be that there are non-felons who have some ideologies

5  that members of The Base also might share, but those

6  individuals may not formally be Base members.  I just -- I am

7  concerned that it leaves it open too much to Mr. Bilbrough

8  associating with people that otherwise wouldn't be in

9  categories that we routinely see as being prohibited people

10  that defendants can associate with.

11      There is some disagreement that the defense and the

12  government had had in certain aspects of this case with respect

13  to whether there are First Amendment violations.  Certainly

14  not.  We don't contest anything as it relates to violent

15  activity, and that's why we have agreed to the plea in this

16  case.

17      But to the extent that there are ideologies that one

18  wants to express or associate themselves with someone else who

19  share similar ideologies, I don't know where we draw the line.

20  If it has to do with violence committed, then certainly, you

21  know, one would hope that Mr. Bilbrough is not walking back

22  down that path, but I think that he could get violated on a

23  separate basis if it came down to a violent act.  So if it's

24  just a matter of Mr. Bilbrough associating with people who

25  don't like certain groups of other people, I don't know that

1   this Court can prohibit that.  And, so, I think that that's too

2   overbroad, it's too vague, and I think that if Mr. Bilbrough

3   reached the conclusion that Mr. Windom is speaking about would

4   satisfy the Court if it's limited to associations with felons,

5   coconspirators of this case, and victims.

6          THE COURT:  What about the issue of a condition

7   regarding attending training camps where it appears that the

8   training is about military style training?  Mr. Bilbrough, at

9   that point, will not be permitted to possess a firearm or

10  ammunition.

11     Now, I suppose one could go to a camp without touching

12  any of those items, but I am not sure there is a First

13  Amendment problem with saying that just going to a place like

14  that where there is -- where you are that close to illegal

15  conduct, that it would not be an appropriate thing for

16  probation to -- or for supervised release to not permit for

17  those three years in light of the potential violations of other

18  conditions and crimes.  What about that?

19         MS. COLEMAN:  Yes, Your Honor.  And I don't disagree

20  with that.  I think that if it can be phrased in a way that

21  indicates that Mr. Bilbrough is not to attend other camps in

22  which there is training with regards to firearms, in which it

23  is likely that firearms would be present, that is -- that is

24  okay because Mr. Bilbrough now cannot be in possession of

25  firearms based on his conviction.  And, so, from my standpoint

1  of somewhat trying to protect him as his defense attorney, I

2  want to make sure that he's not constructively possessing those

3  firearms either, so I don't see any -- Mr. Bonsib just walked

4  back in perhaps at the appropriate time, but I will readjust

5  the camera so you can see him, but I -- I will tell Mr. Bonsib

6  --

7           THE COURT:  I will just reach out to you, Mr. Bonsib.

8  We are talking about proposed conditions of supervised release.

9  And, at this point, both sides seem to agree that it would be

10  appropriate to have conditions for substance abuse testing and

11  treatment, mental health treatment, and subject to, you know,

12  the discretion of the probation officer, that there be no

13  contact with any felons, coconspirators, which, in this case,

14  would be Mr. Lemley and Mr. Mathews or witnesses in this case,

15  and no foreign travel to avoid the temptation of the Ukraine

16  situation that had come up earlier, again, you know, subject to

17  modification, if necessary.

18          The area where we were discussing was whether to have

19  interactions with members of The Base or attending Base

20  training camps.  Ms. Coleman raised a concern about conditions

21  that preclude First Amendment activity.  I had noted that

22  perhaps a condition of not attending Base training camps at

23  which firearms are present might be a helpful condition that

24  does not interfere with the ideology of First Amendment

25  conditions.  Given that he will be a prohibited person at that

1  point and can't go anywhere where there is a presence of

2  firearms in an organized fashion, that would be something that

3  the Court could appropriately try to regulate over those three

4  years.

5      Do you have a view on any of those issues?

6      MR. BONSIB:  Well, I think if it's connected to this

7  issue of violence, it seems to me it makes sense that sort of

8  the definition of what The Base is, or the general

9  understanding of what The Base [audio drop] -- it plays out in

10 terms of various participants.  It's not always clear whether

11 The Base has an organized structure or, you know, what it

12 really means, so I don't think just saying The Base by itself

13 would make sense.  If you can make it to being in the

14 constructive, rational possession of firearms, I think that

15 makes sense because he would be prohibited from doing that

16 under any circumstances anyhow.

17     THE COURT:  Okay.  Let me go back to Mr. Windom just

18 -- we have moved a little bit off of what your recommendation

19 was.

20     What do you think of where we stand now based on what

21 counsel has proposed?

22     MR. WINDOM:  I think, Your Honor, that what defense

23 counsel proposed is probably the right balance when taking into

24 account any First Amendment concerns.

25     I will just echo, for Mr. Bilbrough's sake, one thing

1  that his defense counsel said is that if he does start

2  associating with folks in a way that goes more toward conduct

3  and less towards speech, that he is probably going to end up

4  violating another supervised release condition, and that will

5  put him right back in front of Your Honor.

6          THE COURT:  Okay.  And, so, just to recap, then, I am

7  not sure I am capturing what everyone thought as well as what I

8  am thinking, but in terms of training camps, I would propose a

9  condition that the defendant not attend training camps by The

10 Base or any other organization in which there is -- in which

11 firearms are present.  Is that a fair condition?

12         MR. BONSIB:  I think so, Your Honor.

13         MR. WINDOM:  Yes, Your Honor.

14         THE COURT:  Ms. Coleman, do you want to finish up if

15 there is anything else you wanted to offer regarding the

16 sentence?

17         MS. COLEMAN:  Your Honor, I think I said -- I hope

18 that I conveyed to you why this sentence is appropriate, and I

19 would ask you to go along with the government's recommendation.

20         THE COURT:  Okay.  And the last question was whether

21 you have any recommendations you would like me to make to the

22 Bureau of Prisons?

23         MR. BONSIB:  Mr. Bilbrough has asked to be -- is

24 asking -- requesting that he wanted the recommendation to

25 Butner because it's a medical facility.  Is that still your

1   request, Mr. Bilbrough?

2            THE DEFENDANT:  Yes.  That's my request.

3            THE COURT:  And largely as a result, if I am not

4   mistaken, as a result of the diabetes.  Is that correct?

5            THE DEFENDANT:  Yes.  I am a Type 1 diabetic.

6            THE COURT:  So if there is nothing else from counsel,

7   I will hear from Mr. Bilbrough.  If you would like, you have

8   the opportunity to make a statement before the sentencing

9   issues.

10           MR. BONSIB:  Your Honor, if I might, I don't know if

11  this was addressed, I know that the Court recommended drug

12  treatment upon release.  Perhaps the Court could also recommend

13  in the sentence, indicate the RDAP program if it's available,

14  if he is an appropriate candidate for that.

15           THE COURT:  Okay.  If there is no objection to that,

16  I can make the recommendation.

17        Mr. Bilbrough, your turn.

18           MS. COLEMAN:  Your Honor, if I may, I spoke --

19           THE COURT:  Sorry.  Once counsel are done, it will be

20  your turn.  Ms. Coleman.

21           MS. COLEMAN:  I just wanted to say, Mr. Bilbrough,

22  when he and I spoke, when we had our breakout room, he has

23  asked me to represent to the Court that he does take this case

24  very seriously and that he is going to do his best to prove to

25  the Court that he understands how this experience has actually

1  [audio gap] -- what good has come from it, and that you please

2  impose the sentence that we have agreed to.  He's indicated he

3  wanted me to address you on his behalf rather than speak to you

4  directly.

5         THE COURT:  So just to clarify, Mr. Bilbrough, having

6  heard Ms. Coleman's representation, you don't want to state

7  anything generally.  Correct?  Ms. Coleman?

8         MS. COLEMAN:  Yes, Your Honor.  Yes.  He wrote a

9  statement.

10         THE COURT:  Okay.  Thank you.  Why don't you just

11  give me a moment and I will get ready to issue the sentence.

12         MR. WINDOM:  Your Honor, just because I have had to

13  deal with this before, can we get some affirmation that

14  Mr. Bilbrough at least heard what Ms. Coleman said?

15         THE COURT:  Yes.

16         THE DEFENDANT:  I heard what she said.

17         THE COURT:  And you are comfortable not making a

18  statement; is that correct?

19         THE DEFENDANT:  Correct.

20         THE COURT:  Thank you.

21     (It is the policy of this court that every guilty plea

22  and sentencing proceeding include a bench conference concerning

23  whether the defendant is or is not cooperating.)

24         THE COURT:  Okay.  So, in considering the appropriate

25  sentence for Mr. Bilbrough, I have considered the advisory

1    guideline range, as well as all the factors in 18, U.S.C.,

2    3553(a), as well as Congress's direction that the sentence

3    imposed be sufficient, but not greater than necessary, to

4    comply with the purposes of sentencing.  I have also considered

5    the parties' agreed-upon recommendation of a total sentence of

6    60 months under Rule 11(c)(1)(C).  I will discuss some but not

7    all of the relevant factors here.

8         First, on the nature and circumstances of the offense,

9    this is a case involving the transportation of an alien,

10   Mr. Mathews, unlawfully from Canada to and within the United

11   States.  That offense, in and of itself, may not be the most

12   serious federal offense, but the transport was in the context

13   of assisting Mr. Mathews in participating in the activities of

14   The Base, a white supremacist organization.  Although having a

15   particular ideology is not a crime, the defendant assisted

16   Mr. Mathews and Mr. Lemley, another Base member, to go to a

17   Base training camp, required significant amounts of ammunition.

18   There was also part of a discussion in which they handled an

19   assault rifle constructed by Mr. Mathews who had planned to

20   attend the rally in Virginia in a clandestine way with weapons.

21        There was also discussion of drug manufacturing, illegal

22   drug manufacturing and potential distribution.  And, so, where

23   the transporting was connected to what can be construed under

24   the available facts as a plan to engage in violence at a large

25   public gathering, this conduct was more serious than an

1  ordinary offense and warrants the upward departure that has

2  already been discussed.

3        At the same time, the Court recognizes it was more

4  limited than the other two charged individuals.  Mr. Lemley

5  appears to have been the leader of the transporting activity.

6  Mr. Bilbrough did remove himself from these activities before

7  the January 20th rally in Virginia, and he has accepted

8  responsibility.  Those factors all go to his benefit.

9        As for the history and characteristics of the defendant,

10  Mr. Bilbrough has no criminal record.  He was only 19 at the

11  time of these events.  His parents were not available as he was

12  growing up, so he was raised by his grandmother, although it

13  was a stable upbringing.

14        His undoing appears to have been a result of Internet

15  searches that led him to The Base and influence of that

16  organization.  Although some of the letters that were submitted

17  have characterized him as a victim, someone doesn't just get

18  involved in this activity against his will.  There had to have

19  been some excuse to get involved in these activities, but

20  perhaps the ideology is not a crime.  Whether he knew that

21  involvement in The Base would lead to criminal activity at the

22  outset, such as transporting aliens, is not clear.

23        So the Courts finds, overall, Mr. Bilbrough's history and

24  characteristics, particularly his lack of any criminal history

25  and his youth, do not -- are mitigating factors and counsel

1  against a particularly high upward departure.  When considering

2  all these factors, because of the seriousness of the nature and

3  circumstances of this offense and its connection to the

4  extremely dangerous, potential violent activity at the rally,

5  the Court agrees with the parties' joint recommendation of a

6  five-year sentence, which constitutes an upward departure.

7      That sentence is necessary to reflect the seriousness of

8  the offense, to promote respect for the law, to provide just

9  punishment, and to provide adequate deterrence both to

10 Mr. Bilbrough for having engaged in activity like this and also

11 others who might engage in this type of activity or the

12 violence that -- to which the crime might be committed as well.

13     So, with that, I will impose the sentence.  In the case

14 of *The United States vs. Bilbrough*, the Court sentences you,

15 Mr. Bilbrough, as follows:  On Counts One and Two, conspiracy

16 to transport certain aliens and transport certain aliens, the

17 Court sentences you on each count to a term of imprisonment of

18 60 months, to be followed by three years of supervised release.

19 All terms will run concurrently.

20     I will make the recommendation to the Bureau of Prisons

21 that you be designated to FCI Butner for medical reasons and

22 also to the RDAP program.  I will impose no fine.  You are

23 required to pay the special assessment of $200.

24     In addition to the standard and statutory conditions of

25 supervised release, I will impose the following special

1  conditions of supervised release: first, that you be subject to

2  substance abuse testing and that you not tamper with the

3  testing methods or try to avoid or subvert the testing methods;

4  second, that you undergo substance abuse treatment at the

5  direction of the probation officer; that you also undergo

6  mental health treatment at the direction of the probation

7  officer and treating professionals.

8        There will be -- you will be required -- as a condition,

9  you are not permitted to engage in any foreign travel without

10 the permission of the probation officer.  You are also to have

11 no contact with Mr. Lemley, Mr. Mathews, or any other witness

12 to this, coconspirators or the witnesses or any convicted

13 felons during the term of supervised release.  You also are not

14 permitted to attend any training camps of The Base or any other

15 organization at which firearms are present.

16       I would note for you, Mr. Bilbrough, that one of the

17 standards conditions which I didn't state specifically is that

18 there be no possession of a firearm or ammunition, which also,

19 once you are convicted, is a crime in and of itself.  So, I

20 think those are included there as well.

21       I believe there is no forfeiture order imposed here,

22 Mr. Windom; is that correct?

23            MR. WINDOM:  That's correct, Your Honor.

24            THE COURT:  I believe that completes the terms of the

25 sentence.

1      Mr. Bilbrough, just to address you briefly, the

2   transporting an alien by itself may not have seemed like the

3   most serious crime, this episode involving Mr. Lemley and

4   assisting Mr. Mathews as he entered and traveled in the United

5   States illegally, having unsecured firearm and ammunition --

6   helping to secure firearms and ammunition -- or ammunition and

7   also to participate in activities involving discussions of

8   firearms and drugs and then being involved in discussions about

9   going to the rally in Virginia has the potential for some very

10  serious and violent consequences.

11      Regardless of the viewpoints of The Base and its members,

12  the law cannot tolerate that kind of violence that you were

13  facilitating, and so a serious sentence is required.

14      Now, during this sentence, I hope you will consider how

15  you can get yourself back on a law-abiding path, which you

16  certainly can do.  You have no prior criminal record.  You have

17  got yourself off this path before it got too far into violence,

18  and you also have a lot of support from family and friends as

19  noted in the letters that were submitted, and you are still

20  young.  You have a lot going for you.  And so I urge you to

21  seriously reflect on the path you have been on, get training

22  and counseling while you are in prison, treatment, and come

23  back ready to get on a more positive path that will make your

24  grandmother and family proud.

25      If you revert back, though, and be involved in the kind

1  of activities that involve violence like what was about to

2  happen in this case, you may be back in prison again and an

3  even longer sentence may follow.

4       So, although there are no conditions of supervised

5  release formally barring you from viewing certain materials on

6  the Internet or interacting with certain individual people who

7  have a certain viewpoint, I would certainly say those types of

8  activities are -- put you in a much more susceptible position

9  to reverting back to this type of activity.  And, so, for your

10 sake and the sake of your family and your community, and our

11 community, I would urge you to head off in a different

12 direction both while you are in prison and after you are out.

13 If you do that, hopefully you will find that you can lead a

14 productive, law-abiding life in the future that benefits

15 everyone.

16      So, with that, Mr. Bilbrough, I tell you you generally

17 have the right to appeal your conviction and sentence subject

18 to any waivers you may have made in the plea agreement.  If

19 there is basis to appeal and you wish to do so, you must file a

20 notice of appeal within 14 days of the entry of judgment.  If

21 you request, the clerk will prepare and file a notice of appeal

22 on your behalf.  If you cannot afford to pay the costs of an

23 appeal or for appellate counsel, you can apply to have the

24 Court waive the filing fee and appoint counsel to represent you

25 on the appeal.

1          Do you understand, Mr. Bilbrough?

2               THE DEFENDANT:  Yes.  I understand, Your Honor.

3               THE COURT:  Okay.  Mr. Windom, is it now time for the

4     government to dismiss the remaining counts of the indictment?

5               MR. WINDOM:  Yes, Your Honor.  We dismiss Counts

6     Three, Four, and Five.  And also, Your Honor, just one point of

7     clarity for defense counsel, Butner has three FCIs in the

8     Federal Medical Center there, and I believe that they want it

9     in place or recommended to the Federal Medical Center on the

10    order.

11              MR. BONSIB:  That is correct.  Thank you.

12              THE COURT:  Okay.  I mean, I have had to deal with

13    the niceties of Butner recently as well, and I don't know -- my

14    general understanding is regardless of where you are on the

15    complex, the fact is that there is a federal medical center

16    there, but I will make that recommendation.  The BOP,

17    obviously, will make its determination, but I think if you end

18    up anywhere on the complex, that at least gives you the benefit

19    of being in proximity to the medical experts that they have

20    there.

21         So I will grant the government's motion to have Counts

22    Three, Four, and Five dismissed.

23         Mr. Bilbrough is already in the custody of the marshal's

24    service, so he is remanded back there until he is designated.

25         Is there anything else we should discuss?

1        MR. BONSIB:  Your Honor, I don't know if this has

2   been discussed before I came back, but I understand that the

3   probation officer wants to do the post PSI, so I don't know if

4   we need some technical assistance with that or how that might

5   work so Mr. Bilbrough doesn't get taken away.

6        THE COURT:  You are saying that -- Mr. Encarnacion, I

7   assume you wanted to do a PSR report?

8        PROBATION OFFICER ENCARNACION:  We will have to file

9   a supplemental report in place of the PSR, so I will need to

10  interview him after this hearing concludes.

11       THE COURT:  Okay.  So, Ms. Solomon, can we have some

12  connection with Mr. Encarnacion, Mr. Bilbrough, and counsel?

13       THE DEPUTY CLERK:  I will transfer this to

14  Mr. Encarnacion.

15       THE COURT:  With that, I believe we can conclude the

16  hearing.  Thank you all very much.

17       MR. WINDOM:  Thank you, Judge.

18      (The proceedings were concluded at 12:01 p.m.)

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3          I, Renee A. Ewing, an Official Court Reporter for

4   the United States District Court for the District of Maryland,

5   do hereby certify that the foregoing is a true and correct

6   transcript of the stenographically reported proceedings taken

7   on the date and time previously stated in the above matter;

8   that the testimony of witnesses and statements of the parties

9   were correctly recorded in machine shorthand by me and

10  thereafter transcribed under my supervision with computer-aided

11  transcription to the best of my ability; and that I am neither

12  of counsel nor kin to any party in said action, nor interested

13  in the outcome thereof.

14

15                        Renee A  Ewing

16

17                        Renee A. Ewing, RPR, RMR, CRR
                          Official Court Reporter
18                        June 22, 2021

19

20

21

22

23

24

25

## $

**$10,500** [1] - 40:1
**$100** [4] - 11:10, 11:13, 12:5, 46:13
**$200** [3] - 12:6, 40:2, 66:23
**$250,000** [2] - 11:9, 11:13
**$550** [1] - 33:1
**$75,000** [1] - 40:2

## 1

**1** [1] - 62:5
**10:01** [1] - 1:11
**10:30** [1] - 3:2
**11** [1] - 54:11
**11(c)(1)(C)** [1] - 64:6
**116** [1] - 1:21
**12** [4] - 13:11, 13:16, 21:21, 31:9
**12:01** [1] - 71:18
**13** [2] - 18:22, 34:12
**131** [1] - 37:18
**1324(a)(1)(A)(ii** [1] - 9:10
**1324(a)(1)(A)(iii** [1] - 9:14
**1324(a)(1)(A)(v)(I** [2] - 9:8, 9:12
**134** [1] - 37:19
**14** [1] - 69:20
**15** [8] - 23:3, 23:9, 23:13, 23:14, 23:17, 23:23, 24:11, 39:20
**15002(b)(2** [1] - 3:17
**1550** [1] - 32:25
**18** [4] - 21:24, 23:17, 39:24, 64:1
**19** [4] - 45:9, 52:19, 55:5, 65:10
**19-year-old** [1] - 46:10
**19th** [1] - 31:10

## 2

**20** [1] - 7:13
**20-year-old** [1] - 46:10
**2018** [1] - 30:2
**2019** [14] - 30:19, 30:22, 31:1, 31:10, 31:24, 32:15, 32:19, 32:24, 33:7, 33:10, 33:21, 44:3, 52:22
**2020** [2] - 1:11, 18:21
**2021** [1] - 72:17
**20770** [2] - 1:16, 1:17
**20th** [1] - 65:7
**21** [3] - 27:20, 52:25,

56:10
**21st** [1] - 33:10
**22** [1] - 72:17
**24** [2] - 23:17, 39:24
**24-hour** [1] - 44:16
**29th** [1] - 18:21
**2L1.1** [3] - 22:9, 40:11, 40:25
**2L1.1(a)(3** [1] - 21:22
**2L1.1(b)(5)(C** [1] - 21:25
**2nd** [2] - 30:22, 32:24

## 3

**301** [4] - 1:17, 1:22, 1:24, 16:16
**30th** [2] - 31:24, 44:3
**31st** [1] - 32:15
**32(c)** [1] - 39:17
**32(c)(1)(A)(ii** [1] - 39:9
**344-3109** [1] - 16:16
**344-3227** [1] - 1:24
**344-4433** [1] - 1:17
**3553** [1] - 42:21
**3553(a** [2] - 54:8, 64:2

## 4

**41** [1] - 23:22
**441-3000** [1] - 1:22
**47** [1] - 37:22
**4th** [1] - 30:22

## 5

**50** [1] - 47:21
**51** [1] - 23:22

## 6

**60** [5] - 25:23, 27:16, 55:10, 64:6, 66:18
**60-month** [3] - 25:25, 26:13, 54:6
**600** [2] - 32:1, 43:22
**6406** [1] - 1:15
**6411** [1] - 1:20
**69** [1] - 37:22

## 7

**7** [6] - 22:8, 40:12, 47:19, 48:3, 48:10, 49:19
**7(a** [1] - 41:1
**70** [1] - 37:22
**71** [1] - 37:22
**72** [1] - 37:22
**77** [1] - 37:22

## 8

**8** [5] - 1:11, 9:7, 9:10, 9:12, 9:13
**800** [1] - 1:16
**81** [1] - 37:22
**83** [1] - 37:22
**86** [1] - 37:22

## 9

**9** [1] - 18:22
**922(g** [1] - 49:14
**93** [1] - 37:22

## A

**a)(1)(A)(v)(II** [1] - 9:10
**a)(1)(A)(v)(II)** [1] - 9:14
**A.M** [1] - 1:11
**abetted** [1] - 10:20
**abiding** [2] - 68:15, 69:14
**ability** [1] - 72:11
**able** [5] - 8:11, 20:1, 20:10, 34:1, 55:23
**abroad** [1] - 30:3
**absence** [1] - 37:16
**absent** [2] - 50:17, 50:19
**absolute** [1] - 17:7
**absolutely** [1] - 54:22
**abuse** [6] - 51:15, 56:6, 56:8, 59:10, 67:2, 67:4
**accept** [4] - 6:13, 22:17, 27:9, 28:21
**acceptance** [2] - 22:4, 22:5
**accepted** [3] - 36:17, 52:10, 65:7
**access** [2] - 30:17, 50:8
**account** [2] - 16:1, 60:24
**accounted** [1] - 47:13
**accounts** [1] - 53:7
**achieve** [1] - 54:7
**act** [1] - 57:23
**Act** [2] - 3:18, 36:21
**acted** [1] - 10:21
**acting** [3] - 6:14, 6:17, 31:12
**action** [3] - 47:14, 49:2, 72:12
**actions** [4] - 54:22, 55:3, 55:6, 55:11
**activities** [11] - 33:18, 41:4, 47:20, 49:24, 64:13, 65:6, 65:19,

68:7, 69:1, 69:8
**activity** [23] - 22:11, 34:7, 41:3, 41:4, 44:19, 44:23, 46:17, 47:4, 47:5, 47:11, 47:12, 47:17, 48:13, 54:3, 57:15, 59:21, 65:5, 65:18, 65:21, 66:4, 66:10, 66:11, 69:9
**acts** [3] - 29:23, 43:3, 48:17
**actual** [2] - 48:1, 49:2
**add** [2] - 22:25, 23:8
**addiction** [1] - 8:5
**addition** [1] - 66:24
**additional** [3] - 11:24, 15:4, 38:24
**address** [2] - 52:5, 63:3, 68:1
**addressed** [2] - 62:11
**addresses** [1] - 45:13
**adequate** [2] - 25:11, 66:9
**adequately** [1] - 38:7
**adjudged** [1] - 36:17
**administer** [1] - 6:19
**admitted** [1] - 30:16
**admitting** [1] - 42:9
**adoptive** [1] - 52:16
**Adrienne** [1] - 2:12
**adult** [3] - 53:1, 53:2, 55:8
**advantage** [1] - 6:11
**advice** [1] - 8:19
**advise** [1] - 4:14
**advisory** [2] - 39:24, 63:25
**affect** [1] - 18:13
**affidavit** [1] - 50:9
**affirmation** [1] - 63:13
**afford** [1] - 69:22
**afforded** [1] - 30:17
**African** [1] - 29:24
**African-Americans** [1] - 29:24
**age** [2] - 52:25, 56:10
**agents** [1] - 44:18
**ago** [1] - 47:21
**agree** [10] - 13:16, 22:7, 29:3, 29:12, 34:5, 34:16, 34:17, 38:10, 39:21, 59:9
**agreed** [7] - 4:22, 13:23, 21:19, 22:14, 22:24, 23:10, 24:4, 24:23, 24:24, 25:21, 25:22, 40:10, 53:18, 53:19, 57:15, 63:2, 64:5

**agreed-upon** [1] - 64:5
**agreement** [37] - 10:6, 10:9, 18:20, 18:25, 19:2, 20:19, 20:23, 21:2, 21:13, 22:6, 22:15, 23:1, 24:1, 24:4, 24:22, 25:24, 26:24, 27:7, 27:13, 27:19, 27:21, 27:22, 27:25, 28:1, 28:2, 28:4, 28:9, 29:10, 35:5, 39:19, 39:22, 40:10, 40:23, 41:9, 52:11, 52:21, 69:18
**agreements** [2] - 28:3
**agrees** [1] - 66:5
**ahead** [3] - 19:21, 29:5, 45:7
**AIDED** [1] - 1:25
**aided** [2] - 10:20, 72:10
**air** [1] - 31:5
**alcohol** [1] - 56:8
**alcoholic** [1] - 8:8
**alien** [10] - 10:16, 10:18, 10:21, 22:10, 41:1, 41:2, 48:12, 64:9, 68:2
**alien's** [1] - 10:22
**aliens** [13] - 9:7, 9:9, 9:11, 9:13, 10:4, 10:7, 10:15, 35:25, 36:3, 47:3, 65:22, 66:16
**allow** [1] - 4:9
**allowed** [2] - 26:8, 26:14
**allowing** [1] - 39:14
**allows** [1] - 3:18
**almost** [1] - 54:10
**alone** [2] - 49:6, 49:15
**amenable** [1] - 50:17
**Amendment** [8] - 47:14, 47:16, 47:17, 57:13, 58:13, 59:21, 59:24, 60:24
**AMERICA** [1] - 1:5
**America** [1] - 2:5
**Americans** [2] - 29:24
**ammunition** [13] - 33:1, 44:8, 46:24, 47:1, 49:11, 49:13, 53:24, 58:10, 64:17, 67:18, 68:5, 68:6
**amount** [2] - 12:11, 44:8
**amounts** [1] - 64:17
**AND** [1] - 1:19
**answer** [2] - 7:4, 7:7

answers [1] - 7:8
anticipate [1] - 46:3
anyhow [1] - 60:16
apologize [1] - 19:17
appeal [12] - 17:16,
17:17, 27:6, 27:8,
27:9, 27:14, 69:17,
69:19, 69:20, 69:21,
69:23, 69:25
appear [1] - 37:20
appearance [2] - 3:4,
36:20
appearing [1] - 3:13
appellate [1] - 69:23
applicable [1] - 21:20
applicant's [3] -
30:13, 30:14, 30:15
applicants [1] - 30:10,
30:12, 30:16
Application [7] - 22:8,
40:11, 40:25, 47:19,
48:3, 48:10, 49:19
application [1] - 30:12
applies [4] - 21:22,
22:8, 34:5, 47:23
apply [6] - 21:10, 22:2,
22:14, 53:19, 55:12,
69:23
appoint [2] - 14:11,
69:24
appreciated [1] - 55:5
appropriate [10] -
24:6, 52:6, 52:7,
55:17, 58:15, 59:4,
59:10, 61:18, 62:14,
63:24
appropriately [1] -
60:3
area [3] - 31:17, 32:11,
59:18
argument [3] - 41:10,
42:18, 50:6
arranged [1] - 31:16
arrest [1] - 45:18
arrested [2] - 54:10,
54:16
arrests [1] - 38:15
arrival [1] - 31:10
arrived [1] - 33:10
article [1] - 31:11
aspects [1] - 57:12
assault [3] - 33:11,
44:15, 64:19
assessment [6] -
11:10, 11:14, 12:4,
40:2, 46:14, 66:23
assist [1] - 19:18
assistance [2] - 33:12,
71:4
Assistant [1] - 2:11

assisted [3] - 43:20,
49:9, 64:15
assisting [1] - 54:23,
64:13, 68:4
associate [3] - 51:7,
57:10, 57:18
associated [1] - 18:1
associating [7] - 53:4,
56:21, 56:24, 57:1,
57:8, 57:24, 61:2
association [1] -
53:13
associations [2] -
30:13, 58:4
assume [2] - 40:13,
71:7
assurances [1] - 28:8
Atomwaffen [1] - 30:7
Attachment [1] -
29:11
attachments [1] -
37:18
attempt [1] - 44:20
attempted [2] - 33:23,
49:21
attend [8] - 30:24,
32:21, 33:15, 41:5,
58:21, 61:9, 64:20,
67:14
attended [3] - 31:2,
32:23, 43:10
attending [3] - 58:7,
59:19, 59:22
attention [1] - 2:1
ATTORNEY [1] - 1:14
attorney [3] - 14:10,
14:13, 59:1
Attorney [1] - 2:11
attorneys [7] - 4:22,
8:17, 8:23, 9:19,
13:12, 14:20, 21:10
audio [5] - 42:4,
42:14, 44:16, 60:9,
63:1
August [9] - 30:19,
30:22, 31:1, 31:10,
31:24, 32:15, 43:15,
52:22
authorities [1] - 18:14
authority [2] - 21:4,
39:11
available [4] - 5:20,
62:13, 64:24, 65:11
avoid [3] - 25:13,
59:15, 67:3
aware [3] - 36:13,
37:4, 53:6

**B**

background [2] -
20:4, 30:10
balance [2] - 55:10,
60:23
barring [1] - 69:5
base [1] - 21:20
Base [62] - 29:16,
29:18, 29:19, 30:2,
30:8, 30:10, 30:17,
30:19, 30:21, 31:2,
31:6, 31:12, 31:14,
31:16, 31:17, 31:19,
32:5, 32:10, 32:16,
32:22, 33:16, 33:18,
43:2, 43:12, 43:17,
43:19, 44:2, 44:11,
44:19, 45:18, 45:19,
45:21, 45:23, 46:20,
48:15, 48:25, 49:24,
50:2, 51:2, 51:8,
52:2, 53:14, 57:2,
57:5, 57:6, 59:19,
59:22, 60:8, 60:9,
60:11, 60:12, 61:10,
64:14, 64:16, 64:17,
65:15, 65:21, 67:14,
68:11
Base's [2] - 29:21,
30:5
based [9] - 3:23, 21:6,
22:3, 23:1, 23:25,
25:14, 44:22, 58:25,
60:20
basis [6] - 28:22,
36:15, 51:1, 51:6,
57:23, 69:19
Bay [1] - 33:6
became [1] - 10:8
become [2] - 31:15,
55:8
becoming [1] - 18:16
BEFORE [1] - 1:10
begin [2] - 6:19, 41:11
beginning [2] - 32:18,
48:9
behalf [7] - 2:17, 3:1,
14:23, 31:13, 34:11,
63:3, 69:22
behavior [7] - 22:12,
34:8, 44:23, 48:3,
48:8, 49:16, 49:23
behind [1] - 43:8
below [2] - 25:15,
25:16
Beltway [1] - 33:5
bench [1] - 63:22
benefit [3] - 51:12,
65:8, 70:18

benefits [1] - 69:14
best [2] - 62:24, 72:11
better [3] - 19:22,
42:14, 55:2
between [2] - 53:13,
55:10
beverages [1] - 8:8
beyond [3] - 14:4,
14:6, 29:13
Bilbrough [136] - 2:6,
2:17, 2:20, 3:1, 3:7,
3:10, 4:17, 4:18, 5:5,
5:7, 5:13, 5:25, 6:1,
6:5, 6:7, 6:21, 7:1,
7:3, 11:15, 15:9,
15:14, 15:22, 17:2,
18:24, 19:12, 20:1,
20:8, 20:16, 20:18,
21:17, 22:19, 29:2,
29:7, 29:15, 30:23,
31:1, 31:6, 31:7,
31:22, 31:25, 32:3,
32:4, 32:6, 32:10,
32:12, 32:14, 32:20,
32:25, 33:2, 33:3,
33:8, 33:10, 33:11,
33:13, 33:18, 33:21,
33:24, 34:2, 34:6,
34:9, 34:12, 34:15,
35:13, 35:19, 35:22,
36:11, 38:11, 39:13,
41:18, 43:10, 43:19,
43:21, 43:24, 44:2,
44:3, 44:7, 44:9,
44:12, 44:14, 44:18,
45:9, 45:15, 45:16,
45:20, 46:1, 46:8,
46:25, 48:14, 48:22,
49:5, 49:9, 49:19,
51:3, 52:10, 52:14,
52:19, 52:25, 53:10,
53:16, 53:20, 53:22,
53:24, 54:1, 54:9,
55:21, 56:20, 57:1,
57:7, 57:21, 57:24,
58:2, 58:8, 58:21,
58:24, 61:23, 62:1,
62:7, 62:17, 62:21,
63:5, 63:14, 63:25,
65:6, 65:10, 66:10,
66:14, 66:15, 67:16,
68:1, 69:16, 70:1,
70:23, 71:5, 71:12
BILBROUGH [2] - 1:8,
6:23
Bilbrough's [5] -
32:20, 53:13, 56:2,
60:25, 65:23
bit [5] - 29:8, 41:17,
45:4, 57:3, 60:18

blade [1] - 31:7
Bonsib [18] - 2:16,
2:19, 2:24, 2:25,
4:13, 8:18, 15:13,
15:21, 19:5, 19:12,
19:25, 20:9, 20:13,
34:12, 56:3, 59:3,
59:5, 59:7
BONSIB [15] - 1:19,
1:19, 2:16, 2:25,
4:15, 5:8, 15:7, 16:4,
16:14, 60:6, 61:12,
61:23, 62:10, 70:11,
71:1
book [2] - 32:16,
48:20
BOP [2] - 51:4, 70:16
border [3] - 31:23,
43:18, 44:1
born [1] - 7:14
Brady [1] - 36:23
brain [1] - 52:24
breakout [2] - 15:25,
62:22
Brian [1] - 29:17
Bridge [1] - 33:6
briefly [2] - 56:10,
68:1
briefs [1] - 37:21
bring [1] - 49:3
bringing [2] - 32:15,
37:2
broad [1] - 57:3
broadly [2] - 50:25,
51:6
building [1] - 30:2
burden [1] - 14:6
Bureau [4] - 39:14,
52:8, 61:22, 66:20
Butner [4] - 61:25,
66:21, 70:7, 70:13
BY [4] - 1:14, 1:15,
1:19, 1:20

**C**

cabin [1] - 50:5
calculate [1] - 24:7
calculations [5] -
21:14, 39:1, 39:22,
40:3, 40:8
camera [1] - 59:5
camp [12] - 30:21,
30:24, 31:2, 31:4,
32:18, 32:21, 32:24,
44:8, 49:10, 49:12,
58:11, 64:17
camps [4] - 29:25,
43:9, 43:10, 49:6,
51:2, 51:9, 57:2,

58:7, 58:21, 59:20, 59:22, 61:8, 61:9, 67:14
**Camps** [1] - 30:20
**Canada** [3] - 31:18, 31:20, 64:10
**candidate** [1] - 62:14
**cannot** [7] - 14:2, 17:9, 17:10, 51:6, 58:24, 68:12, 69:22
**capacity** [1] - 31:13
**Capital** [1] - 33:5
**captures** [1] - 52:21
**capturing** [1] - 61:7
**care** [1] - 55:20
**carefully** [1] - 6:16
**CARES** [1] - 3:18
**carry** [1] - 54:5
**carrying** [1] - 48:11
**case** [48] - 4:10, 6:6, 6:9, 8:20, 9:4, 9:19, 11:17, 13:3, 13:11, 14:12, 15:1, 18:20, 19:7, 21:10, 21:20, 22:8, 25:20, 27:23, 28:9, 28:12, 29:1, 29:12, 36:11, 37:1, 38:20, 41:1, 42:23, 47:9, 47:16, 47:21, 50:14, 52:10, 52:12, 53:7, 53:19, 54:6, 54:16, 54:24, 56:22, 57:12, 57:16, 58:5, 59:13, 59:14, 62:23, 64:9, 66:13, 69:2
**cases** [1] - 52:23
**categories** [1] - 57:9
**Category** [1] - 23:21
**category** [1] - 39:21
**cell** [1] - 54:12
**Center** [2] - 70:8, 70:9
**center** [2] - 31:6, 70:15
**certain** [25] - 9:7, 9:9, 9:11, 9:13, 10:4, 10:7, 10:14, 12:9, 12:15, 12:18, 21:2, 22:24, 25:6, 26:25, 31:3, 32:3, 36:3, 45:16, 57:12, 57:25, 66:16, 69:5, 69:6, 69:7
**certainly** [6] - 50:23, 51:5, 57:13, 57:20, 68:16, 69:7
**certainty** [2] - 55:25, 56:2
**certify** [1] - 72:5
**challenge** [1] - 27:2
**chance** [1] - 4:21

**change** [2] - 6:5, 6:8
**character** [1] - 39:6
**characteristics** [5] - 25:8, 39:4, 45:8, 65:9, 65:24
**characterized** [1] - 65:17
**characterizing** [1] - 47:5
**charged** [8] - 9:6, 10:6, 12:24, 13:8, 35:20, 35:23, 52:3, 65:4
**charges** [9] - 9:3, 9:19, 9:21, 9:24, 10:3, 17:20, 35:14, 35:16, 36:13
**chat** [3] - 29:21, 30:4, 43:9
**Chesapeake** [1] - 33:5
**chickens** [1] - 54:18
**chief** [1] - 3:23
**choose** [4] - 17:11, 24:11, 26:5
**CHUANG** [1] - 1:10
**Chuang** [2] - 2:3, 35:13
**circles** [1] - 32:17
**circulated** [1] - 32:17
**circumstances** [7] - 12:10, 12:16, 15:24, 25:8, 60:16, 64:8, 64:20
**citizen** [4] - 7:16, 18:11, 18:12, 18:16
**citizens** [1] - 13:10
**civil** [1] - 18:6
**clandestine** [2] - 33:17, 64:20
**clarify** [5] - 15:14, 16:10, 46:16, 47:16, 63:5
**clarity** [1] - 70:7
**classes** [1] - 55:1
**clear** [3] - 45:10, 60:10, 65:22
**clerk** [5] - 6:19, 35:11, 69:21
**CLERK** [24] - 2:1, 5:6, 5:9, 5:12, 5:15, 5:21, 5:25, 6:21, 6:24, 7:2, 15:24, 16:5, 16:12, 16:16, 16:20, 35:13, 35:18, 35:22, 36:2, 36:5, 36:9, 41:23, 42:9, 71:13
**client** [3] - 4:14, 19:6, 20:13
**close** [2] - 20:5, 58:14
**closed** [3] - 4:1, 43:8

**closer** [1] - 19:15
**co** [1] - 56:24
**co-felons** [1] - 56:24
**coalition** [1] - 30:2
**Coast** [1] - 32:8
**coconspirators** [10] - 44:19, 46:5, 50:24, 51:23, 52:3, 56:21, 58:5, 59:13, 67:12
**Code** [1] - 9:8
**Codefendant** [1] - 31:9
**codefendants** [1] - 29:17
**cognizant** [1] - 53:3
**Coleman** [22] - 2:17, 3:1, 3:2, 8:18, 15:9, 15:11, 15:15, 15:23, 16:8, 16:13, 16:23, 19:5, 20:6, 35:8, 35:18, 40:19, 52:5, 59:20, 61:14, 62:20, 63:7, 63:14
**COLEMAN** [23] - 1:20, 16:9, 16:24, 19:8, 19:11, 19:17, 19:20, 19:22, 19:25, 20:7, 20:14, 35:10, 35:21, 38:5, 38:13, 40:5, 40:21, 52:9, 58:19, 61:17, 62:18, 62:21, 63:8
**Coleman's** [1] - 63:6
**College** [1] - 7:24
**college** [2] - 8:1, 8:2
**combined** [1] - 49:20
**comfortable** [1] - 63:17
**coming** [2] - 42:13, 54:23
**Commission** [1] - 21:4
**commit** [1] - 43:3
**commitments** [1] - 21:14
**committed** [6] - 17:19, 21:8, 21:23, 54:4, 57:20, 66:12
**committing** [3] - 29:23, 48:17, 54:3
**communicating** [1] - 50:24
**communications** [1] - 20:10
**communism** [1] - 47:22
**communities** [2] - 29:24, 48:18
**Community** [1] - 7:24
**community** [4] - 8:1,

53:9, 69:10, 69:11
**comparison** [1] - 55:7
**competent** [1] - 36:12
**competing** [1] - 2:12
**complete** [5] - 27:21, 27:22, 28:1, 29:9, 41:20
**completes** [1] - 67:24
**completion** [1] - 31:15
**complex** [2] - 70:15, 70:18
**comply** [1] - 64:4
**COMPUTER** [1] - 1:25
**computer** [1] - 72:10
**COMPUTER-AIDED** [1] - 1:25
**computer-aided** [1] - 72:10
**concern** [3] - 56:25, 57:2, 59:20
**concerned** [1] - 57:7
**concerning** [1] - 63:22
**concerns** [2] - 15:14, 60:24
**conclude** [3] - 24:10, 53:15, 71:15
**concluded** [2] - 53:14, 71:18
**concludes** [1] - 71:10
**conclusion** [3] - 24:9, 34:4, 58:3
**concurrently** [1] - 66:19
**condition** [11] - 51:11, 51:19, 56:23, 56:25, 58:6, 59:22, 59:23, 61:4, 61:9, 61:11, 67:8
**conditions** [17] - 11:22, 11:24, 39:12, 50:13, 50:15, 50:22, 52:6, 52:7, 58:18, 59:8, 59:10, 59:20, 59:25, 66:24, 67:1, 67:17, 69:4
**conduct** [18] - 3:25, 25:12, 43:7, 44:4, 44:12, 45:12, 45:13, 45:23, 46:2, 46:3, 47:3, 48:1, 49:2, 49:17, 50:10, 58:15, 61:2, 64:25
**conducted** [3] - 3:17, 30:21, 39:19
**confer** [2] - 3:15, 15:23
**conference** [2] - 3:12, 63:22
**confident** [3] - 19:11, 19:25, 20:8

**confirm** [4] - 4:11, 20:12, 36:20, 36:24
**confront** [1] - 14:17
**Congress** [1] - 21:5
**Congress's** [1] - 64:2
**connected** [2] - 60:6, 64:23
**connection** [4] - 5:4, 5:22, 66:3, 71:12
**consent** [4] - 3:19, 4:19, 4:22, 39:16
**consented** [1] - 4:25
**consenting** [1] - 4:12
**consents** [1] - 4:17
**consequences** [4] - 28:15, 36:13, 55:6, 68:10
**consider** [4] - 24:7, 25:6, 53:25, 68:14
**considered** [3] - 37:25, 63:25, 64:4
**considering** [2] - 38:4, 63:24, 66:1
**conspiracy** [7] - 9:7, 9:11, 10:4, 10:9, 11:7, 35:24, 66:15
**conspiratorial** [1] - 43:8
**conspiring** [1] - 43:20
**constitutes** [1] - 66:6
**Constitution** [1] - 13:7
**constitutional** [1] - 6:11
**constructed** [2] - 33:12, 64:19
**constructive** [1] - 60:14
**constructively** [1] - 59:2
**construed** [1] - 64:23
**consult** [1] - 8:23
**consultation** [1] - 38:17
**contact** [4] - 51:22, 52:2, 59:13, 67:11
**contain** [1] - 26:25
**contained** [3] - 25:7, 28:8, 35:14
**containing** [1] - 36:16
**contains** [2] - 27:19, 29:11
**contest** [1] - 57:14
**context** [1] - 64:12
**continue** [5] - 3:20, 13:2, 32:9, 48:25, 55:14
**continued** [1] - 44:4
**continuing** [2] - 17:1, 49:1
**control** [3] - 2:23,

12:17, 53:8
**controlled** [2] - 33:23, 49:21
**conversation** [1] - 50:2
**conveyed** [5] - 19:6, 19:12, 20:13, 20:14, 61:18
**convicted** [7] - 6:10, 12:4, 13:17, 47:1, 56:23, 67:12, 67:19
**conviction** [8] - 12:6, 18:13, 21:6, 27:9, 46:3, 46:11, 58:25, 69:17
**convictions** [2] - 38:15, 38:16
**cooperating** [1] - 63:23
**copy** [3] - 9:2, 18:24, 29:7
**correct** [26] - 4:18, 7:17, 9:16, 16:19, 18:22, 19:3, 28:4, 28:6, 36:7, 36:8, 37:13, 37:15, 38:10, 38:12, 38:22, 40:14, 55:10, 62:4, 63:7, 63:18, 63:19, 67:22, 67:23, 70:11, 72:5
**correctly** [1] - 72:9
**corroborated** [1] - 39:3
**costs** [1] - 69:22
**counsel** [20] - 2:8, 2:14, 3:14, 8:20, 14:10, 14:11, 34:13, 35:18, 54:22, 60:21, 60:23, 61:1, 62:6, 62:19, 65:25, 69:23, 69:24, 70:7, 71:12, 72:12
**counseling** [2] - 56:7, 68:22
**Count** [13] - 9:6, 9:10, 9:13, 10:4, 10:12, 10:14, 10:25, 11:6, 11:11, 21:20, 22:2, 35:24, 36:2
**count** [3] - 11:7, 12:5, 66:17
**country** [1] - 54:2
**counts** [1] - 70:4
**Counts** [11] - 9:8, 9:15, 11:5, 35:12, 35:23, 36:5, 36:6, 36:18, 66:15, 70:5, 70:21
**couple** [1] - 46:15
**course** [8] - 3:16, 4:7,

19:7, 19:19, 37:9, 37:10, 42:23, 50:6
**Court** [39] - 2:2, 2:4, 3:5, 4:1, 4:8, 11:23, 12:5, 12:6, 12:10, 12:16, 13:23, 14:11, 15:2, 22:16, 26:25, 30:10, 39:7, 39:9, 39:11, 40:24, 47:21, 55:16, 56:3, 58:1, 58:4, 60:3, 62:11, 62:12, 62:23, 62:25, 65:3, 66:5, 66:14, 66:17, 69:24, 72:3, 72:4, 72:17
**court** [10] - 3:4, 3:20, 4:1, 17:17, 27:6, 52:17, 54:13, 56:1, 56:23, 63:21
**COURT** [146] - 1:1, 1:23, 2:14, 2:19, 3:6, 4:21, 4:24, 5:18, 6:1, 6:4, 7:3, 7:7, 7:12, 7:14, 7:16, 7:19, 7:21, 7:25, 8:4, 8:7, 8:10, 8:14, 8:17, 8:22, 9:2, 9:6, 9:18, 9:21, 9:24, 10:14, 11:2, 11:15, 11:19, 12:3, 12:9, 12:15, 12:21, 13:7, 13:21, 14:1, 14:9, 14:16, 15:11, 15:18, 15:21, 16:7, 16:10, 16:17, 16:21, 16:23, 16:25, 17:15, 17:23, 18:4, 18:10, 18:19, 18:24, 19:2, 19:5, 19:9, 19:14, 19:19, 19:21, 19:24, 20:3, 20:12, 20:17, 20:22, 20:25, 21:12, 22:18, 22:21, 23:6, 24:3, 24:15, 24:21, 25:5, 25:20, 26:5, 26:12, 26:17, 26:22, 27:5, 27:13, 27:19, 27:25, 28:7, 28:11, 28:14, 28:18, 28:21, 34:14, 34:19, 34:22, 34:25, 35:4, 35:8, 35:11, 36:10, 37:7, 37:16, 38:3, 38:10, 38:14, 38:19, 40:6, 40:10, 40:17, 40:19, 40:24, 41:17, 41:21, 41:25, 42:5, 42:11, 42:15, 42:18, 45:3, 45:7, 46:15, 48:21, 50:12, 51:10, 52:4, 58:6, 59:7, 60:17, 61:6, 61:14,

61:20, 62:3, 62:6, 62:15, 62:19, 63:5, 63:10, 63:15, 63:17, 63:20, 63:24, 67:24, 70:3, 70:12, 71:6, 71:11, 71:15
**Court's** [1] - 17:18
**courthouse** [1] - 13:10
**courtroom** [1] - 14:19
**Courts** [1] - 65:23
**covered** [1] - 45:24
**COVID-19** [3] - 4:1, 4:7, 39:13
**coworkers** [1] - 34:1
**crafting** [1] - 55:9
**create** [2] - 43:3, 50:3
**creating** [1] - 29:22
**creation** [1] - 48:17
**crime** [14] - 6:9, 6:11, 12:5, 12:24, 13:8, 45:9, 46:23, 47:2, 47:8, 64:15, 65:20, 66:12, 67:19, 68:3
**crimes** [9] - 12:11, 12:24, 21:6, 25:12, 30:8, 42:25, 46:11, 46:20, 58:18
**Criminal** [2] - 2:4, 37:10
**CRIMINAL** [1] - 1:5
**criminal** [32] - 21:8, 22:12, 23:15, 23:16, 23:19, 23:21, 25:12, 26:18, 38:11, 38:18, 39:2, 39:21, 41:4, 44:4, 44:23, 45:10, 45:12, 45:23, 46:17, 47:5, 47:12, 48:3, 48:8, 49:16, 49:23, 54:3, 55:9, 65:10, 65:21, 65:24, 68:16
**cross** [1] - 14:21
**cross-examine** [1] - 14:21
**crossed** [2] - 31:22, 43:18
**CRR** [2] - 1:24, 72:16
**culpable** [1] - 46:1
**current** [1] - 30:13
**custody** [2] - 4:5, 70:23

## D

**dangerous** [3] - 21:25, 48:6, 66:4
**date** [1] - 72:7
**dated** [1] - 18:20
**days** [1] - 69:20

**deal** [2] - 63:13, 70:12
**dealing** [1] - 38:16
**debate** [1] - 45:19
**December** [3] - 33:9, 33:21, 52:22
**DECEMBER** [1] - 1:11
**decide** [3] - 25:14, 25:25, 26:12
**decision** [1] - 27:9
**decisions** [4] - 8:11, 17:18, 53:3, 54:21
**Dedjinou** [1] - 2:12
**deemed** [1] - 51:16
**Defendant** [1] - 1:9
**defendant** [22] - 3:13, 3:19, 4:4, 4:10, 4:11, 4:25, 22:9, 25:9, 29:15, 35:6, 35:19, 36:11, 36:12, 36:17, 39:2, 42:25, 44:16, 61:9, 63:23, 64:15, 65:9
**DEFENDANT** [83] - 1:18, 4:19, 4:23, 6:3, 6:23, 7:1, 7:6, 7:11, 7:13, 7:15, 7:18, 7:20, 7:23, 8:3, 8:6, 8:9, 8:13, 8:16, 8:21, 9:1, 9:5, 9:17, 9:20, 9:23, 10:13, 11:1, 11:18, 12:2, 12:8, 12:14, 12:20, 13:6, 13:20, 13:25, 14:8, 14:15, 15:6, 15:16, 15:20, 17:14, 17:22, 18:3, 18:9, 18:18, 18:23, 19:1, 19:4, 20:21, 20:24, 21:11, 22:20, 23:5, 24:2, 24:14, 24:20, 25:4, 25:19, 26:4, 26:11, 26:16, 26:21, 27:4, 27:12, 27:18, 27:24, 28:6, 28:10, 28:13, 28:17, 28:20, 34:17, 34:21, 34:24, 35:2, 35:17, 36:1, 36:4, 36:8, 62:2, 62:5, 63:16, 63:19, 70:2
**defendant's** [2] - 37:17, 39:4
**defendants** [2] - 25:13, 57:10
**defense** [12] - 2:14, 3:9, 36:23, 37:6, 37:8, 38:22, 55:9, 57:11, 59:1, 60:22, 61:1, 70:7
**define** [2] - 47:10, 48:8

**defined** [2] - 47:21, 48:4
**defining** [1] - 46:16
**definition** [1] - 60:8
**Delaware** [9] - 7:24, 8:2, 33:8, 33:9, 33:10, 44:13, 44:15, 49:18, 49:20
**delay** [3] - 3:22, 4:3, 4:8
**delivering** [1] - 54:15
**delivers** [1] - 33:25
**DelTech** [1] - 7:24
**demonstrate** [1] - 52:24
**Denton** [1] - 54:17
**depart** [2] - 15:21, 24:17
**departure** [16] - 22:7, 24:5, 24:25, 25:21, 34:5, 40:11, 40:16, 40:25, 41:6, 44:22, 47:4, 50:11, 53:18, 65:1, 66:1, 66:6
**deportation** [1] - 18:14
**deprive** [1] - 18:5
**DEPUTY** [24] - 2:1, 5:6, 5:9, 5:12, 5:15, 5:21, 5:25, 6:21, 6:24, 7:2, 15:24, 16:5, 16:12, 16:16, 16:20, 35:13, 35:18, 35:22, 36:2, 36:5, 36:9, 41:23, 42:9, 71:13
**described** [5] - 18:1, 23:8, 28:15, 38:4, 45:13
**describes** [1] - 47:20
**describing** [1] - 29:19
**description** [1] - 32:18
**designated** [2] - 66:21, 70:24
**designation** [1] - 39:14
**destroyed** [1] - 55:22
**detail** [1] - 20:15
**detention** [12] - 3:13, 4:6, 38:7, 38:25, 39:6, 39:7, 39:12, 46:18, 50:7, 54:19, 55:1, 55:21
**determination** [1] - 70:17
**deterrence** [4] - 25:11, 45:17, 45:21, 66:9
**device** [1] - 21:18
**devices** [1] - 30:1
**diabetes** [1] - 62:4

**diabetic** [1] - 62:5
**different** [8] - 23:11, 23:14, 24:9, 24:11, 24:23, 26:7, 31:2, 69:11
**dimethyltryptamine** [1] - 33:22
**direct** [1] - 16:14
**direction** [5] - 32:2, 64:2, 67:5, 67:6, 69:12
**directly** [3] - 37:13, 45:11, 63:4
**disagree** [1] - 58:19
**disagreement** [1] - 57:11
**disassociated** [1] - 45:17
**disavowed** [1] - 34:8
**disclose** [1] - 36:22
**disclosures** [1] - 36:25
**disconnect** [2] - 41:24, 42:6
**discouraged** [1] - 55:23
**discretion** [1] - 59:12
**discuss** [4] - 4:22, 35:5, 64:6, 70:25
**discussed** [16] - 4:15, 9:18, 20:15, 21:9, 25:17, 29:22, 33:14, 33:18, 33:22, 34:25, 44:12, 44:19, 49:24, 49:25, 65:2, 71:2
**discusses** [1] - 47:22
**discussing** [3] - 19:2, 54:22, 59:18
**discussion** [5] - 31:9, 49:1, 52:4, 64:18, 64:21
**discussions** [4] - 20:9, 53:23, 68:7, 68:8
**dismiss** [2] - 70:4, 70:5
**dismissal** [1] - 17:20
**dismissed** [1] - 70:22
**disparate** [1] - 46:5
**disparities** [2] - 25:13, 45:25
**dispute** [6] - 39:1, 53:12, 53:14, 53:16, 53:21
**disregarded** [1] - 10:17
**distracting** [1] - 45:1
**distribution** [1] - 64:22
**DISTRICT** [3] - 1:1, 1:2, 1:11

**district** [1] - 3:24
**District** [4] - 2:2, 72:4
**DIVISION** [1] - 1:3
**Division** [1] - 30:7
**DMT** [7] - 33:22, 33:24, 33:25, 34:1, 34:2, 34:3, 44:20
**Docket** [1] - 2:5
**documents** [1] - 37:20
**domestic** [1] - 50:19
**done** [2] - 16:11, 62:19
**doors** [1] - 43:8
**doubt** [3] - 14:4, 14:6, 29:14
**down** [5] - 33:16, 44:4, 44:6, 57:22, 57:23
**draw** [2] - 17:9, 57:19
**dressed** [1] - 43:12
**drills** [1] - 30:25
**drive** [1] - 44:4
**drives** [1] - 44:9
**driving** [1] - 32:7
**drop** [1] - 60:9
**dropped** [1] - 32:14
**dropping** [1] - 2:13
**drove** [5] - 32:12, 32:21, 33:3, 43:22, 44:12
**drug** [3] - 62:11, 64:21, 64:22
**drugs** [4] - 8:5, 8:8, 56:9, 68:8
**Due** [1] - 36:21
**due** [1] - 4:2
**duplication** [1] - 44:21
**during** [15] - 3:16, 4:6, 6:20, 11:22, 14:13, 17:18, 19:7, 29:4, 32:13, 38:25, 39:5, 51:6, 52:1, 67:13, 68:14

**E**

**early** [2] - 2:13, 33:20
**East** [2] - 32:8, 32:12
**ECF** [3] - 37:18, 37:19, 37:22
**echo** [4] - 41:17, 41:20, 42:16, 60:25
**educate** [2] - 55:2, 55:14
**educated** [1] - 55:8
**education** [1] - 7:22
**efforts** [2] - 53:9, 53:10
**either** [6] - 16:14, 21:14, 42:12, 45:1, 47:8, 59:3

**electronic** [1] - 15:23
**elements** [2] - 10:1, 36:16
**encapsulate** [1] - 51:7
**Encarnacion** [4] - 40:7, 71:6, 71:12, 71:14
**ENCARNACION** [2] - 40:9, 71:8
**encouragement** [1] - 33:13
**encrypted** [2] - 29:21, 43:9
**end** [4] - 5:2, 29:2, 61:3, 70:17
**enforcement** [1] - 53:10
**engage** [7] - 22:11, 34:7, 48:13, 49:5, 64:24, 66:11, 67:9
**engaged** [1] - 66:10
**engineering** [1] - 30:15
**ensure** [1] - 13:13
**enter** [7] - 6:18, 10:18, 22:10, 26:25, 36:12, 41:2, 48:12
**entered** [11] - 10:6, 18:19, 22:15, 25:24, 29:10, 31:20, 32:5, 34:6, 53:21, 54:2, 68:4
**entering** [1] - 43:18
**enterprise** [1] - 43:15
**entertained** [1] - 56:10
**entry** [1] - 69:20
**episode** [1] - 68:3
**errors** [1] - 17:19
**especially** [1] - 55:7
**ESQUIRE** [4] - 1:14, 1:15, 1:19, 1:20
**essential** [1] - 36:16
**establish** [1] - 3:11
**established** [1] - 21:4
**ethno** [3] - 29:23, 43:3, 48:17
**ethno-state** [3] - 29:23, 43:3, 48:17
**evaluate** [1] - 56:18
**evaluation** [2] - 56:12, 56:13
**evening** [3] - 32:15, 33:1, 33:20
**event** [1] - 45:11
**events** [2] - 23:11, 65:11
**evidence** [5] - 14:25, 17:9, 17:12, 37:5, 38:24
**Ewing** [4] - 1:24, 72:3,

72:15, 72:16
**examination** [1] - 39:20
**examine** [1] - 14:21
**example** [1] - 47:6
**exceptionally** [1] - 42:24
**exclusion** [1] - 18:15
**exculpatory** [2] - 36:22, 37:5
**excuse** [1] - 65:19
**exhibits** [3] - 37:21, 38:6, 38:8
**exists** [1] - 51:2
**exits** [1] - 51:3
**expected** [2] - 26:8, 33:15
**experience** [1] - 62:25
**experiences** [1] - 30:15
**experts** [1] - 70:19
**explosive** [1] - 30:1
**explosives** [1] - 30:10
**express** [1] - 57:18
**extent** [4] - 37:4, 50:16, 56:17, 57:17
**extremely** [1] - 66:4
**extremist** [1] - 43:2

**F**

**faces** [1] - 46:8
**facilitating** [1] - 68:13
**facility** [5] - 4:8, 51:4, 54:19, 55:1, 61:25
**fact** [9] - 10:17, 28:23, 34:23, 36:15, 36:25, 53:21, 53:25, 55:21, 70:15
**factors** [11] - 21:7, 25:7, 25:14, 42:21, 45:24, 54:8, 64:1, 64:7, 65:8, 65:25, 66:2
**facts** [3] - 28:25, 29:13, 64:24
**Facts** [13] - 29:8, 29:11, 34:5, 34:11, 38:2, 38:24, 41:6, 44:24, 48:19, 50:6, 50:10, 50:21, 53:5
**factual** [5] - 28:25, 34:15, 34:16, 51:1, 51:5
**failing** [1] - 36:24
**fair** [3] - 13:13, 48:5, 61:11
**false** [1] - 7:9
**falsely** [1] - 7:8
**familiar** [1] - 22:19

**family** [6] - 38:6, 52:16, 55:9, 68:18, 68:24, 69:10
**far** [4] - 7:19, 7:21, 53:11, 68:17
**farmlands** [1] - 54:17
**fashion** [3] - 3:12, 4:17, 60:2
**fast** [1] - 54:13
**FBI** [2] - 43:1, 44:18
**FCI** [1] - 66:21
**FCIs** [1] - 70:7
**feature** [1] - 16:2
**Federal** [2] - 70:8, 70:9
**federal** [10] - 6:9, 12:5, 18:12, 25:7, 26:17, 45:12, 54:13, 56:23, 64:12, 70:15
**fee** [1] - 69:24
**fellow** [1] - 32:5
**felon** [2] - 47:1, 56:23
**felonies** [1] - 18:5
**felons** [7] - 51:7, 56:21, 56:24, 57:4, 58:4, 59:13, 67:13
**felony** [6] - 34:3, 48:5, 48:6, 49:22
**few** [2] - 9:25, 32:15
**field** [1] - 55:9
**figure** [1] - 56:16
**file** [3] - 69:19, 69:21, 71:8
**filing** [2] - 50:8, 69:24
**finalize** [1] - 4:10
**findings** [3] - 3:23, 38:19, 39:23
**fine** [5] - 11:9, 11:13, 40:1, 46:13, 66:22
**finish** [1] - 61:14
**finished** [1] - 7:25
**firearm** [5] - 18:7, 22:1, 30:25, 53:24, 58:9, 67:18, 68:5
**firearms** [12] - 47:7, 58:22, 58:23, 58:25, 59:3, 59:23, 60:2, 60:14, 61:11, 67:15, 68:6, 68:8
**firing** [1] - 31:8
**first** [14] - 3:11, 3:23, 10:5, 10:15, 11:20, 12:23, 21:1, 22:18, 22:23, 27:8, 36:20, 47:19, 64:8, 67:1
**First** [8] - 47:14, 47:16, 47:17, 57:13, 58:12, 59:21, 59:24, 60:24
**fit** [1] - 49:19

**Five** [5] - 9:13, 22:2, 36:6, 70:6, 70:22
**five** [11] - 11:11, 22:16, 25:1, 25:23, 26:1, 26:13, 38:21, 45:20, 46:8, 54:24, 66:6
**five-year** [8] - 22:16, 25:1, 26:1, 26:13, 38:21, 45:20, 46:8, 66:6
**flag** [2] - 31:6, 32:16
**fled** [1] - 31:20
**focus** - 46:20, 50:9
**folks** [2] - 51:8, 61:2
**follow** [3] - 11:23, 25:25, 69:3
**followed** [1] - 66:18
**following** [4] - 11:21, 29:13, 31:3, 66:25
**follows** [1] - 66:15
**FOR** [3] - 1:2, 1:13, 1:18
**forced** - 17:7
**foregoing** [1] - 72:5
**foreign** [6] - 50:17, 50:19, 51:13, 55:18, 59:15, 67:9
**forfeit** [2] - 12:16, 26:24
**forfeiture** [2] - 27:1, 67:21
**form** [1] - 30:12
**formal** [1] - 41:8
**formally** [5] - 40:13, 40:16, 53:15, 57:6, 69:5
**forth** [1] - 54:8
**Four** [4] - 9:9, 36:6, 70:6, 70:22
**four** [3] - 51:2, 52:21, 55:13
**four-month** [1] - 52:21
**fourth** [1] - 10:21
**frankly** [1] - 54:23
**free** [1] - 28:19
**Free** [2] - 31:11, 43:16
**friends** [5] - 38:6, 55:7, 56:16, 68:18
**front** [2] - 29:8, 61:5
**full** [5] - 6:25, 27:20, 27:22, 28:1, 28:4
**fully** [5] - 8:19, 9:18, 36:11, 52:24, 53:2
**furtherance** [1] - 10:22
**furthermore** [1] - 33:17
**future** [3] - 8:12, 55:12, 69:14

**G**

**gap** [1] - 63:1
**GARFIELD** [2] - 1:8, 6:23
**Garfield** [1] - 2:6
**Garfiled** [2] - 7:1, 29:15
**gathering** [1] - 64:25
**gender** [1] - 30:16
**general** [8] - 9:19, 24:5, 45:21, 46:9, 52:23, 56:25, 60:8, 70:14
**generally** [5] - 22:18, 26:23, 27:6, 63:7, 69:16
**Georgetown** [1] - 7:24
**Georgia** [8] - 30:22, 32:21, 32:23, 32:24, 33:3, 43:10, 44:4, 49:15
**given** [5] - 17:25, 27:7, 27:8, 27:14, 59:25
**goal** [2] - 43:2, 48:16
**Government** [1] - 50:4
**government** [34] - 10:2, 10:5, 10:11, 10:15, 10:24, 11:4, 12:25, 13:23, 14:3, 14:5, 16:25, 19:6, 20:15, 22:3, 22:4, 24:4, 25:21, 27:21, 27:23, 28:2, 28:5, 29:1, 34:12, 34:19, 36:22, 36:25, 37:3, 37:12, 40:4, 41:12, 43:6, 57:12, 70:4
**government's** [5] - 34:15, 37:19, 40:22, 61:19, 70:21
**graduated** [1] - 7:25
**grandmother** [6] - 52:15, 54:17, 54:23, 55:21, 65:12, 68:24
**grant** [1] - 70:21
**gravity** [1] - 55:3
**greater** [2] - 54:7, 64:3
**greatly** [1] - 53:25
**GREENBELT** [1] - 1:12
**Greenbelt** [2] - 1:16, 1:21
**ground** [1] - 45:11
**group** [7] - 30:8, 30:18, 43:1, 43:2, 43:3, 43:5, 47:7
**groups** [1] - 57:25
**growing** [1] - 65:12
**guaranteed** [1] - 14:13

**guess** [2] - 45:3, 48:9
**Guideline** [5] - 21:21, 21:25, 22:9, 40:11, 40:25
**guideline** [14] - 22:2, 24:7, 24:16, 24:17, 24:18, 24:24, 24:25, 25:15, 25:22, 39:24, 39:25, 40:1, 41:7, 64:1
**Guidelines** [1] - 21:3
**guidelines** [14] - 21:3, 21:9, 21:14, 21:20, 22:13, 22:25, 23:2, 23:10, 23:25, 24:16, 25:5, 39:1, 39:18, 48:4
**guilt** [2] - 13:15, 14:6
**guilty** [55] - 3:9, 3:18, 6:5, 6:8, 6:9, 6:13, 9:15, 9:25, 10:3, 10:11, 10:24, 11:3, 12:6, 12:22, 12:25, 13:1, 13:2, 13:3, 13:9, 13:14, 13:16, 14:3, 17:15, 17:23, 17:24, 18:4, 18:5, 18:12, 26:2, 26:6, 26:9, 26:14, 27:10, 28:9, 28:12, 28:15, 28:18, 28:21, 28:23, 34:22, 34:23, 35:25, 36:1, 36:3, 36:4, 36:5, 36:6, 36:14, 36:18, 63:21
**gun** [2] - 31:5, 31:8
**guns** [1] - 43:13

**H**

**half** [1] - 52:14
**hand** [2] - 6:22, 6:24
**handcuffs** [1] - 54:12
**handle** [1] - 15:12
**handled** [2] - 53:24, 64:18
**harbor** [1] - 9:11
**harbored** [1] - 22:10
**harboring** [1] - 9:13
**hard** [1] - 19:9
**harm** [3] - 4:3, 4:9, 56:11
**harms** [1] - 3:22
**hate** [1] - 30:8
**havoc** [2] - 50:3, 53:8
**head** [1] - 69:11
**headed** [1] - 32:12
**health** [9] - 3:21, 3:25, 4:2, 51:18, 51:20, 56:7, 56:14, 59:11,

67:6
**hear** [10] - 6:1, 6:3, 8:15, 13:11, 19:10, 19:20, 41:21, 42:15, 42:16, 62:7
**heard** [12] - 11:19, 11:20, 12:3, 22:23, 24:3, 25:20, 34:15, 40:19, 46:25, 63:6, 63:14, 63:16
**hearing** [9] - 2:12, 3:10, 3:17, 3:25, 5:1, 41:16, 50:7, 71:10, 71:16
**hearings** [2] - 46:18, 56:4
**heavily** [1] - 38:1
**heavy** [1] - 14:6
**help** [1] - 15:1
**helpful** [1] - 59:23
**helping** [2] - 54:17, 68:6
**hereafter** [1] - 45:2
**hereby** [1] - 72:5
**high** [2] - 8:1, 66:1
**higher** [6] - 17:16, 23:20, 24:18, 24:24, 27:6, 46:4
**highest** [1] - 7:22
**himself** [8] - 45:18, 52:12, 54:13, 54:18, 55:2, 55:13, 55:14, 65:6
**history** [14] - 21:8, 23:21, 25:8, 38:11, 38:18, 39:4, 39:21, 45:8, 45:10, 51:15, 51:20, 65:9, 65:23, 65:24
**hit** [1] - 45:11
**hold** [1] - 17:10
**holding** [2] - 31:5, 31:7
**Honor** [129] - 2:9, 2:11, 2:17, 3:1, 4:15, 4:20, 5:9, 5:13, 5:16, 5:22, 5:25, 7:6, 7:11, 7:15, 7:18, 8:3, 8:13, 8:16, 8:21, 9:1, 9:5, 9:17, 9:20, 9:23, 10:13, 11:1, 11:6, 11:18, 12:2, 12:8, 12:14, 12:20, 13:6, 13:20, 13:25, 14:8, 14:15, 15:6, 15:7, 15:25, 16:9, 17:14, 17:22, 18:3, 18:9, 18:18, 18:23, 19:11, 19:17, 20:8, 20:21, 21:11, 21:17, 21:19,

22:13, 22:14, 22:20, 24:2, 24:14, 24:20, 25:4, 25:19, 26:4, 26:11, 26:16, 26:21, 27:4, 27:12, 27:18, 28:10, 28:17, 28:20, 29:6, 34:18, 34:24, 35:3, 35:7, 35:10, 37:2, 38:1, 38:12, 38:13, 38:18, 40:4, 40:5, 40:9, 40:15, 40:18, 41:14, 42:2, 42:10, 42:14, 42:20, 42:21, 43:11, 44:24, 45:1, 45:6, 46:11, 46:12, 47:16, 48:19, 49:7, 50:6, 50:8, 50:17, 50:21, 50:22, 51:25, 52:9, 52:10, 52:22, 53:25, 56:6, 58:19, 60:22, 61:5, 61:12, 61:13, 61:17, 62:10, 62:18, 63:8, 63:12, 67:23, 70:2, 70:5, 70:6, 71:1
**Honor's** [1] - 49:17
**HONORABLE** [1] - 1:10
**Honorable** [1] - 2:3
**hope** [3] - 57:21, 61:17, 68:14
**hopefully** [1] - 69:13
**hours** [3] - 32:11, 33:20, 43:22
**house** [1] - 32:14
**housed** [1] - 51:8
**hurt** [1] - 56:13

**I**

**I.T** [2] - 5:10, 5:15
**idea** [2] - 2:21, 41:22
**identification** [1] - 31:18
**identified** [1] - 43:17
**identify** [1] - 2:8
**ideologically** [1] - 46:22
**ideologies** [3] - 57:4, 57:17, 57:19
**ideology** [3] - 59:24, 64:15, 65:20
**III** [1] - 50:9
**illegal** [4] - 34:2, 49:7, 58:14, 64:21
**illegally** [4] - 31:20, 43:18, 44:10, 68:5
**illness** [1] - 8:5
**immediate** [1] - 37:17
**immigration** [1] -

18:14
**impartial** [1] - 13:14
**important** [3] - 12:22, 14:17, 45:21
**impose** [11] - 3:20, 25:15, 26:12, 27:15, 46:11, 46:12, 51:11, 63:2, 66:13, 66:22, 66:25
**imposed** [5] - 11:16, 11:23, 27:15, 64:3, 67:21
**imprisonment** [6] - 11:7, 11:11, 11:22, 22:16, 23:17, 66:17
**improvised** [1] - 30:1
**IN** [1] - 1:1
**in-court** [1] - 4:1
**in-person** [2] - 30:4, 31:16
**incarcerated** [2] - 54:9, 55:13
**incarceration** [1] - 39:13
**include** [3] - 25:7, 38:14, 63:22
**included** [4] - 37:21, 39:12, 49:12, 67:20
**includes** [4] - 30:6, 30:12, 37:17, 37:18
**including** [9] - 4:7, 18:14, 21:25, 29:24, 30:7, 32:16, 33:4, 37:21, 39:6
**increased** [1] - 21:24
**independent** [2] - 28:22, 36:15
**indicate** [1] - 62:13
**indicated** [3] - 53:12, 54:12, 63:2
**indicates** [1] - 58:21
**indictment** [9] - 9:3, 10:7, 35:12, 35:15, 35:23, 36:7, 36:18, 52:20, 70:4
**individual** [1] - 69:6
**individuals** [4] - 43:5, 43:12, 57:6, 65:4
**inference** [1] - 17:10
**infiltrated** [1] - 43:17
**infiltration** [1] - 31:12
**influence** [2] - 8:7, 65:15
**information** [3] - 38:23, 39:4, 39:10
**informed** [1] - 36:12
**injury** [1] - 48:7
**innocent** [4] - 12:24, 14:2, 14:5, 53:9
**inside** [1] - 54:12

**instead** [2] - 13:22, 26:2
**instruct** [2] - 14:4, 17:9
**intend** [2] - 9:15, 9:25
**intended** [5] - 22:10, 41:2, 48:12, 49:25, 53:16
**intending** [1] - 43:25
**intent** [2] - 43:6, 53:20
**intention** [2] - 48:10, 48:23
**interacted** [1] - 34:9
**interacting** [1] - 69:6
**interactions** [1] - 59:19
**interested** [2] - 30:9, 72:12
**interests** [4] - 3:22, 4:4, 4:9, 39:15
**interfere** [1] - 59:24
**Internet** [3] - 41:15, 65:14, 69:6
**interrupt** [2] - 15:7, 41:16
**interview** [2] - 31:15, 71:10
**interviewed** [1] - 31:14
**involve** [1] - 69:1
**involved** [5] - 46:2, 65:18, 65:19, 68:8, 68:25
**involvement** [1] - 65:21
**involving** [5] - 24:9, 41:4, 64:9, 68:3, 68:7
**isolated** [1] - 45:11
**issue** [14] - 4:14, 5:4, 5:18, 5:19, 5:21, 15:2, 20:4, 46:17, 51:22, 56:12, 56:20, 58:6, 60:7, 63:11
**issues** [4] - 4:6, 51:18, 60:5, 62:9
**items** [1] - 58:12
**itself** [6] - 47:8, 47:25, 60:12, 64:11, 67:19, 68:2
**IV** [5] - 1:8, 2:6, 6:23, 7:1, 29:15
**Ivy** [2] - 1:15, 1:20

**J**

**jail** [4] - 2:22, 5:19, 5:23, 20:4
**January** [2] - 54:10, 65:7

**Jewish** [1] - 29:24
**Jewish-Americans** [1] - 29:24
**job** [1] - 56:15
**join** [1] - 45:22
**joint** [2] - 25:1, 66:5
**jointly** [1] - 25:23
**Jordan** [1] - 29:17
**Judge** [2] - 35:13, 71:17
**judge** [4] - 3:23, 5:6, 13:22, 19:20
**JUDGE** [1] - 1:11
**judgment** [1] - 69:20
**jumpsuit** [1] - 54:19
**June** [1] - 72:17
**jurors** [2] - 13:11, 13:13
**jury** [9] - 6:12, 13:9, 13:12, 13:14, 13:18, 13:22, 14:4, 17:9, 18:7
**justice** [5] - 3:22, 4:4, 4:9, 12:23, 26:18, 39:15
**justified** [1] - 54:6

**K**

**kin** [1] - 72:12
**kind** [5] - 8:5, 39:2, 54:13, 68:12, 68:25
**kneeling** [1] - 31:6
**knowing** [4] - 22:10, 36:14, 41:2, 48:12
**knowingly** [3] - 6:14, 6:17, 10:8
**knowledge** [1] - 53:20
**known** [1] - 43:25
**knows** [6] - 22:14, 34:2, 43:24, 44:10, 44:11, 52:22

**L**

**lack** [1] - 65:24
**Lane** [2] - 1:15, 1:20
**large** [1] - 64:24
**largely** [1] - 62:3
**last** [5] - 4:11, 17:2, 52:13, 54:20, 61:20
**late** [2] - 32:19, 43:15
**law** [12] - 10:16, 10:19, 10:22, 25:7, 25:10, 37:4, 45:14, 53:10, 66:8, 68:12, 68:15, 69:14
**law-abiding** [2] - 68:15, 69:14
**lead** [2] - 65:21, 69:13

**leader** [1] - 65:5
**leadership** [2] - 31:14, 31:15
**leads** [1] - 23:1
**learned** [2] - 31:22, 54:20
**least** [14] - 5:1, 32:2, 32:13, 33:4, 33:9, 33:14, 42:3, 44:9, 46:1, 47:9, 51:15, 56:18, 63:14, 70:18
**leave** [1] - 15:11
**leaves** [2] - 57:3, 57:7
**led** [2] - 31:18, 65:15
**left** [1] - 45:5
**legal** [1] - 12:4
**Lemley** [35] - 29:17, 30:23, 31:1, 31:4, 31:21, 31:25, 32:3, 32:6, 32:10, 32:13, 32:19, 32:25, 33:2, 33:7, 33:13, 33:15, 33:17, 33:21, 43:20, 43:21, 44:3, 44:5, 44:7, 44:14, 46:4, 49:25, 53:22, 54:1, 54:4, 59:14, 64:16, 65:4, 67:11, 68:3
**Lemley's** [4] - 30:23, 31:25, 33:3, 33:12
**length** [1] - 20:11
**less** [1] - 61:3
**letters** [5] - 38:6, 39:5, 39:6, 65:16, 68:19
**level** [12] - 7:22, 21:21, 21:22, 21:24, 22:3, 23:2, 23:9, 23:21, 24:10, 24:12, 39:20
**Level** [4] - 23:13, 23:14, 23:17, 23:23
**levels** [1] - 23:12
**life** [1] - 69:14
**light** [2] - 39:11, 58:17
**likely** [2] - 43:16, 58:23
**limited** [2] - 58:4, 65:4
**line** [10] - 2:11, 2:20, 3:14, 16:4, 16:5, 16:14, 43:16, 50:1, 57:19
**linked** [1] - 30:8
**listed** [1] - 23:11
**listen** [2] - 6:16, 53:5
**listening** [1] - 43:16
**literature** [1] - 52:23
**lived** [1] - 33:7
**living** [1] - 54:16
**local** [1] - 31:17
**location** [2] - 47:7, 49:15

**look** [1] - 43:12
**looked** [1] - 51:13
**looks** [1] - 42:12
**losses** [1] - 12:12
**loud** [2] - 20:5, 23:7
**lower** [2] - 6:24, 24:18

**M**

**machine** [1] - 72:9
**man** [1] - 54:11
**mandating** [1] - 22:16
**mandatory** [2] - 11:9, 11:13
**manufacture** [4] - 33:22, 33:24, 44:20, 49:21
**manufacturing** [2] - 64:21, 64:22
**MARCUS** [1] - 1:19
**Mark** [1] - 29:17
**marshal's** [1] - 70:23
**MARYLAND** [2] - 1:2, 1:12
**Maryland** [17] - 1:16, 1:21, 2:2, 7:15, 13:10, 32:1, 32:13, 32:14, 32:20, 33:3, 33:5, 36:23, 44:13, 49:14, 49:22, 54:17, 72:4
**material** [1] - 36:23
**materials** [4] - 37:24, 39:5, 42:22, 69:5
**Mathews** [58] - 29:17, 31:16, 31:18, 31:20, 31:22, 32:2, 32:4, 32:5, 32:7, 32:8, 32:12, 32:22, 33:2, 33:7, 33:11, 33:12, 33:13, 33:15, 33:18, 33:21, 33:25, 34:6, 34:10, 41:1, 41:5, 43:17, 43:21, 43:23, 43:25, 44:5, 44:6, 44:10, 44:13, 44:14, 44:15, 46:4, 48:15, 48:23, 48:24, 49:4, 49:8, 49:12, 49:13, 49:20, 49:25, 53:22, 54:1, 54:2, 54:4, 59:14, 64:10, 64:13, 64:16, 64:19, 67:11, 68:4
**Mathews'** [2] - 31:9, 53:20
**matter** [3] - 2:4, 57:24, 72:7
**mature** [1] - 53:2
**maturing** [1] - 52:25

**maximum** [9] - 11:4, 11:7, 11:8, 11:9, 11:11, 11:12, 11:13, 11:16, 25:16
**mean** [5] - 6:10, 23:4, 46:24, 51:10, 70:12
**meaning** [3] - 13:15, 14:18, 47:23
**means** [4] - 30:11, 53:1, 53:2, 60:12
**medical** [4] - 61:25, 66:21, 70:15, 70:19
**Medical** [2] - 70:8, 70:9
**medication** [1] - 8:8
**meet** [1] - 39:10
**meeting** [2] - 31:16, 50:23
**meetings** [1] - 30:5
**Megan** [2] - 2:16, 3:1
**MEGAN** [1] - 1:20
**member** [12] - 10:8, 29:16, 31:15, 31:17, 31:19, 32:5, 42:25, 44:2, 44:11, 45:21, 48:15, 64:16
**member's** [1] - 32:22
**members** [16] - 29:18, 29:21, 30:3, 30:6, 30:17, 30:21, 33:19, 43:19, 46:20, 52:2, 52:17, 57:1, 57:5, 57:6, 59:19, 68:11
**membership** [1] - 30:6
**memo** [1] - 38:9
**memos** [1] - 50:7
**mental** [7] - 8:5, 51:18, 51:20, 56:7, 56:14, 59:11, 67:6
**mentioned** [4] - 24:22, 26:22, 27:5, 55:2
**mentioning** [1] - 24:21
**messaging** [1] - 30:18
**met** [1] - 31:19
**methods** [2] - 67:3
**Michigan** [3] - 32:1, 32:11, 43:23
**microphone** [2] - 19:15, 20:5
**might** [10] - 2:21, 47:8, 49:7, 51:15, 57:5, 59:23, 62:10, 66:11, 66:12, 71:4
**miles** [2] - 32:1, 43:22
**military** [7] - 29:25, 30:5, 30:10, 30:14, 43:5, 43:13, 58:8
**military-style** [1] - 29:25
**minorities** [1] - 43:4

**minority** [2] - 29:23, 48:18
**minute** [2] - 15:17, 45:5
**Miss** [3] - 15:22, 16:10, 16:18
**mistaken** [1] - 62:4
**mitigating** [1] - 65:25
**modification** [1] - 59:17
**moment** [3] - 5:6, 5:9, 63:11
**month** [2] - 31:24, 52:21
**months** [10] - 23:17, 23:18, 23:22, 25:23, 27:16, 39:25, 54:11, 55:10, 64:6, 66:18
**morning** [4] - 2:9, 2:14, 2:25, 33:20
**most** [6] - 4:5, 23:20, 38:1, 51:6, 64:11, 68:3
**mother** [1] - 52:16
**motion** [5] - 38:7, 40:13, 40:16, 40:22, 70:21
**motions** [1] - 37:17
**motivated** [1] - 43:2
**move** [4] - 15:25, 16:2, 36:19, 37:8
**moved** [1] - 60:18
**moving** [2] - 22:4, 39:14
**MR** [45] - 2:9, 2:16, 2:25, 4:15, 5:8, 11:6, 15:7, 16:4, 16:14, 21:17, 29:6, 35:7, 37:2, 37:15, 38:1, 38:12, 38:17, 40:4, 40:15, 40:18, 41:14, 41:18, 42:2, 42:7, 42:14, 42:17, 42:20, 45:5, 45:8, 47:15, 48:22, 50:15, 51:25, 60:6, 60:22, 61:12, 61:13, 61:23, 62:10, 63:12, 67:23, 70:5, 70:11, 71:1, 71:17
**MS** [22] - 16:9, 16:24, 19:8, 19:11, 19:17, 19:20, 19:22, 19:25, 20:7, 20:14, 35:10, 35:21, 38:5, 38:13, 40:5, 40:21, 52:9, 58:19, 61:17, 62:18, 62:21, 63:8
**multiple** [1] - 20:9
**must** [4] - 6:13, 7:4, 12:5, 69:19

**mute** [7] - 2:15, 2:20, 21:18, 23:6, 29:3, 41:19, 42:10
**muted** [2] - 2:21, 41:18

## N

**name** [1] - 6:25
**narcotic** [1] - 8:5
**nationalist** [1] - 32:17
**nature** [5] - 25:7, 36:13, 55:11, 64:8, 66:2
**Nazi** [1] - 30:8
**necessary** [7] - 3:15, 14:11, 51:16, 54:7, 59:17, 64:3, 66:7
**need** [9] - 3:11, 4:11, 18:11, 19:15, 25:9, 28:22, 45:14, 71:4, 71:9
**needs** [2] - 47:13, 50:18
**negative** [1] - 17:10
**neo** [1] - 30:8
**neo-Nazi** [1] - 30:8
**never** [2] - 34:8, 54:11
**new** [3] - 6:18, 17:19, 37:4
**news** [1] - 53:6
**newspaper** [1] - 31:13
**next** [3] - 15:8, 30:19, 55:13
**niceties** [1] - 70:13
**NO** [1] - 1:5
**noise** [2] - 2:22, 20:4
**non** [2] - 38:15, 57:4
**non-convictions** [1] - 38:15
**non-felons** [1] - 57:4
**normal** [1] - 15:24
**Nos** [1] - 37:22
**Note** [7] - 22:8, 40:11, 40:25, 47:19, 48:3, 48:10, 49:19
**note** [2] - 17:5, 67:16
**noted** [4] - 47:17, 49:7, 59:21, 68:19
**NOTES** [1] - 1:25
**notes** [1] - 39:11
**nothing** [2] - 54:7, 62:6
**notice** [2] - 69:20, 69:21
**November** [2] - 32:24, 33:7
**number** [1] - 24:11
**numbers** [8] - 22:2, 22:24, 22:25, 23:4,

23:14, 23:17, 23:20, 39:22

## O

**oath** [3] - 6:16, 6:20, 7:4
**object** [1] - 56:6
**objection** [2] - 55:18, 62:15
**objections** [2] - 40:3, 40:21
**obligation** [2] - 24:8, 36:22
**obviously** [3] - 47:3, 55:9, 70:17
**occasion** [1] - 33:9
**October** [2] - 32:19, 44:3
**OF** [5] - 1:2, 1:5, 1:10, 1:14, 1:25
**Offense** [4] - 23:13, 23:14, 23:16, 23:23
**offense** [27] - 12:18, 18:12, 21:21, 21:23, 21:24, 23:2, 23:9, 23:12, 24:10, 24:12, 25:8, 25:10, 39:20, 42:24, 45:14, 49:14, 49:22, 52:12, 52:20, 53:2, 64:8, 64:11, 64:12, 65:1, 66:3, 66:8
**offenses** [6] - 10:1, 11:3, 21:8, 28:24, 34:23, 36:16
**offer** [5] - 19:12, 20:1, 20:9, 20:11, 61:15
**offers** [3] - 19:6, 20:13, 20:14
**office** [2] - 29:13, 52:18
**OFFICE** [1] - 1:14
**officer** [8] - 50:18, 50:20, 51:17, 59:12, 67:5, 67:7, 67:10, 71:3
**OFFICER** [2] - 40:9, 71:8
**OFFICIAL** [1] - 1:23
**Official** [1] - 72:3
**official** [1] - 72:17
**oftentimes** [1] - 52:24
**old** [3] - 7:12, 45:9, 52:19
**older** [1] - 54:1
**once** [6] - 30:16, 43:22, 55:17, 56:14, 62:19, 67:19
**One** [13] - 9:6, 9:15,

10:4, 10:12, 11:5, 11:6, 21:20, 35:12, 35:23, 35:24, 36:6, 36:18, 66:15
**one** [21] - 5:6, 5:9, 10:5, 13:22, 27:24, 31:4, 31:11, 33:9, 39:25, 45:5, 46:6, 46:19, 53:8, 54:10, 56:4, 57:17, 57:21, 58:11, 60:25, 67:16, 70:6
**online** [2] - 30:4, 30:11
**open** [1] - 57:7
**operates** [1] - 17:4
**opportunity** [8] - 3:15, 4:13, 8:24, 20:19, 26:1, 41:10, 47:15, 62:8
**oppose** [1] - 22:3
**opposed** [1] - 37:12
**option** [1] - 42:11
**oral** [1] - 41:10
**orange** [1] - 54:18
**orchestrated** [1] - 54:5
**order** [18] - 6:13, 10:2, 12:10, 12:16, 13:14, 27:1, 28:21, 32:2, 32:7, 43:12, 43:18, 45:23, 48:25, 49:2, 49:3, 55:20, 67:21, 70:10
**ordinarily** [2] - 37:10, 38:20
**ordinary** [2] - 37:9, 65:1
**organization** [8] - 29:16, 30:17, 33:19, 45:22, 61:10, 64:14, 65:16, 67:15
**organization's** [1] - 29:25
**organizations** [2] - 30:7, 30:14
**organized** [2] - 60:2, 60:11
**otherwise** [4] - 34:9, 38:8, 43:13, 57:8
**outbreak** [2] - 4:7, 39:13
**outcome** [2] - 54:24, 72:13
**outlined** [3] - 39:22, 41:5, 44:23
**outset** [1] - 65:22
**overall** [1] - 65:23
**overbroad** [1] - 58:2
**overthrow** [4] - 47:24,

48:16, 50:3
**overthrowing** [1] -
43:6
**owe** [1] - 12:6
**own** [4] - 14:23, 17:6,
28:19, 39:20
**ownership** [1] - 12:17

## P

**p.m** [1] - 71:18
**page** [2] - 31:9, 34:12
**pages** [1] - 18:22
**panel** [1] - 13:9
**papers** [1] - 44:24
**paragraph** [3] - 27:20,
27:25, 31:3
**paragraphs** [1] - 29:20
**paramilitary** [1] - 49:6
**parents** [1] - 65:11
**parlance** [1] - 43:1
**parole** [2] - 26:17,
26:19
**part** [15] - 12:9, 12:15,
13:10, 26:23, 27:1,
27:13, 32:13, 33:4,
44:9, 47:7, 48:2,
48:10, 49:5, 52:4,
64:18
**participants** [1] -
60:10
**participate** [2] - 13:12,
68:7
**participated** [1] -
30:24
**participating** [1] -
64:13
**participation** [2] -
32:9, 48:25
**particular** [6] - 4:10,
27:20, 46:22, 51:23,
64:15
**particularly** [3] - 30:9,
65:24, 66:1
**parties** [20] - 3:19,
21:19, 22:7, 22:14,
22:15, 22:24, 23:1,
23:9, 25:1, 27:16,
29:10, 29:11, 34:4,
39:16, 39:18, 40:10,
49:11, 49:24, 53:13,
72:8
**parties'** [2] - 64:5,
66:5
**parts** [1] - 22:21
**party** [1] - 72:12
**passed** [1] - 33:11
**passport** [2] - 55:22,
55:24
**past** [1] - 51:21

**patches** [1] - 33:16
**path** [6] - 55:15,
57:22, 68:15, 68:17,
68:21, 68:23
**Patrik** [1] - 29:17
**Pause** [6] - 5:11, 5:14,
5:17, 5:24, 16:22,
42:8
**pay** [5] - 12:5, 12:10,
12:11, 66:23, 69:22
**penalties** [4] - 11:3,
11:5, 11:16, 25:16
**pending** [2] - 2:4, 37:1
**people** [7] - 33:25,
53:4, 57:8, 57:9,
57:24, 57:25, 69:6
**perfectly** [1] - 50:1
**perhaps** [6] - 56:9,
56:15, 59:4, 59:22,
62:12, 65:20
**period** [3] - 11:21,
51:6, 52:1
**perjury** [1] - 7:9
**permission** [2] -
50:17, 50:20, 67:10
**permit** [1] - 58:16
**permitted** [3] - 58:9,
67:9, 67:14
**person** [7] - 3:25,
10:18, 30:4, 31:16,
31:19, 50:23, 59:25
**person's** [2] - 18:13,
23:15
**personally** [1] - 52:14
**persons** [1] - 10:6
**perspective** [1] -
52:13
**perverse** [1] - 41:3
**phase** [1] - 36:19
**photograph** [1] - 31:7
**photographs** [2] -
31:3, 31:5
**phrase** [1] - 48:4
**phrased** [1] - 58:20
**physical** [1] - 48:7
**pick** [4] - 32:2, 32:4,
32:7, 43:23
**picked** [2] - 32:19,
48:23
**pictures** [1] - 43:11
**pizza** [2] - 33:25,
54:15
**place** [3] - 58:13, 70:9,
71:9
**placed** [1] - 35:16
**plain** [1] - 47:23
**Plaintiff** [1] - 1:6
**PLAINTIFF** [1] - 1:13
**plan** [3] - 43:25, 54:5,
64:24

**planned** [2] - 41:5,
64:19
**planning** [1] - 47:10
**plans** [1] - 44:19
**play** [2] - 46:6, 48:2
**plays** [1] - 60:9
**plea** [62] - 3:9, 3:18,
6:5, 6:8, 6:13, 6:18,
18:20, 18:23, 18:25,
19:6, 20:1, 20:9,
20:13, 20:14, 20:19,
20:22, 21:1, 21:13,
22:6, 22:15, 22:17,
23:25, 24:4, 24:22,
25:24, 26:2, 26:6,
26:8, 26:14, 26:24,
27:7, 27:10, 27:13,
27:19, 27:25, 28:1,
28:8, 28:15, 28:21,
28:23, 28:25, 29:10,
35:5, 35:9, 35:12,
35:24, 36:2, 36:5,
36:12, 36:14, 36:15,
36:17, 39:19, 40:10,
40:22, 41:9, 52:11,
52:20, 57:15, 63:21,
69:18
**plead** [12] - 6:5, 6:8,
9:15, 9:25, 12:6,
13:1, 13:2, 13:9,
18:4, 28:9, 28:12
**pleading** [7] - 6:9,
11:3, 12:22, 13:3,
17:23, 28:18, 34:22
**pleads** [1] - 18:12
**plus** [1] - 38:23
**point** [13] - 5:22,
15:19, 22:5, 26:6,
26:14, 31:21, 44:1,
49:17, 51:21, 58:9,
59:9, 60:1, 70:6
**policy** [1] - 63:21
**political** [1] - 46:22
**poor** [1] - 54:21
**position** [2] - 39:18,
69:8
**positions** [2] - 39:19,
41:10
**positive** [1] - 68:23
**possess** [3] - 18:7,
56:1, 58:9
**possessed** [1] - 22:1
**possessing** [1] - 59:2
**possession** [7] -
12:17, 49:13, 55:24,
56:2, 58:24, 60:14,
67:18
**possible** [2] - 21:15,
28:14
**post** [1] - 71:3

**potential** [6] - 4:2,
11:3, 58:17, 64:22,
66:4, 68:9
**practiced** [1] - 43:13
**preclude** [2] - 51:19,
59:21
**prepare** [1] - 69:21
**prepared** [3] - 5:2, 6:5,
6:8
**presence** [3] - 14:20,
30:11, 60:1
**present** [11] - 14:24,
17:8, 17:11, 44:10,
52:17, 53:22, 58:23,
59:23, 61:11, 67:15
**presentence** [3] -
37:11, 38:22, 51:12
**presiding** [1] - 2:3
**Press** [2] - 31:11,
43:16
**pressured** [1] - 28:11
**presumed** [2] - 14:2,
14:5
**pretrial** [3] - 3:13, 4:5,
4:6
**Pretrial** [3] - 37:23,
39:3, 51:14
**prevent** [4] - 18:15,
50:23, 51:1
**previously** [4] - 43:25,
44:5, 44:12, 72:7
**prison** [5] - 11:25,
26:18, 68:22, 69:2,
69:12
**Prisons** [4] - 39:15,
52:8, 61:22, 66:20
**private** [1] - 47:7
**privately** [1] - 3:15
**proactive** [1] - 45:20
**probation** [10] - 50:18,
50:19, 50:20, 51:17,
58:16, 59:12, 67:5,
67:6, 67:10, 71:3
**PROBATION** [2] -
40:9, 71:8
**problem** [2] - 20:3,
58:13
**problematic** [1] -
56:18
**problems** [1] - 40:7
**Procedure** [1] - 37:10
**proceed** [8] - 3:8,
3:12, 4:10, 4:14,
4:25, 37:13, 38:20,
39:16
**proceeded** [1] - 29:12
**proceeding** [7] - 3:3,
3:19, 3:20, 4:16,
4:17, 15:15, 63:22
**PROCEEDINGS** [1] -

1:10
**proceedings** [8] -
3:16, 4:2, 4:12, 6:20,
8:11, 38:25, 71:18,
72:6
**process** [2] - 13:13,
39:6
**Process** [1] - 36:21
**productive** [1] - 69:14
**professionals** [1] -
67:7
**profit** [1] - 21:23
**program** [2] - 62:13,
66:22
**prohibit** [1] - 58:1
**prohibited** [4] - 56:24,
57:9, 59:25, 60:15
**prohibiting** [2] -
55:18, 57:1
**promise** [1] - 55:12
**promises** [1] - 28:7
**promote** [4] - 25:10,
45:14, 49:3, 66:8
**propaganda** [1] - 30:5
**propagate** [1] - 45:23
**property** [5] - 12:16,
12:18, 26:24, 32:22,
32:23
**propose** [1] - 61:8
**proposed** [3] - 59:8,
60:21, 60:23
**prosecution** [1] - 7:9
**prosecutor** [5] -
21:12, 22:23, 23:8,
24:22, 28:24
**protect** [2] - 25:12,
59:1
**protected** [1] - 43:19
**proud** [1] - 68:24
**prove** [8] - 10:2, 10:5,
10:11, 10:15, 10:24,
14:2, 29:1, 62:24
**proven** [2] - 29:13,
47:9
**proves** [2] - 12:25,
14:3
**provide** [5] - 21:5,
25:11, 66:8, 66:9
**provided** [2] - 37:5,
49:9
**provides** [1] - 23:11
**proving** [1] - 14:6
**provision** [1] - 27:20
**provisionally** [1] - 5:1
**provisions** [2] - 21:1,
26:25
**proximity** [1] - 70:19
**PSI** [1] - 71:3
**PSR** [3] - 37:16, 71:7,
71:9

**public** [7] - 2:10, 3:21, 3:25, 16:4, 16:5, 25:12, 64:25
**published** [1] - 31:11
**punish** [2] - 45:15, 47:17
**punishment** [2] - 25:11, 66:9
**purchase** [1] - 49:10
**purchased** [4] - 32:25, 44:7, 46:25, 53:24
**purchasing** [1] - 47:1
**purpose** [2] - 2:6, 34:8, 54:2
**purposes** [3] - 39:7, 54:7, 64:4
**pursuant** [6] - 21:21, 21:22, 21:24, 22:6, 22:8, 40:22
**push** [1] - 29:3
**put** [5] - 16:5, 38:9, 50:7, 61:5, 69:8

## Q

**questions** [8] - 6:15, 7:5, 7:8, 14:21, 15:9, 21:16, 30:12, 46:15
**quick** [1] - 44:21

## R

**race** [1] - 30:16
**racially** [1] - 43:1
**raise** [1] - 6:22
**raised** [2] - 59:20, 65:12
**rally** [6] - 33:14, 41:4, 64:20, 65:7, 66:4, 68:9
**range** [14] - 21:5, 24:7, 24:16, 24:17, 24:18, 24:24, 24:25, 25:16, 25:22, 39:24, 39:25, 40:1, 41:7, 64:1
**rather** [2] - 49:2, 63:3
**rational** [1] - 60:14
**RDAP** [2] - 62:13, 66:22
**re** [1] - 39:8
**re-reviewed** [1] - 39:8
**reach** [2] - 24:9, 59:7
**reached** [1] - 58:3
**reaching** [3] - 24:6, 24:8, 25:6
**read** [4] - 5:1, 20:19, 42:22, 48:5
**reading** [1] - 51:14
**readjust** [1] - 59:4
**ready** [3] - 3:8, 63:11,

68:23
**really** [3] - 52:12, 55:2, 60:12
**realtime** [1] - 44:18
**rearraignment** [1] - 2:7
**reason** [3] - 8:10, 35:8, 41:15
**reasonable** [3] - 14:4, 14:6, 29:14
**reasons** [2] - 24:17, 66:21
**recap** [1] - 61:6
**received** [1] - 9:2
**recent** [1] - 50:7
**recently** [2] - 8:4, 70:13
**recklessly** [1] - 10:17
**recognize** [2] - 45:17, 54:21
**recognized** [1] - 48:23
**recognizes** [3] - 52:11, 55:3, 65:3
**recommend** [7] - 23:25, 25:23, 41:23, 50:13, 50:16, 52:1, 62:12
**recommendation** [11] - 25:25, 41:9, 51:11, 60:18, 61:19, 61:24, 62:16, 64:5, 66:5, 66:20, 70:16
**recommendations** [2] - 52:8, 61:21
**recommended** [11] - 21:5, 23:12, 23:13, 23:16, 23:22, 25:1, 27:15, 41:11, 42:5, 62:11, 70:9
**recommending** [1] - 25:1
**reconnect** [3] - 5:12, 5:15, 41:24
**record** [13] - 2:8, 3:11, 6:25, 19:15, 23:15, 23:16, 23:19, 37:20, 38:11, 39:2, 39:10, 65:10, 68:16
**recorded** [2] - 53:6, 72:9
**recording** [1] - 44:17
**recruitment** [1] - 29:22
**recruits** [2] - 30:9, 30:11
**reduction** [3] - 21:22, 22:3, 22:5
**reestablishing** [1] - 5:22
**reference** [2] - 39:6,

47:22
**reflect** [3] - 25:9, 66:7, 68:21
**regard** [1] - 51:24
**regarding** [5] - 17:4, 30:13, 31:11, 58:7, 61:15
**regardless** [4] - 46:19, 68:11, 70:14
**regards** [1] - 58:22
**regional** [1] - 30:21
**regulate** [1] - 60:3
**relate** [2] - 21:13, 21:15
**related** [2] - 12:18, 15:5
**relates** [1] - 57:14
**relating** [3] - 21:2, 21:7, 22:24
**release** [20] - 11:8, 11:12, 11:21, 12:1, 39:25, 46:13, 50:13, 50:22, 52:2, 52:6, 52:7, 58:16, 59:8, 61:4, 62:12, 66:18, 66:25, 67:1, 67:13, 69:5
**released** [5] - 26:19, 55:15, 55:18, 56:13, 56:15
**relevant** [3] - 34:6, 37:20, 64:7
**relied** [1] - 38:1
**remain** [1] - 10:18
**remainder** [2] - 3:2, 49:17
**remained** [1] - 32:10
**remaining** [1] - 70:4
**remains** [1] - 3:24
**remanded** [1] - 70:24
**remove** [1] - 65:6
**Renee** [4] - 1:24, 72:3, 72:15, 72:16
**repeat** [2] - 27:24, 42:3
**report** [9] - 37:11, 37:23, 38:5, 38:22, 39:3, 51:12, 51:14, 71:7, 71:9
**reported** [1] - 72:6
**reporter** [3] - 31:13, 31:19, 43:15
**REPORTER** [1] - 1:23
**Reporter** [2] - 72:3, 72:17
**reporter's** [1] - 31:12
**reporting** [1] - 31:18
**represent** [3] - 14:12, 62:23, 69:24
**representation** [2] -

8:20, 63:6
**represented** [1] - 14:10
**representing** [1] - 52:13
**request** [4] - 37:13, 62:1, 62:2, 69:21
**requested** [3] - 3:9, 37:8, 38:21
**requesting** [1] - 61:24
**requests** [1] - 55:20
**require** [3] - 15:2, 17:19, 45:16
**required** [14] - 11:23, 13:1, 14:1, 17:8, 24:7, 24:15, 25:6, 38:22, 55:25, 56:4, 64:17, 66:23, 67:8, 68:13
**requirement** [3] - 12:4, 26:24, 51:16
**reside** [2] - 32:9, 48:24
**residence** [7] - 32:20, 33:8, 33:9, 33:10, 44:15, 44:17, 49:20
**residency** [1] - 18:13
**residing** [2] - 31:17, 32:23
**respect** [10] - 25:10, 45:14, 47:19, 47:25, 50:10, 53:18, 55:17, 56:8, 57:12, 66:8
**response** [1] - 37:19
**responses** [1] - 6:16
**responsibility** [3] - 22:4, 22:5, 65:8
**responsible** [1] - 54:22
**rest** [2] - 16:2, 16:18
**restitution** [2] - 12:10, 46:13
**result** [6] - 11:24, 39:24, 48:7, 62:3, 62:4, 65:14
**return** [3] - 13:15, 32:13, 42:7
**returning** [1] - 44:9
**revert** [1] - 68:25
**reverting** [1] - 69:9
**review** [5] - 20:19, 38:7, 39:7
**reviewed** [5] - 20:1, 20:10, 35:14, 39:8, 39:19
**rifle** [3] - 33:11, 44:15, 64:19
**rights** [6] - 12:22, 14:17, 15:5, 17:4, 18:1, 18:6

**risk** [2] - 3:21, 3:24
**risks** [2] - 4:2, 55:5
**RMR** [2] - 1:24, 72:16
**ROBERT** [1] - 1:19
**Robert** [2] - 2:16, 2:25
**room** [7] - 15:8, 15:23, 15:25, 16:3, 16:6, 16:18, 62:22
**rooms** [3] - 29:21, 30:4, 43:9
**roughly** [4] - 32:1, 32:25, 33:1, 51:2
**rounds** [1] - 32:25
**route** [1] - 32:3
**routinely** [1] - 57:9
**RPR** [2] - 1:24, 72:16
**rule** [1] - 37:4
**Rule** [3] - 39:9, 39:17, 64:6
**Rules** [1] - 37:10
**run** [1] - 66:19
**running** [1] - 45:11

## S

**safely** [2] - 32:8, 48:24
**safety** [3] - 3:21, 3:25, 43:21
**sake** [2] - 60:25, 69:10
**sanctions** [1] - 36:24
**satisfied** [5] - 6:14, 6:17, 8:19, 28:22, 35:19
**satisfy** [1] - 58:4
**scenario** [1] - 53:7
**Schedule** [2] - 33:23, 49:21
**school** [3] - 7:19, 7:21, 8:1
**science** [1] - 30:14
**search** [1] - 50:8
**searches** [1] - 65:15
**second** [6] - 10:7, 10:16, 23:6, 38:25, 48:2, 67:4
**secret** [1] - 43:7
**Section** [3] - 3:17, 9:8, 9:12, 9:14
**section** [2] - 29:19, 30:19
**secure** [2] - 30:18, 68:6
**see** [8] - 16:25, 17:18, 40:7, 51:18, 56:18, 57:9, 59:3, 59:5
**seek** [1] - 45:22
**seeks** [1] - 47:17
**seem** [1] - 59:9
**select** [1] - 13:11
**selected** [1] - 13:13

**selection** [1] - 13:13
**sell** [2] - 33:24, 34:1
**semi** [1] - 43:13
**sense** [4] - 29:3, 60:7, 60:13, 60:15
**sentence** [50] - 12:9, 12:15, 21:15, 23:12, 23:13, 23:16, 23:22, 24:6, 24:8, 24:16, 24:18, 24:23, 25:2, 25:6, 25:9, 25:15, 25:22, 25:23, 26:1, 26:7, 26:13, 26:23, 27:1, 27:14, 27:15, 38:20, 38:21, 41:8, 41:11, 45:20, 46:8, 54:6, 54:9, 61:16, 61:18, 62:13, 63:2, 63:11, 63:25, 64:2, 64:5, 66:6, 66:7, 66:13, 67:25, 68:13, 68:14, 69:3, 69:17
**sentenced** [1] - 26:18
**sentences** [5] - 23:24, 46:4, 46:5, 66:14, 66:17
**Sentencing** [3] - 21:3, 21:4, 21:21
**sentencing** [23] - 2:7, 3:10, 3:18, 5:2, 21:3, 21:6, 21:9, 36:19, 37:8, 37:13, 37:18, 37:21, 37:25, 38:9, 39:8, 39:11, 39:14, 39:16, 42:19, 54:8, 62:8, 63:22, 64:4
**separate** [6] - 3:14, 15:23, 31:4, 47:13, 49:14, 57:23
**September** [1] - 18:21
**series** [1] - 6:15
**serious** [20] - 4:3, 4:9, 6:10, 22:11, 34:7, 41:3, 42:24, 44:23, 47:5, 48:3, 48:8, 49:16, 49:23, 55:11, 64:12, 64:25, 68:3, 68:10, 68:13
**seriously** [2] - 62:24, 68:21
**seriousness** [6] - 21:7, 25:10, 45:13, 52:11, 66:2, 66:7
**serve** [1] - 18:6
**served** [1] - 39:13
**service** [1] - 70:24
**Services** [3] - 37:23, 39:3, 51:14
**session** [1] - 2:3
**set** [5] - 16:2, 16:23,

20:10, 21:19, 54:8
**several** [2] - 30:8, 43:10
**severity** [1] - 55:3
**shaky** [1] - 41:15
**shall** [1] - 42:7
**share** [3] - 56:3, 57:5, 57:19
**shorthand** [1] - 72:9
**shot** [1] - 43:13
**showed** [1] - 47:11
**side** [4] - 5:19, 21:14, 28:3, 33:5
**sides** [3] - 38:10, 41:10, 59:9
**signed** [5] - 18:22, 20:20, 34:11, 34:12, 34:13
**significant** [3] - 23:19, 23:20, 64:17
**similar** [3] - 25:13, 38:8, 57:19
**sitting** [1] - 54:18
**situation** [3] - 54:14, 55:19, 59:16
**smuggled** [1] - 22:9
**society** [2] - 43:7, 49:1
**Solomon** [9] - 15:22, 16:10, 16:15, 16:18, 16:19, 41:21, 42:3, 42:5, 71:11
**solution** [1] - 45:2
**solved** [1] - 44:17
**someone** [8] - 18:11, 18:15, 23:15, 23:19, 23:20, 23:22, 57:18, 65:17
**somewhat** [1] - 59:1
**sorry** [9] - 7:20, 7:23, 15:7, 19:9, 20:3, 23:5, 40:15, 55:24, 62:19
**sort** [1] - 60:7
**sought** [1] - 46:5
**south** [1] - 32:21
**SOUTHERN** [1] - 1:3
**southern** [1] - 32:1
**souvenirs** [1] - 32:16
**speakerphone** [1] - 41:25
**speaking** [2] - 2:21, 58:3
**Special** [1] - 2:11
**special** [7] - 11:9, 11:14, 12:3, 40:2, 46:13, 66:23, 66:25
**specialist** [1] - 56:17
**specific** [6] - 21:6, 21:7, 39:4, 39:22, 45:16, 51:10

**specifically** [3] - 46:2, 47:11, 67:17
**spectrum** [1] - 48:8
**speech** [2] - 47:25, 61:3
**spiralled** [1] - 53:8
**spread** [1] - 50:25
**stable** [1] - 65:13
**stage** [2] - 14:12, 38:23
**stand** [2] - 14:19, 60:20
**standard** [3] - 50:15, 56:22, 66:24
**standards** [1] - 67:17
**standing** [3] - 31:5, 31:8, 49:6
**standpoint** [1] - 58:25
**start** [4] - 2:18, 48:9, 56:15, 61:1
**started** [1] - 8:1
**state** [11] - 6:25, 29:23, 31:2, 41:10, 43:3, 43:11, 48:17, 55:25, 56:1, 63:6, 67:17
**Statement** [12] - 29:7, 34:4, 34:11, 38:2, 38:24, 41:6, 44:24, 48:19, 50:6, 50:10, 50:21, 53:5
**statement** [8] - 7:10, 28:25, 29:3, 34:16, 62:8, 63:9, 63:18
**statements** [1] - 72:8
**STATES** [4] - 1:1, 1:5, 1:11, 1:14
**states** [1] - 28:1
**States** [36] - 2:2, 2:5, 2:10, 2:11, 3:10, 7:16, 9:8, 10:16, 10:19, 10:21, 18:15, 21:2, 22:11, 30:3, 31:10, 31:21, 32:6, 32:9, 34:7, 36:11, 41:3, 43:18, 44:11, 46:23, 47:18, 47:25, 48:12, 48:16, 48:24, 49:8, 50:3, 53:21, 64:11, 66:14, 68:5, 72:4
**stating** [1] - 26:25
**status** [1] - 18:13
**statutory** [1] - 66:24
**stay** [1] - 55:14
**stenographically** [1] - 72:6
**STENOTYPE** [1] - 1:25
**step** [4] - 6:10, 15:8,

16:3, 24:6
**stepping** [1] - 16:12
**still** [9] - 2:15, 3:3, 5:15, 17:16, 51:2, 52:24, 56:1, 61:25, 68:19
**stipulate** [1] - 29:12
**Stipulation** [1] - 29:11
**stopping** [1] - 43:22
**structure** [1] - 60:11
**style** [2] - 29:25, 58:8
**subject** [5] - 11:22, 59:11, 59:16, 67:1, 69:17
**submissions** [1] - 5:2
**submit** [1] - 30:12
**submitted** [6] - 37:24, 38:3, 39:5, 42:22, 65:16, 68:19
**submitting** [1] - 38:25
**subpoenas** [1] - 15:2
**subscribing** [1] - 44:11
**substance** [7] - 33:23, 49:21, 51:15, 56:6, 59:10, 67:2, 67:4
**substantial** [6] - 44:7, 46:9, 46:10, 49:10
**substantially** [1] - 46:4
**subtract** [2] - 22:25, 23:9
**subversive** [9] - 22:11, 34:7, 44:22, 46:17, 47:4, 47:12, 47:20, 54:3
**subvert** [1] - 67:3
**sufficient** [4] - 39:10, 51:1, 51:5, 64:3
**Suite** [2] - 1:16, 1:21
**Sullivan** [1] - 2:10
**SULLIVAN** [1] - 1:15
**summarize** [2] - 21:13, 28:25
**summarizing** [1] - 29:9
**summary** [1] - 29:4
**supervised** [18] - 11:8, 11:12, 11:20, 12:1, 39:25, 46:13, 50:13, 52:1, 52:7, 55:15, 58:16, 59:8, 61:4, 66:18, 66:25, 67:1, 67:13, 69:4
**supervision** [2] - 55:17, 72:10
**supplemental** [1] - 71:9
**support** [1] - 68:18
**supported** [1] - 36:15

**suppose** [1] - 58:11
**supposed** [1] - 33:17
**supremacist** [6] - 29:16, 30:3, 30:6, 30:14, 43:1, 64:14
**supremacists** [1] - 30:9
**Supreme** [1] - 47:21
**surrender** [1] - 56:4
**susceptible** [1] - 69:8
**SWORN** [1] - 6:23
**system** [2] - 12:23, 26:18

**T**

**table** [1] - 23:10
**tactical** [1] - 30:25
**tactics** [1] - 43:14
**talks** [2] - 48:10, 48:11
**tamper** [1] - 67:2
**TDC-20-0033** [1] - 1:5
**TDC-20-033** [1] - 2:5
**technical** [3] - 5:18, 5:21, 71:4
**telephonically** [1] - 31:14
**temptation** [1] - 59:15
**ten** [1] - 11:7
**term** [10] - 11:7, 11:8, 11:11, 11:12, 11:21, 22:16, 26:23, 46:12, 66:17, 67:13
**terms** [14] - 11:19, 13:19, 20:22, 21:2, 21:13, 22:19, 23:25, 27:7, 47:4, 54:23, 60:10, 61:8, 66:19, 67:24
**terrifying** [1] - 43:13
**terror** [1] - 30:8
**testify** [8] - 14:19, 14:23, 15:2, 15:3, 17:6, 17:7, 17:8, 17:11
**testimony** [1] - 72:8
**testing** [6] - 51:16, 56:6, 59:10, 67:2, 67:3
**thankfully** [1] - 53:9
**THE** [255] - 1:1, 1:2, 1:10, 1:13, 1:14, 1:18, 2:1, 2:14, 2:19, 3:6, 4:19, 4:21, 4:23, 4:24, 5:6, 5:9, 5:12, 5:15, 5:18, 5:21, 5:25, 6:1, 6:3, 6:4, 6:21, 6:24, 7:1, 7:2, 7:3, 7:6, 7:7, 7:11, 7:12, 7:13, 7:14,

7:15, 7:16, 7:18, 7:19, 7:20, 7:21, 7:23, 7:25, 8:3, 8:4, 8:6, 8:7, 8:9, 8:10, 8:13, 8:14, 8:16, 8:17, 8:21, 8:22, 9:1, 9:2, 9:5, 9:6, 9:17, 9:18, 9:20, 9:21, 9:23, 9:24, 10:13, 10:14, 11:1, 11:2, 11:15, 11:18, 11:19, 12:2, 12:3, 12:8, 12:9, 12:14, 12:15, 12:20, 12:21, 13:6, 13:7, 13:20, 13:21, 13:25, 14:1, 14:8, 14:9, 14:15, 14:16, 15:6, 15:11, 15:16, 15:18, 15:20, 15:21, 15:24, 16:5, 16:7, 16:10, 16:12, 16:16, 16:17, 16:20, 16:21, 16:23, 16:25, 17:14, 17:15, 17:22, 17:23, 18:3, 18:4, 18:9, 18:10, 18:18, 18:19, 18:23, 18:24, 19:1, 19:2, 19:4, 19:5, 19:9, 19:14, 19:19, 19:21, 19:24, 20:3, 20:12, 20:17, 20:21, 20:22, 20:24, 20:25, 21:11, 21:12, 22:18, 22:20, 22:21, 23:5, 23:6, 24:2, 24:3, 24:14, 24:15, 24:20, 24:21, 25:4, 25:5, 25:19, 25:20, 26:4, 26:5, 26:11, 26:12, 26:16, 26:17, 26:21, 26:22, 27:4, 27:5, 27:12, 27:13, 27:18, 27:19, 27:24, 27:25, 28:6, 28:7, 28:10, 28:11, 28:13, 28:14, 28:17, 28:18, 28:20, 28:21, 34:14, 34:17, 34:19, 34:21, 34:22, 34:24, 34:25, 35:2, 35:4, 35:8, 35:11, 35:13, 35:17, 35:18, 35:22, 36:1, 36:2, 36:4, 36:5, 36:8, 36:9, 36:10, 37:7, 37:16, 38:3, 38:10, 38:14, 38:19, 40:6, 40:10, 40:17, 40:19, 40:24, 41:17, 41:21, 41:23, 41:25, 42:5, 42:9, 42:11, 42:15, 42:18, 45:3, 45:7,

46:15, 48:21, 50:12, 51:10, 52:4, 58:6, 59:7, 60:17, 61:6, 61:14, 61:20, 62:2, 62:3, 62:5, 62:6, 62:15, 62:19, 63:5, 63:10, 63:15, 63:16, 63:17, 63:19, 63:20, 63:24, 67:24, 70:2, 70:3, 70:12, 71:6, 71:11, 71:13, 71:15
**themselves** [1] - 57:18
**THEODORE** [1] - 1:10
**Theodore** [1] - 2:3
**thereafter** [3] - 31:20, 31:21, 72:10
**therefore** [1] - 36:17
**thereof** [1] - 72:13
**thinking** [2] - 55:4, 61:8
**thinks** [1] - 46:19
**third** [3] - 10:19, 22:5, 39:3
**Thomas** [1] - 2:9
**THOMAS** [2] - 1:14, 1:15
**threatened** [1] - 28:11
**Three** [4] - 9:11, 36:6, 70:6, 70:22
**three** [13] - 11:8, 11:12, 21:22, 32:12, 40:1, 46:1, 46:12, 47:6, 52:1, 58:17, 60:3, 66:18, 70:7
**three-level** [1] - 21:22
**three-year** [2] - 46:12, 52:1
**throughout** [4] - 4:5, 13:2, 33:20, 39:12
**Title** [2] - 9:7, 50:9
**today** [10] - 6:7, 8:7, 8:12, 8:22, 13:3, 14:11, 17:24, 28:16, 37:9, 39:17
**today's** [4] - 3:16, 4:12, 6:20, 8:11
**tolerate** [1] - 68:12
**Tom** [1] - 2:10
**total** [2] - 23:2, 64:5
**touching** [1] - 58:11
**toward** [1] - 61:2
**towards** [1] - 61:3
**tracked** [1] - 54:13
**tragic** [1] - 52:12
**training** [32] - 29:25, 30:5, 30:15, 30:21, 30:24, 30:25, 31:2, 31:4, 32:18, 32:21, 32:23, 43:6, 43:9, 43:10, 44:8, 49:6,

49:10, 49:12, 51:2, 51:9, 57:2, 58:7, 58:8, 58:22, 59:20, 59:22, 61:8, 61:9, 64:17, 67:14, 68:21
**Training** [1] - 30:19
**transcribed** [1] - 72:10
**TRANSCRIPT** [1] - 1:10
**transcript** [1] - 72:6
**TRANSCRIPTION** [1] - 1:25
**transcription** [1] - 72:11
**transfer** [1] - 71:13
**transport** [10] - 9:7, 9:11, 10:4, 10:7, 32:7, 35:25, 43:21, 64:12, 66:16
**transportation** [3] - 10:20, 49:10, 64:9
**transported** [5] - 10:20, 22:9, 34:9, 41:2, 46:25
**transporting** [9] - 9:9, 10:14, 36:3, 43:20, 47:2, 64:23, 65:5, 65:22, 68:2
**travel** [8] - 50:17, 50:19, 51:1, 51:14, 55:19, 59:15, 67:9
**traveled** [1] - 68:4
**traveling** [1] - 55:23
**travelled** [3] - 30:23, 31:25, 33:2
**treated** [1] - 8:4
**treating** [1] - 67:7
**treatment** [8] - 51:16, 56:7, 59:11, 62:12, 67:4, 67:6, 68:22
**trial** [21] - 6:12, 13:8, 13:18, 13:21, 14:1, 14:9, 14:12, 14:13, 14:16, 15:5, 17:4, 17:6, 17:16, 17:18, 17:19, 17:24, 17:25, 18:1, 26:2, 29:1, 29:12
**trip** [2] - 32:13, 33:4
**trouble** [2] - 2:19, 41:15
**troubling** [1] - 53:7
**truck** [2] - 31:25, 33:3
**true** [3] - 27:22, 53:5, 72:5
**truth** [1] - 6:20
**truthfully** [1] - 7:5
**try** [5] - 2:24, 33:24, 44:21, 60:3, 67:3
**trying** [8] - 5:12, 5:15,

48:19, 50:5, 50:9, 52:24, 56:16, 59:1
**TUESDAY** [1] - 1:11
**turn** [3] - 55:25, 62:17, 62:20
**Two** [12] - 9:8, 9:16, 10:14, 10:25, 11:5, 11:11, 35:12, 35:23, 36:2, 36:6, 36:18, 66:15
**two** [6] - 22:3, 29:19, 32:11, 33:8, 43:22, 65:4
**two-level** [1] - 22:3
**Type** [1] - 62:5
**type** [6] - 25:24, 38:20, 50:2, 51:19, 66:11, 69:9
**types** [2] - 23:24, 69:7
**typically** [1] - 29:21

## U

**U.S** [4] - 18:11, 18:12, 18:16, 21:4
**U.S.C** [4] - 9:10, 9:12, 9:14, 64:1
**Ukraine** [1] - 59:15
**unabashed** [1] - 44:2
**unanimous** [1] - 13:15
**unbeknownst** [1] - 44:16
**unclear** [2] - 47:1, 47:6
**under** [27] - 3:17, 6:16, 7:4, 8:7, 12:9, 12:15, 12:23, 13:7, 15:24, 21:4, 23:2, 23:10, 24:16, 25:24, 27:6, 31:6, 36:23, 37:10, 39:9, 39:17, 40:11, 40:25, 56:10, 60:16, 64:6, 64:23, 72:10
**undercover** [1] - 31:13
**undergo** [2] - 67:4, 67:5
**undergone** [1] - 55:1
**understood** [3] - 17:3, 32:4, 35:2
**undertakings** [1] - 49:3
**undoing** [1] - 65:14
**unfortunately** [2] - 16:1, 19:14
**UNITED** [4] - 1:1, 1:5, 1:11, 1:14
**United** [36] - 2:2, 2:5, 2:10, 2:11, 3:10, 7:16, 9:8, 10:16, 10:19, 10:21, 18:15,

21:2, 22:11, 30:3, 31:10, 31:21, 32:6, 32:9, 34:7, 36:11, 41:3, 43:18, 44:10, 46:23, 47:18, 47:24, 48:12, 48:16, 48:24, 49:8, 50:3, 53:21, 64:10, 66:14, 68:4, 72:4
**unlawful** [2] - 10:6, 10:8
**unlawfully** [4] - 31:22, 32:6, 49:8, 64:10
**unless** [2] - 12:24, 14:3
**unreasonable** [2] - 3:20, 3:24
**unsecured** [1] - 68:5
**unwarranted** [3] - 25:13, 45:25, 46:7
**unwilling** [1] - 15:1
**up** [27] - 12:17, 12:22, 13:3, 16:2, 17:25, 20:10, 22:25, 23:9, 27:2, 27:7, 27:8, 27:14, 32:2, 32:4, 32:7, 32:19, 37:3, 43:12, 43:23, 44:13, 46:18, 48:23, 59:16, 61:3, 61:14, 65:12, 70:18
**upbringing** [1] - 65:13
**upcoming** [1] - 33:14
**upward** [15] - 22:7, 24:5, 24:25, 25:21, 34:5, 40:11, 40:24, 41:6, 44:22, 47:4, 50:11, 53:18, 65:1, 66:1, 66:6
**urge** [2] - 68:20, 69:11
**usual** [1] - 38:23

## V

**vague** [2] - 57:3, 58:2
**valuable** [1] - 18:5
**various** [3] - 17:3, 23:12, 60:10
**vehicle** [1] - 30:23
**venue** [1] - 49:14
**venued** [1] - 49:22
**verdict** [2] - 13:15, 17:17
**vetted** [1] - 30:16
**VI** [1] - 23:21
**victim** [1] - 65:17
**victims** [4] - 12:11, 51:23, 56:21, 58:5
**video** [9] - 3:12, 3:13, 3:14, 3:18, 4:14,

4:16, 5:1, 42:12, 44:17
**view** [1] - 60:5
**viewing** [1] - 69:5
**viewpoint** [2] - 46:22, 69:7
**viewpoints** [1] - 68:11
**views** [1] - 46:19
**violated** [1] - 57:22
**violating** [1] - 61:4
**violation** [8] - 9:7, 9:9, 9:12, 9:13, 10:16, 10:19, 10:22, 11:24
**violations** [2] - 57:13, 58:17
**violence** [11] - 29:23, 43:4, 46:21, 48:18, 57:20, 60:7, 64:24, 66:12, 68:12, 68:17, 69:1
**violent** [10] - 30:7, 43:2, 47:24, 48:6, 49:3, 54:3, 57:14, 57:23, 66:4, 68:10
**Virginia** [12] - 33:4, 33:14, 33:16, 41:5, 44:19, 46:3, 47:11, 50:1, 53:17, 64:20, 65:7, 68:9
**visited** [3] - 33:8, 44:14, 49:20
**volume** [1] - 19:23
**voluntarily** [2] - 6:14, 6:17
**voluntary** [1] - 36:15
**vote** [1] - 18:6
**vs** [5] - 2:5, 3:10, 36:11, 36:23, 66:14

## W

**wait** [1] - 16:17
**waiting** [3] - 16:2, 16:6, 16:18
**waive** [1] - 69:24
**waived** [3] - 17:24, 27:7, 27:14
**waivers** [1] - 69:18
**walked** [1] - 59:3
**walking** [1] - 57:21
**wants** [2] - 57:18, 71:3
**warrant** [1] - 51:16
**warranted** [3] - 40:25, 41:7, 44:22
**warrants** [3] - 50:8, 50:11, 65:1
**watched** [1] - 44:18
**wave** [1] - 16:13
**ways** [3] - 12:18, 29:25, 48:7

**weapon** [1] - 21:25
**weapons** [1] - 64:20
**wear** [1] - 33:16
**white** [11] - 29:16, 29:22, 30:3, 30:6, 30:9, 30:13, 32:17, 43:1, 43:3, 48:17, 64:14
**widely** [1] - 32:16
**willfully** [2] - 10:8, 10:22
**WILLIAM** [2] - 1:8, 6:23
**William** [4] - 2:5, 2:17, 7:1, 29:15
**willing** [1] - 51:25
**WINDOM** [33] - 1:14, 2:9, 11:6, 21:17, 29:6, 35:7, 37:2, 37:15, 38:1, 38:12, 38:17, 40:4, 40:15, 40:18, 41:14, 41:18, 42:2, 42:7, 42:14, 42:17, 42:20, 45:5, 45:8, 47:15, 48:22, 50:15, 51:25, 60:22, 61:13, 63:12, 67:23, 70:5, 71:17
**Windom** [22] - 2:10, 23:8, 24:22, 29:5, 34:14, 35:4, 36:20, 37:14, 40:13, 41:13, 41:24, 42:1, 42:9, 42:12, 46:15, 52:19, 53:12, 54:12, 58:3, 60:17, 67:22, 70:3
**window** [1] - 52:21
**Winnipeg** [3] - 31:11, 31:17, 43:16
**wish** [2] - 8:22, 69:19
**withdraw** [4] - 26:1, 26:5, 26:8, 26:14
**Witness** [1] - 20:24
**witness** [2] - 14:19, 67:11
**witnesses** [9] - 14:18, 14:21, 14:25, 51:22, 56:22, 59:14, 67:12, 72:8
**worse** [1] - 54:14
**wreaked** [1] - 53:8
**written** [1] - 9:3
**wrote** [1] - 63:8

## Y

**year** [17] - 4:5, 4:7, 22:16, 25:1, 26:1, 26:13, 38:21, 45:20, 46:8, 46:12, 52:1,

52:13, 53:1, 54:10, 54:20, 66:6
**years** [15] - 11:8, 11:12, 25:23, 40:1, 45:9, 47:21, 51:3, 52:19, 54:25, 55:13, 58:17, 60:4, 66:18
**young** [3] - 54:11, 56:14, 68:20
**yourself** [3] - 41:19, 68:15, 68:17
**yourselves** [1] - 2:8
**youth** [2] - 53:1, 65:25

## Z

**zero** [1] - 38:18
**Zoom** [1] - 3:4