IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| | * | |
| | * | |
| UNITED STATES OF AMERICA | * | Criminal Nos. 20-cr-033 TDC |
| | * | 21-cr-205 TDC |
| v. | * | |
| | * | |
| BRIAN MARK LEMLEY, JR.. | * | |
| PATRIK JORDAN MATHEWS, and | * | |
| WILLIAM GARFIELD BILBROUGH, | * | |
| IV | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## BRIAN MARK LEMLEY, JR.'S PROPOSED SUR-REPLY TO GOVERNMENT'S REPLY TO LEMLEY'S SENTENCING MEMORANDUM

The government's reply (ECF No. 188-2) to Mr. Lemley's responsive sentencing memorandum (ECF No. 184) makes a number of legal errors. To begin, the government notes that several courts have applied the U.S.S.G. § 3A1.4 enhancement to defendants who have not been convicted of a crime enumerated in 18 U.S.C. § 2332b(g)(5)(B). But defendants in those cases did not make the argument Mr. Lemley makes here about § 3A1.4's validity, and the courts did not address it. Those cases therefore have no persuasive value in deciding Mr. Lemley's claim.

In addition, the government claims no court has adopted Mr. Lemley's view that § 3A1.4 is inconsistent with the 1996 Directive from Congress. That is wrong: the district court in *United States v. Arnaout*, 282 F. Supp. 2d 838 (N.D. Ill. 2003), held § 3A1.4 invalid for the reasons Mr. Lemley urges here. And although the Seventh Circuit ultimately reversed the district court, it did so based on a clear misreading of the lower court's order—which the government does not deny.

Finally, the government errs by asserting § 3A1.4 is consistent with the 1996 Directive. That directive instructed the Sentencing Commission to amend § 3A1.4 so it "only applies" to federal crimes of terrorism, which are defined as offenses of conviction that are violations of

1

statutes enumerated in § 2332b(g)(5)(B). The government's reading of the directive—on which § 3A1.4 can apply not only when a defendant is convicted of an enumerated crime, but also when he merely intends to promote one—would render the word "only" in the 1996 Directive superfluous.

The Court should decline to apply the § 3A1.4 enhancement.

**I.      The Government's Cited Cases Did Not Address or Decide Whether § 3A1.4, as Written, Is Consistent with the 1996 Directive.**

The government argues "[t]he Fourth Circuit, along with other courts, has applied the § 3A1.4 enhancement to a defendant who did not personally commit federal crimes of terrorism." ECF No. 188-2 at 1. Mr. Lemley does not deny that some courts have applied § 3A1.4 under such circumstances. But in none of those cases did the defendant make the argument Mr. Lemley makes here: that § 3A1.4, as written, is inconsistent with the 1996 Directive and therefore invalid. And because defendants in those cases did not make that argument, the courts did not acknowledge, address, or resolve it. *See United States v. Benkahla*, 530 F.3d 300, 311-13 (4th Cir. 2008); *United States v. Kobito*, 994 F.3d 696, 700-03 (4th Cir. 2021); *United States v. Hasson*, No. 8:19-cr-96-GJH (D. Md. 2020), ECF No. 100 (defense sentencing memorandum), No. 107 (defense response to government sentencing memorandum), No. 116 (defense supplemental response to government sentencing memorandum), No. 134 (sentencing transcript); *United States v. Mandhai*, 375 F.3d 1243, 1247-48 (11th Cir. 2004); *United States v. Fidse*, 862 F.3d 516, 521-27 (5th Cir. 2017).

The Fourth Circuit has made clear that "judicial decisions do not stand as binding precedent for points that were not raised, not argued, and hence not analyzed." *United States v. Norman*, 935 F.3d 232, 240 (4th Cir. 2019). As the Fourth Circuit has explained, courts "often decide 'particular legal issues while assuming without deciding the validity of antecedent propositions, and such assumptions . . . are not binding in future cases that directly raise the questions.'" *Id.* at 241

2

(quoting *United States v. Verdugo-Urquidez*, 494 U.S. 259, 272 (1990)). The reason is simple: "an unchallenged and untested assumption is simply not a holding that binds future courts." *Id.* Thus the cases the government cites in its proposed reply, including those from the Fourth Circuit, are neither binding nor even persuasive on the question of § 3A1.4's validity, which those courts did not consider.

The government acknowledges that the dissent in *United States v. Graham*, 275 F.3d 490 (6th Cir. 2001), adopted Mr. Lemley's view of § 3A1.4, and that the majority "did not specifically address [his] argument." ECF No. 188-2 at 3 n.3. It asserts, however, that the majority "necessarily rejected [Mr. Lemley's argument] in affirming the sentence for conspiracy, notwithstanding the dissenting judge's opinion." *Id.* But the *Graham* majority said nothing at all about § 3A1.4's consistency with the 1996 Directive, and this Court therefore has no way of knowing how the majority would have decided that issue. And even if the Court assumes the majority rejected Mr. Lemley's position, the majority's utter failure to explain its conclusion disentitles that conclusion to any persuasive weight. A bare (implicit) legal conclusion, unsupported by analysis of any kind, does nothing to rebut the arguments Mr. Lemley made in his response to the government's sentencing memorandum.

Finally, the government claims a "district court in the Sixth Circuit recently rejected [Mr. Lemley's] precise argument" and applied the § 3A1.4 enhancement to a defendant who had not been convicted of a crime enumerated in 18 U.S.C. § 2332b(g)(5)(B). ECF No. 188-2 at 2. That is not true. The defendant in *United States v. Doggart*, No. 1:15-cr-39 (E.D. Tenn.), did not argue § 3A1.4 was inconsistent with the 1996 Directive. Instead, he argued that, "[e]ven assuming the Sentencing Commission acted within its authority by promulgating [§ 3A1.4] so that it applies not only to the specific offenses listed in § 2332b(g)(5), but also to unlisted offenses 'involv[ing]' or 'intended to promote' one of the statutorily listed crimes," the enhancement was inapplicable in

his case because his offense "neither involved nor was intended to promote a statutorily listed crime." *Doggart*, No. 1:15-cr-39, ECF No. 344 at 20. *Doggart*, therefore, does not support the government's position.

## II.     The Government Erroneously Argues No Court Has Held § 3A1.4 Is Inconsistent with the 1996 Directive.

The government argues "***no court*** has agreed with [Mr. Lemley's] position that § 3A1.4 applies only if the defendant himself is convicted of a federal crime of terrorism."  ECF No. 188-2 at 3 (emphasis in original). That is inaccurate.

As Mr. Lemley explained in his responsive memorandum, *see* ECF No. 184 at 17, the district court in *United States v. Arnaout*, 282 F. Supp. 2d 838 (N.D. Ill. 2003), held § 3A1.4 is invalid insofar as it applies to defendants not convicted of a crime enumerated in § 2332b(g)(5)(B). Citing "the clear terms of § 2332b(g)(5)," the court concluded that § 3A1.4's "enabling legislation," i.e., the 1996 Directive, "plainly preclude[s] application of the terrorism enhancement to" offenses that are "not . . . enumerated in 18 U.S.C. § 2332b(g)(5)." *Arnaout*, 282 F. Supp. 2d at 844-45. The court further noted that the final conference report to AEDPA directed the Sentencing Commission to make § 3A1.4 "'applicable only to those specifically listed federal crimes of terrorism, **upon conviction of those crimes**.'" *Id.* at 844 (quoting 42 Cong. Rec. H. 3305–01, § 730) (emphasis in *Arnaout*). Thus the current § 3A1.4 "expand[s] application beyond the congressional directive." *Id.* But, under *United States v. LaBonte*, 520 U.S. 751 (1997), "the Sentencing Commission lacks authority to preempt the specific directives of Congress." *Id.* at 845. As a result, the *Arnaout* court concluded, § 3A1.4 cannot validly apply where the defendant's offense of conviction "is not a federal crime of terrorism as defined by § 2332b(g)(5)." *Id.*

Mr. Lemley recognized in his responsive memorandum that the Seventh Circuit reversed the district court's ruling in *Arnaout*. ECF No. 184 at 17 n.17. But he explained that the Seventh

Circuit "misconstrued the district court's order" and therefore addressed only the meaning of § 3A1.4 *as written*, without reaching the question of the enhancement's validity.

The Seventh Circuit's error is plain from the language of its opinion, which focuses solely on the meaning of § 3A1.4's text as written. Again and again in its opinion, the appellate court centered its analysis on how to construe the words that appear in § 3A1.4—not on whether those words, properly construed, are consistent with Congress' instructions in the 1996 Directive. *See United States v. Arnaout*, 431 F.3d 994, 1001 (7th Cir. 2005) ("We review the district court's *interpretation of the Guidelines* de novo. Courts *interpreting the Guidelines* must begin with the text of the provision and the plain meaning of the words in the text." (emphasis added)); *id.* ("[T]he district court gave meaning only to the word 'involved,' and ignored the words 'or was intended to promote.' The *Guidelines must be interpreted*, however, so no words are discarded as meaningless, redundant or surplusage." (emphasis added)); *id.* ("This *interpretation of the word 'involved'* is also consistent with how the word is used *throughout the Guidelines*." (emphasis added)); *id.* at 1002 ("In interpreting the phrase 'or was intended to promote,' we find that the district court erred by ignoring *the plain, unambiguous text of the Guidelines*." (emphasis added)); *id.* ("Had *the Guideline drafters* intended that § 3A1.4 apply only where the defendant is convicted of a crime listed in 18 U.S.C. § 2332b(g)(5)(B), they would have included such limiting language." (emphasis added)); *id.* ("As a result, the word 'promote,' *as used in § 3A1.4*, signifies that where a defendant's offense or relevant conduct helps or encourages a federal crime of terrorism as defined in 18 U.S.C. § 2332b(g)(5)(B), then § 3A1.4 is triggered." (emphasis added)); *id.* ("*Under a plain reading, the phrase 'intended to promote'* means that if a goal or purpose was to bring or help bring into being a crime listed in 18 U.S.C. § 2332b(g)(5)(B), the terrorism enhancement applies." (emphasis added)).

This analysis ignores the substance of the district court's order. The district court's *LaBonte* ruling took it for granted that § 3A1.4, as written, purports to apply even to defendants who are not convicted of a crime enumerated in § 2332b(g)(5)(B), but it further held that writing the enhancement that way is prohibited by the 1996 Directive. The Seventh Circuit's analysis—which is concerned with the proper "interpretation of the Guidelines," "the plain, unambiguous text of the Guidelines," and a "plain reading" of § 3A1.4—addresses only the former issue, to the exclusion of the latter. Nowhere in its opinion does the Seventh Circuit cite *LaBonte* or even acknowledge the notion that a guideline—crystal clear as its text may be—is invalid if it is inconsistent with a congressional directive. Put simply, the Seventh Circuit in *Arnaout* misread the district court's order and therefore failed to address the argument Mr. Lemley raises here.

The government does not dispute that the Seventh Circuit miscomprehended the district court's holding in *Arnaout*. *See* ECF No. 188-2 at 3. Instead, it simply observes that the district court's ruling was "***reversed*** by the Seventh Circuit." *Id.* (emphasis in original). But the government does not explain why that reversal is persuasive notwithstanding the Seventh Circuit's obvious misunderstanding of the district court's holding, and in light of its failure to engage with the substance of the district court's conclusion.

## III.   The § 3A1.4 Enhancement, as Written, Conflicts with the 1996 Directive.

The government makes two arguments that § 3A1.4, as drafted by the Sentencing Commission and interpreted by the Fourth Circuit, is consistent with the 1996 Directive. Neither argument is persuasive.

***First,*** the government contends that in passing the 1996 Directive, Congress "said nothing about restricting application of the enhancement only to *offenses of conviction* listed in § 2332b(g)." ECF No. 188-2 at 4 (emphasis in original). This argument ignores the 1996 Directive's plain language.

The 1996 Directive ordered the Commission to amend § 3A1.4 so that it "only applies to Federal crimes of terrorism, as defined in section 2332b(g) of title 18." Pub. L. No. 104-132, § 730, 110 Stat. 1214. Under § 2332b(g)(5), a federal crime of terrorism means "an offense" that "is a violation of" certain enumerated statutes. Mr. Lemley explained in his responsive memorandum— and the government does not dispute—that when used in Title 18, the word "offense" means the crime of which a defendant is convicted. *See, e.g.*, 18 U.S.C. § 751(a) ("Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative . . . shall, if the custody or confinement is by virtue of . . . *conviction of any offense*, be fined under this title or imprisoned not more than five years, or both." (emphasis added)); 18 U.S.C. § 3554 ("The court, in imposing a sentence on a defendant who has been *found guilty of an offense* described in [certain statutes] shall order, in addition to the sentence that is imposed pursuant to the provisions of section 3551, that the defendant forfeit property to the United States in accordance with the provisions of [certain statutes]." (emphasis added)); 18 U.S.C. § 3555 (authorizing district court to order defendant to give notice to victims when "imposing a sentence on a defendant who has been *found guilty of an offense* involving fraud or other intentionally deceptive practices" (emphasis added)); 18 U.S.C. § 3571(a) ("A defendant who has been *found guilty of an offense* may be sentenced to pay a fine."); *see also* ECF No. 184 at 14 (citing other statutes).

Accordingly, when Congress wrote that § 3A1.4 should "only appl[y]" to a Title 18 "offense" that "is a violation of" a statute enumerated § 2332b(g)(B)(5), it was directing the Commission to "restrict application of the enhancement only to offenses of conviction listed in § 2332b(g)(5)(B)." ECF No. 188-2 at 4. Any other reading of the 1996 Directive would impose on the word "offense" a meaning wholly foreign to Title 18.

For this reason, the text of the 1996 Directive is clear. But even if it could somehow be characterized as ambiguous, legislative history would dispel the ambiguity. In the final conference report for AEDPA, the conference committee explained that, following the 1996 Directive, § 3A1.4 would be "applicable only to those specifically listed federal crimes of terrorism, *upon conviction of those crimes*." 142 Cong. Rec. H. 3337 (1996), 1996 WL 174947 (emphasis added). There is only one permissible reading of this definitive legislative history, and the government offers no reason to disregard it, choosing instead to simply ignore the conference report's unambiguous statement of congressional intent.

**Second,** the government argues Mr. Lemley reads the word "only" in the 1996 Directive "out of context." ECF No. 188-2 at 2. According to the government, it is perfectly consistent to simultaneously (1) "requir[e] that the enhancement apply 'only' to federal crimes of terrorism," and (2) "allow the enhancement to apply whenever the offense involves or promotes such a crime, regardless of whether it is the offense of conviction." *Id.* But this interpretation reads the word "only" out of the 1996 Directive.

The 1994 Directive instructed the Commission to promulgate an enhancement "for any felony, whether committed within or outside the United States, that involves or is intended to promote international terrorism." Pub. L. No. 103–322, § 120004, 108 Stat. 1796, 2022. In the 1996 Directive, however, Congress removed the reference to "international terrorism" and replaced it with the term "federal crime of terrorism." As numerous courts have recognized, the change from "international terrorism" to "federal crime of terrorism" was intended to expand the number of crimes to which the enhancement would apply. *See United States v. Garey*, 546 F.3d 1359, 1362 n.3 (11th Cir. 2008) ("[The 1996 Directive] required the Commission to amend the Sentencing Guidelines so that the adjustment in § 3A1.4 (formerly relating to 'international terrorism') applied *more broadly* to 'federal crimes of terrorism.'" (emphasis added)); *United*

*States v. Salim*, 287 F. Supp. 2d 250, 349 (S.D.N.Y. 2003) ("Congress intended to *broaden* the application of a terrorism enhancement beyond only acts of 'international terrorism,' by applying the terrorism enhancement to . . . offenses for which conduct occurred 'outside of the United States *in addition to* the conduct occurring in the United States.'" (emphasis added)); *Arnaout*, 282 F. Supp. 2d at 843 ("The amendment responded to a congressional directive that the existing international terrorism guideline be defined *more broadly* to include only federal crimes of terrorism." (emphasis added and omitted)); *see also* 186 A.L.R. Fed. 147, § 2[a] (2003).

The Commission took the same view. In the Reason for Amendment accompanying the new § 3A1.4, the Commission wrote that the 1996 Directive "require[d] the Commission to amend the sentencing guidelines so that the adjustment in § 3A1.4 (relating to international terrorism) applies *more broadly* to a 'Federal crime of terrorism.'" U.S.S.G. App. C, amends. 539 (Nov. 1, 1996), 565 (Nov. 1, 1997) (emphasis added). And even the government concedes "federal crime of terrorism" is broader than "international terrorism." *See* ECF No. 188-2 at 5 ("Thus, § 3A1.4 was expanded beyond just international terrorism to include all federal crimes of terrorism, which included different types of conduct in different locations than just international terrorism."). The switch to a more capacious category of predicate crimes explains why the AEDPA final conference report says the 1996 Directive was meant to "expand the scope" of § 3A1.4. 1996 WL 174947.

But if "federal crime of terrorism" is broader than "international terrorism," the word "only" in the 1996 Directive cannot be describing the category of crimes covered by the enhancement. It would make no sense to direct that § 3A1.4 "*only* applies to Federal crimes of terrorism" if that category of crimes is more expansive than the category it is replacing. On the government's interpretation of the 1996 Directive, the word "only" does no work. That cannot be right. *See Nero v. Mosby*, 890 F.3d 106 (4th Cir. 2018) ("When we interpret statutes, we must

construe all parts to have meaning and avoid interpretations that would turn some statutory terms into nothing more than surplusage.").

The word "only," therefore, must be referring to something else: the circumstances under which a predicate crime triggers the enhancement. Rather than applying whenever a defendant merely "intends to promote" a federal crime of terrorism, the post-1996 enhancement is supposed to "only appl[y]" to a Title 18 "offense" that "is a violation of" a statute enumerated in § 2332b(g)(5)(B)—i.e., when a defendant is convicted of a § 2332b(g)(5)(B) crime. Contrary to the government's argument, therefore, it is in fact inconsistent to both (1) require that § 3A1.4 "only appl[y]" to federal crimes of terrorism, and also (2) apply the enhancement to defendants who merely intend to promote, but are not convicted of, a crime enumerated in § 2332b(g)(5)(B).

## IV.    Conclusion

For the reasons described above and in Mr. Lemley's responsive sentencing memorandum, the Court should decline to apply the enhancement at U.S.S.G. § 3A1.4.

Respectfully submitted,

JAMES WYDA
Federal Public Defender

              /s/
_____

Ned Smock
Cullen Macbeth
Assistant Federal Public Defenders
Office of the Federal Public Defender
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
Phone: (301) 344-0600
Fax: (301) 344-0019
Email: ned_smock@fd.org
          cullen_macbeth@fd.org